

### *Welcome to Select Staffing!*

This electronic packet contains required documents that make up your permanent record. Please take time to read each document, initial where indicated and provide an electronic signature where requested.

ACKNOWLEDGEMENT

I understand and agree that by submitting these forms electronically, I authorize these forms to be as valid as manually signed forms submitted on paper. I further authorize my typed name and initials to be as valid as a manual signature and initials.

Colleague Signature:  Catherine Olinger
Date:  03/20/09

INSTRUCTIONS

<u>Colleague:</u>  Use the TAB key to move from one field to the next. Each field is a required field. Upon completion, e-mail the completed New Hire Packet to your immediate supervisor. Your supervisor will review and counter sign your packet as well as complete Section 2 of the Form I-9 - Employment Eligibility Verification form. Please have your documents ready for examination. Do not complete Section 2. Your immediate supervisor will complete the section.

Please retain a copy of the Colleague Orientation Material for future reference.

<u>Immediate Supervisor:</u>  Upon review of the packet, please counter sign all forms where required. Upon examination of the documents provided by the Colleague, complete Section 2 of the Form I-9 – Employment Eligibility Verification form. As a reminder, please include the date that *Colleague* employment began with Select Staffing. Review the packet for completeness then forward the completed packet to the <u>Group: Colleague New Hire Packets</u> e-box. Please ensure that the packet is complete. Incomplete packets can not be processed. Avoid delays by double checking all forms. A complete packet includes the:

    New Hire Packet
    Form I-9
    Form W-4

Please include optional forms such as Direct Deposit and loan agreements.

A confirmation e-mail will be sent to the Immediate Supervisor once the New Hire Packet has been received complete and confirmation of eligibility has been granted.

### *Again, we are pleased to have you on our team!*



LEGAL ACKNOWLEDGEMENTS<br/>APPLICANT AGREEMENT

COLLEAGUE NAME: Catherine Olinger          SOCIAL SECURITY NUMBER: ███████

## AT-WILL

I understand that the Employer does not hire everyone who completes an application for employment and that all applications must meet certain general hiring criteria set forth by The Employer, such as having the legal right to work in the U.S., appropriate skills, job history, and favorable references. Applicants must also possess personal qualities such as being honest, trustworthy, non-violent, and reliable.  **I understand that The Employer does not discuss hiring or placement criteria decisions with applicants or employees, and that The Employer does not discuss termination decisions with employees. I understand that my employment at The Employer is on an at-will basis and that I may be terminated at any time, with or without cause, and with or without notice, either at my option or at the option of The Employer.**  In consideration of my employment, I agree to conform to the rules and standards of The Employer, as amended by The Employer from time-to-time at its discretion.  I further agree that my employment and compensation is for no definite period.  Terms and conditions of employment including promotions, change in job duties, locations, and compensation can be changed at the sole discretion of The Employer, at any time, with or without cause, advance notice, or stated reason.  I understand that no employee or representative of The Employer, other than the President, has the authority to enter into any agreement for employment for any specified period of time, or to make any agreement or condition contrary to the foregoing.  Further, the President of The Employer may not alter the at-will nature of this employment relationship unless he signs a written document in which he specifically and clearly indicates the intent to do so.

CO<br/>Initials

## VERIFICATION & RELEASE

I hereby certify that the information supplied on this application for employment is true and correct to the best of my knowledge, and agree to have any of the statements verified by The Employer, unless I have indicated to the contrary.  I authorize The Employer to contact any and all of the references listed (including employers and schools), and I authorize those references to provide The Employer any and all information concerning my previous education and employment and any other pertinent information they may have or know about me.  Further, I release all parties, companies, and persons providing such information to The Employer from any liability for any damages that may results from furnishing such information to The Employer as well as from the use or disclosure of such information by The Employer or any of its agents, employees, or representatives.  **I understand that any misrepresentation, falsification, or material omission of information on this application or during the interview process (regardless of when discovered) may result in my failure to receive an offer or, if I am hired, my immediate termination from employment at any time.**

I also understand that any offer of employment from The Employer is conditioned on The Employer receiving satisfactory responses to reference requests, passing a drug screen, and providing satisfactory proof of my identity and legal authority to work in the United States.

The application will be considered active for a maximum of thirty (30) days.  If you wish to be considered for employment after that time, you must reapply.

**Do Not Sign Until You Have Read and Understood the Above Statement**

Signature of Applicant: Catherine Olinger                           Date:  03/20/09

## DISCRIMINATION AND REPORTING POLICIES

The Employer does not discriminate against their applicants or employees in any manner, and cannot and will not tolerate any form of harassment, including sexual harassment, or discrimination of any type, whether based on sex, race, age national origin, ancestry, religion, sexual orientation, marital status, or physical or mental disability, toward our employees.  The Employer is an Affirmative Action and Equal Opportunity Employer.  If you believe that you (or another co-worker) have been discriminated against or harassed by a co-worker, supervisor, agent of The Employer, or a customer, you should immediately report the facts of the incident and the names of the individuals involved to the Corporate Human Resources Director, who will promptly investigate all claims and take appropriate action.  Call 800-688-6162 for a direct line, or 877-LISTEN-0 to reach the legal compliance and counseling hotline.

CO<br/>Initials

**MUTUAL AGREEMENT TO ARBITRATE**

If The Employer and I are unable to resolve any disputes informally, I agree to having the dispute submitted and determined by binding arbitration in conformity with the procedures of the Federal Arbitration Act and the California Arbitration Act (California Code of Civil Procedure section 1280, et. seq.), including section 1283.05 and all other rights to discovery.  Such disputes may include but not limited to any involving breach of contract, fraud, misrepresentation, defamation, personal injury, wages, wrongful discharge, vacation pay, sick time pay, overtime pay, state and federal employment laws, and regulation including but not limited to the Fair Labor Standards Act (including the equal Pay Act), the Civil Rights Act o f1964 as amended, 42 U.S.C. section 1981, the Americans with disabilities Act, laws prohibiting discrimination by reason of religion, sex, age, color, national origin, handicap, disability, medical condition, marital status or other basis, ADEA, federal and state, state unfair competition or unfair business practices provisions, and those claims whether in law or equity, which either party could assert, at common law or under statue, rule, regulation, order of law, whether federal, state, or local, except for those under the National Labor Relations Act, claims for workers' compensation and unemployment insurance, and any other claims precluded from arbitration by law.  I agree that such arbitration will be conducted in Santa Barbara, CA.

CO
Initials

**AUTHORIZATION AND CONSENT FOR DRUG SCREEN**

I consent to a pre-employment test to detect the use of illegal or controlled substances, alcohol, or prescription medication without a prescription.  I consent to provide a specimen to my urine and/or blood or hair as may be requested in conformity with The Employer's policies and procedures.  I certify that urine submitted for such a drug screen will be my own.  I understand that I have a right to receive a copy of this authorization.

I understand that The Employer may require a post-accident screening to test for illegal drugs or controlled substances, alcohol, or prescription medication without a prescription when a work-related accident is reported, in accordance with The Employer's policy, and I consent to such a drug screening.  I consent to the release of drug screen results to The Employer.  I also authorize any physician, hospital or clinic who may have examined me previously for drug or substance abuse to release to The Employer a complete record of the findings, results or opinions.

I understand and agree that the results of my drug screens may be used in determining my employment eligibility.  If I refuse to sign this consent, fail to take a pre-employment or accident-related drug screen, or fail any portion of the test, I will not be considered for employment, or if employed, I will be terminated.

I understand and agree that The Employer may release the results of my pre-employment and/or post-accident drug screens to the State Unemployment Department if a claim for unemployment insurance is filed by me or on my behalf.

I agree to hold all parties harmless and not to sue in connection with any aspect of drug screen testing or its effect on my employment status.  I understand that if I have any questions about the meaning of the provisions in this authorization and consent or the drug screens, they will be answered on request.

CO
Initials

**APPLICATION FOR EMPLOYMENT**

All information contained on this application is subject to verification.

THIS PAGE MUST BE COMPLETED.   THE ON-LINE APPLICATION DOES NOT REPLACE THIS REQUIREMENT

| FIRST NAME: CATHERINE | MIDDLE INITIAL: P | LAST NAME: OLINGER | HAVE YOU EVER APPLIED WITH ANY OF OUR OFFICES BEFORE? ☐ YES ☒ NO |
|---|---|---|---|

ADDRESS: 2924 VALENCIA NE     APARTMENT/UNIT:     ARE YOU AGE 18 OR OLDER? ☒ YES ☐ NO

CITY: ALBUQUERQUE     STATE: NM     ZIP CODE: 87110     DO YOU HAVE THE FOLLOWING VALID DOCUMENTATION WITH YOU TODAY?

TELEPHONE:     ALTERNATIVE TELEPHONE:
1) IDENTITY (PICTURE ID) ☐ YES ☐ NO
2) ELIGIBILITY TO WORK IN THE U.S. ☒ YES ☐ NO

PREFERRED NAME: CATHERINE OLINGER     EMAIL ADDRESS:

INFORMATION PROVIDED IS SUBJECT TO VERIFICATION WITH THE SOCIAL SECURITY ADMINISTRATION AND/OR THE U.S. CITIZENSHIP AND IMMIGRATION SERVICES.

## ADDITION INFORMATION

LIST ALL OTHER NAMES BY WHICH YOU HAVE BEEN KNOWN.
CATHERINE STARR

PLEASE EXPLAIN ANY ADDITIONAL INFORMATION RELATIVE TO A CHANGE OF NAME, USE OF AN ASSUMED NAME, OR NICKNAME NECESSARY TO ENABLE A CHECK ON YOUR WORK AND EDUCATION RECORDS.
STARR IS MY MAIDEN NAME

HAVE YOU BEEN A TEMPORARY WITH ANOTHER SERVICE BEFORE? ☒ YES ☐ NO
IF YES, COMPLETE THE TEMPORARY EXPERIENCE SUPPLEMENT.

LIST ALL LANGUAGES SPOKEN OTHER THAN ENGLISH.

## WORK PREFERENCES

TYPE OF WORK DESIRED:
PART-TIME

SHIFT AVAILABLE (CHECK ALL THAT APPLY): ☒ 1ST ☐ 2ND ☐ 3RD ☐ WEEKEND ☐ FULL-TIME ☒ PART-TIME

MINIMUM PAY RATE: $16.80 PER HOUR     MILES WILL TO TRAVEL: 25

## LEGAL QUESTIONS

HAVE YOU BEEN DISCHARGED OR ASK TO RESIGN FROM ANY JOB? ☐ YES ☒ NO
 IF YES, PLEASE EXPLAIN THE CIRCUMSTANCES:

HAVE YOU BEEN REPRIMANDED, SUSPENDED WITH OR WITHOUT PAY, OR TERMINATED FOR FIGHTING ON THE JOB, WHETHER OR NOT IT WAS YOUR FAULT? ☐ YES ☒ NO
IF YES, PLEASE EXPLAIN:

WILL ANY OF YOUR WORK REFERENCES DISCLOSE/REVEAL ANYTHING NEGATIVE: ☐ YES ☒ NO
IF YES, PLEASE EXPLAIN:

IF A DRIVER LICENSE IS REQUIRED FOR THE POSITION FOR WHICH YOU ARE APPLYING, DO YOU HAVE A VALID LICENSE: ☒ YES ☐ NO
LICENSE NUMBER:     EXPIRATION DATE: 04/22/2012

SINCE YOU ARE APPLYING FOR A POSITION THAT MAY REQUIRE DRIVING, HAVE YOU BEEN CITED FOR A TRAFFIC VIOLATION OF ANY KIND WITHIN THE PAST 7 YEARS? ☐ YES ☒ NO
IF YES, PLEASE GIVE DATE AND DETAILS:

HAVE YOU EVER PLEAD GUILTY, "NO CONTEST", OR BEEN CONVICTED OF A FELONY OR MISDEMEANOR CRIME SINCE THE AGE OF 18, INCLUDING SUCH MOVING VIOLATIONS AS DRIVING UNDER THE INFLUENCE OF A DRUG OR ALCOHOL, WHICH WERE NOT LATER EXPUNGED" (CALIFORNIA ONLY – DO NOT DISCLOSE CONVICTIONS FOR MARIJUANA POSSESSION OVER TWO (2) YEARS OLD. GEORGIA ONLY – DO NOT DISCLOSE INFORMATION PERTAINING TO ANY "FIRST OFFENDER DISCHARGE". CONNECTICUT ONLY – DO NOT DISCLOSE THE EXISTENCE OF ANY ARREST, CRIMINAL CHARGE, OR CONVICTION, THE RECORDS OF WHICH HAVE BEEN ERASED. HAWAII ONLY – YOU WILL ONLY HAVE TO ANSWER THIS QUESTION IF YOU RECEIVE A CONDITIONAL OFFER OF EMPLOYMENT. MASSACHUSETTS ONLY – APPLICANTS FOR EMPLOYMENT WITH A SEALED RECORD ON FILE WITH THE COMMISSIONER OF PROBATION MAY ANSWER "NO RECORD" WITH RESPECT TO AN INQUIRY RELATING TO PRIOR ARRESTS, APPEARANCES AND CONVICTIONS. IN ADDITION, MASSACHUSETTS APPLICANTS FOR EMPLOYMENT MAY ANSWER "NO RECORD" WITH RESPECT TO ANY INQUIRY RELATIVE TO PRIOR ARRESTS, COURT APPEARANCES AND ADJUDICATIONS IN ALL CASES OF DELINQUENCY OR AS A CHILD IN NEED OF SERVICES WHICH DID NOT RESULT IN A COMPLAINT TRANSFERRED TO THE SUPERIOR COURT FOR CRIMINAL PROSECUTION.  MASSACHUSETTS APPLICANTS SHOULD NOT DISCLOSE CONVICTIONS FOR DRUNKENNESS, SIMPLE ASSAULT, SPEEDING, MINOR TRAFFIC VIOLATIONS, AFFRAY OR DISTURBANCE OF THE PEACE. FINALLY, MASSACHUSETTS APPLICANTS SHOULD NOT DISCLOSE CONVICTIONS FOR OTHER MISDEMEANORS WHERE THE DATE OF CONVICTION OR THE END OF ANY PERIOD OF INCARCERATION WAS MORE THAN FIVE YEARS AGO UNLESS THERE HAVE BEEN SUBSEQUENT CONVICTIONS WITHIN THOSE FIVE YEARS.)
☐ YES ☒ NO
IF YES, PLEASE GIVE DATES AND DETAILS:

ARE YOU CURRENTLY OUT ON BAIL, OR ON YOUR OWN RECOGNIZANCE PENDING TRAIL, FOR AN ARREST? (NOTE: ANSWERING "YES" TO THE ABOVE QUESTIONS DOES NOT CONSTITUTE AN AUTOMATIC BAR TO EMPLOYMENT. EACH CASE WILL BE DETERMINED ON ITS OWN MERITS.) ☐ YES ☒ NO
IF YES, PLEASE GIVE DATES AND DETAILS OF SUCH ARREST(S):

ARE YOU CURRENTLY USING ILLEGAL DRUGS? ☐ YES ☒ NO
IF YES, WHICH ILLEGAL DRUGS HAVE YOU RECENTLY USED?
WHEN DID YOU RECENTLY USE EACH OF THESE DRUGS?
PLEASE DETAIL:

## VERIFICATION & RELEASE

I HEREBY CERTIFY THAT THE INFORMATION SUPPLIED ON THIS APPLICATION FOR EMPLOYMENT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, AND AGREE TO HAVE ANY OF THE STATEMENTS CHECKED BY THE EMPLOYER, UNLESS I HAVE INDICATED TO THE CONTRARY.  I AUTHORIZE THIS FORM TO BE AS VALID AS MANUALLY SIGNED FORMS SUBMITTED ON PAPER. I AUTHORIZED MY TYPED NAME AND INITIALS TO BE AS VALID AS A MANUAL SIGNATURE AND INITIALS.

Signature of Applicant: Catherine Olinger     Date: 03/20/2009

**JOB SEEKERS WHO HAVE COMPLETED THE ONLINE APPLICATION ARE NOT REQUIRED TO COMPLETE THIS PAGE**

## EDUCATION

| | HIGHEST LEVEL OF EDUCATION | LIST ANY SPECIAL TRADE OR VOCATIONAL SCHOOLS ATTENDED: |
|---|---|---|
| SCHOOL NAME | Del Norte | LIST ANY PROFESSIONAL OR VOCATIONAL CERTIFICATES, LICENSES, OR REGISTRATIONS THAT YOU CURRENTLY HOLD OR HAVE HELD IN THE PAST: |
| LOCATION (CITY, STATE) | Albuquerque, NM | DESCRIBE ANY SPECIALIZED TRAINING, APPRENTICESHIP, SKILLS, EXTRACURRICULAR ACTIVITIES, HONORS, SCHOLARSHIPS, APPOINTMENTS, AWARDS, OR SPECIAL RECOGNITION THAT YOU HAVE RECEIVED: |
| YEARS COMPLETED | 4 | |
| DIPLOMA/DEGREE | DIPLOMA | |
| MAJOR/SUBJECT | | |
| G.P.A. | | |

## EMPLOYMENT HISTORY

LIST THE NAMES OF YOUR PAST THREE (S) EMPLOYERS, OR LAST 10 YEARS WORKED, WHICHEVER IS LONGER, IN CHRONOLOGICAL ORDER WITH PRESENT OR LAST EMPLOYER FIRST. BE SURE TO ACCOUNT FOR ALL PERIOD OF TIME, INCLUDING MILITARY SERVICE AND **ANY PERIOD OF UNEMPLOYMENT OF MORE THAN 3 MONTHS**. IF SELF-EMPLOYED, SUPPLY FIRM NAME AND BUSINESS REFERENCES. IF MORE SPACE IS NEEDED, ASK FOR A SUPPLEMENTAL FORM.

| COMPANY NAME: Westaff | | STARTING | ENDING | TITLE: Staffing Consultant |
|---|---|---|---|---|
| CITY: Alb.   STATE: NM | DATE MONTH/YEAR | 03/2003 | PRESENT | JOB DUTIES:   INTERVIEWING,RECRUITING,CUSTOMER SERVICE |
| SUPERVISOR NAME: Beth Barela | WAGE PER HOUR | $10.00 | $16.80 | MAY WE CONTACT THIS EMPLOYER? ☒ YES   ☐ NO |
| TELEPHONE #: 505-385-3073 | | | | IF NO, PLEASE EXPLAIN: |
| REASON FOR LEAVING: Still Employed | | | | |

EMPLOYMENT GAP OF MORE THAN 3 MONTHS (IF ANY) ☒ YES   ☐ NO
IF YES, EXPLAIN FULLY: Maternity Leave, stayed home with children

| COMPANY NAME: AAA New Mexico | | STARTING | ENDING | TITLE: Insurance Agent |
|---|---|---|---|---|
| CITY: Albuquerque   STATE: NM | DATE MONTH/YEAR | 03/2000 | 05/2001 | JOB DUTIES:   Selling insurance policies to AAA members |
| SUPERVISOR NAME: Bob Stoff | WAGE PER HOUR | $SALARY | $4K MONTH | MAY WE CONTACT THIS EMPLOYER? ☒ YES   ☐ NO |
| TELEPHONE #: 505-291-6611 | | | | IF NO, PLEASE EXPLAIN: |
| REASON FOR LEAVING: Birth of my 1st CHILD | | | | |

EMPLOYMENT GAP OF MORE THAN 3 MONTHS (IF ANY) ☐ YES   ☐ NO
IF YES, EXPLAIN FULLY:

| COMPANY NAME: | | STARTING | ENDING | TITLE: |
|---|---|---|---|---|
| CITY:   STATE: | DATE MONTH/YEAR | | | JOB DUTIES: |
| SUPERVISOR NAME: | WAGE PER HOUR | $ | $ | MAY WE CONTACT THIS EMPLOYER? ☐ YES   ☐ NO |
| TELEPHONE #: | | | | IF NO, PLEASE EXPLAIN: |
| REASON FOR LEAVING: | | | | |

EMPLOYMENT GAP OF MORE THAN 3 MONTHS (IF ANY) ☐ YES   ☐ NO
IF YES, EXPLAIN FULLY:

## REFERENCES

LIST THREE (3) ADDITIONAL BUSINESS/PROFESSIONAL REFERENCES WHO HAVE KNOWN YOU FOR AT LEAST ONE (1) YEAR. **DO NOT LIST PERSONAL REFERENCES.**

| | NAME | BUSINESS | TELEPHONE NUMBER | ADDRESS | YEARS ACQUAINTED |
|---|---|---|---|---|---|
| 1. | Terrie Doty | Previous Westaff | ■ | | 5 |
| 2. | Beth Barela | Westaff | ■ | | 11 |
| 3. | Megan Yamagata | Westaff | ■ | | 2 |

## EMERGENCY CONTACTS

| NAME: John Olinger | TELEPHONE #: ■ |
|---|---|
| NAME: Judy Starr | TELEPHONE #: ■ |

## PAYROLL

☐ **HOLD IN THE OFFICE EVERY FRIDAY**   ☒ **DIRECTLY DEPOSIT TO MY BANK ACCOUNT.** (A DIRECT DEPOSIT FORM MUST BE COMPLETED AND SUBMITTTED TO PAYROLL.)
☐ **MAIL CHECK EACH WEEK** - IF YOU WISH TO HAVE YOUR CHECKS MAILED, PLEASE INDICATE YOUR AGREEMENT TO THE FOLLOWING STATEMENT BY SIGNING BELOW: I AUTHORIZE THE EMPLOYER TO MAIL MY PAYCHECKS TO THE ADDRESS INDICATED ON THIS DOCUMENT IN LIEU OF COLLECTING THEM AT THE OFFICE FROM WHICH I AM DISPATCHED. I UNDERSTAND THAT I TAKE FULL RESPONSIBILITY FOR THIS ACTION, SHOULD MY PAYCHECK BE DELAYED BY THE U.S. POSTAL SERVICE, AND THAT IT IS MY RESPONSIBILITY TO SUBMIT NEW INFORMATION TO THE EMPLOYER, SHOULD THERE BE ANY CHANGE IN MY MAILING ADDRESS. I REALIZE THAT STOP-PAYMENTS WILL NOT BE PLACED ON CHECKS LOST IN THE MAIL FOR 10-WORKING DAYS FROM THE DATE MAILED. ANY TRACKING OF MAIL THROUGH THE U.S. POSTAL SERVICE WILL BE MY

RESPONSIBILITY. THIS AUTHORIZATION IS TO REMAIN IN EFFECT UNTIL REPLACED BY A NEW WRITTEN AUTHORIZATION OR IS CANCELLED.



NOTICE TO APPLICANT
REGARDING CONSUMER REPORTING

COLLEAGUE NAME: CATHERINE OLINGER          SOCIAL SECURITY NUMBER: ███████

In connection with my application with Select Staffing, I understand that investigative background inquires may be made on myself including but not limited to previous employer verifications, education verifications, consumer credit reports, criminal convictions or history, motor vehicle reports, social security trace reports, and other reports. These reports may include reasons for termination of past employment from previous employers. Further, I understand that Acxiom and/or any other vendors of Select Staffing, may be requesting information from various Federal, State, and other agencies which maintain records concerning my past activities relating to my driving, credit criminal, civil, and other experiences, and may include information involving me in the files or insurance companies.

I hereby authorize, without reservation, any party or agency contacted by Select Staffing or Acxiom, and their employees or assigns to release said information and agree to hold them harmless from any and all claims, actions, suits, agreements, or liabilities arising from the release of said information to Select Staffing or any authorized agent thereof.

Your background information will be submitted by:

**Acxiom Information Security Services, 6111 Oak Tree Blvd, 4th Floor, Independence, OH 44131  (800) 853-3228**

☐       **California, Minnesota & Oklahoma Applicants Only:  Please check here to have a copy of your consumer report sent directly to you.  Minnesota and Oklahoma applicants will receive a copy directly from Acxiom.  California applicants may receive a copy from either Select Staffing or Acxiom.**

Note:  Before signing this document, read it thoroughly and complete all requested information.  If not applicable, indicate by drawing one line throughout the section.

I have read and understand the above notice.

| Colleague Signature:  Catherine Olinger | Date:  03/20/2009 |
|---|---|

Previous Name(s) Used:  Catherine Starr

Mailing Address:  2924 Valencia NE

City, State and Zip Code:  Albuquerque, NM 87110

Telephone Number:  ███████

Date of Birth* (Month/Day/Year) :  ███████

Drivers' License Number:  ███████          State:  NM      Expiration Date:  04/22/2012

**\*Date of Birth is being requested in order to obtain accurate retrieval of records.**

If present address is less than one year, please provide previous addresses for the past 10 year period.

| Street Address | City | State | Zip Code | How Long? |
|---|---|---|---|---|
| 2924 Valencia NE | Albuquerque | NM | 87110 | 9 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |



# EMPLOYEE PROFILE

### PERSONAL INFORMATION

| LAST NAME | FIRST NAME | MIDDLE NAME |
|---|---|---|
| **OLINGER** | **CATHERINE** | **PATRICIA** |

| HOME ADDRESS - STREET | APPT # | CITY |
|---|---|---|
| **2924 VALENCIA NE** | | **ALBUQUERQUE** |

| STATE | ZIP CODE | COUNTY |
|---|---|---|
| **NM** | **87110** | **BERNALILLO** |

| MAILING ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| **2924 VALENCIA NE** | **ALBUQUERQUE** | **NM** | **87110** |

| TELEPHONE | RESIDENCE | CELLULAR |
|---|---|---|
| | ▮▮▮▮▮ | ▮▮▮▮▮ |

| BIRTH DATE | MARITAL STATUS | GENDER | MILITARY SERVICE |
|---|---|---|---|
| ▮▮▮▮▮ | **MARRIED** | ☒ F  ☐ M | ☒ No  ☐ Yes |

### EMPLOYMENT INFORMATION

| JOB TITLE | IMMEDIATE SUPERVISOR | REGIONAL VICE PRESIDENT |
|---|---|---|
| **STAFFING ASSISTANT** | BETH BARELA | **MARK SMITH** |

| REGION | BRANCH NUMBER | BRANCH CODE | |
|---|---|---|---|
| **SOUTH** | 2163 | | |

| E-MAIL ADDRESS | OFFICE TELEPHONE NUMBER / EXTENSION |
|---|---|
| COLINGER@WESTAFF.COM | **505-872-9092** |

### COMPANY ISSUED PROPERTY

| ITEM | MODEL | SERIAL NUMBER | COMMENTS |
|---|---|---|---|
| LAPTOP & CHARGER | | | |
| CELLULAR & CHARGER:  # | | | |
| BLACKBERRY & CHARGER:  # | | | |
| OTHER: | | | |

### BENEFIT ENROLLMENT INFORMATION

| SPOUSE / PARTNER NAME | RELATIONSHIP | DATE OF BIRTH | GENDER |
|---|---|---|---|
| DEP #1 NAME | RELATIONSHIP | DATE OF BIRTH | GENDER |
| DEP #2 NAME | RELATIONSHIP | DATE OF BIRTH | GENDER |
| DEP #3 NAME | RELATIONSHIP | DATE OF BIRTH | GENDER |
| DEP #4 NAME | RELATIONSHIP | DATE OF BIRTH | GENDER |
| DEP #5 NAME | RELATIONSHIP | DATE OF BIRTH | GENDER |
| DEP #6 NAME | RELATIONSHIP | DATE OF BIRTH | GENDER |

### EMERGENCY CONTACT INFORMATION

| PRIMARY CONTACT - NAME | RELATIONSHIP | TELEPHONE # |
|---|---|---|
| **JOHN OLINGER** | **HUSBAND** | Home 505-227-5553<br>Business 505-903-8736 |
| SECONDARY CONTACT - NAME | RELATIONSHIP | TELEPHONE # |
| **GARY STARR** | **FATHER** | Home 55-881-7730<br>Business |



SALARY, SALES COMMISSION AND BONUS PROVISIONS
ATTACHMENT 1

COLLEAGUE NAME: CATHERINE OLINGER          SOCIAL SECURITY NUMBER: ███████

**As stated on the Employee Status Authorization form, Employee's compensation will consist of:**

(A) **Annualized Salary.**  Payable as per the governing payroll calendar, plus one or both of the following:

(B) **Sales Commission.**  Sales commissions are based on a percentage of The Employers' "Gross Margin" (described in paragraph II below) on all of The Employers billings for services provided during each Financial Period (there are 13 scheduled Financial Periods each calendar year) to each customer, or office/division of each customer, which The Employers, in its sole discretion, determines became a The Employers account through Employee's efforts, subject to the limitations and exclusions described below in paragraph III.

(C) **Bonus.**  The Employers has complete discretion to determine how and/or whether bonuses will be paid.

II. **Gross Margin.**  The term "Gross Margin" as used concerning sales commissions, means the amount of gross revenue The Employers estimates, in its sole discretion, that it will earn on the applicable cash receipts from the applicable customer accounts, after its deductions of allocations for its costs of serving each account (e.g., temp compensation, employer taxes, workers' compensation insurance, etc.)  and allocation of others charges and expenses.   The applicable Gross Margins are subject to change for each Financial Period.   Employee will be informed of these Gross Margins for each Financial Period when Employee is paid his/her sales commission for that period.

III. **Employee does not earn and is never entitled to any sales commission on any The Employers billing on any account the following situations:**

(A) **First Financial Period of Employment.**  Employee will not earn and will never be paid any sales commission for the first Financial Period of their employment at The Employers.

(B) **Collection Accounts.**  If at any time after The Employers sends an invoice to the customer, The Employers, in its own discretion determines it necessary to pursue collection efforts, either internally, through attorneys, or third-party agencies, or if the customer files bankruptcy, Employee will not earn or be entitled to any sales commission on the invoice(s) involved, even if The Employers were later to fully collect on the invoices.

(C) **Other Employees.**  If The Employers determines that one or more other Employee(s)  was/were also a direct cause of obtaining any account(s), The Employers may reduce or limit Employee's percentage of Gross Margin on such account(s) and will so notify Employee.

(D) **Leave of Absence.**  Notwithstanding any other provisions, Employee will not earn and will never be paid, any sales commission on any of The Employers billings to any customer account, for services provided by The Employers while the Employee is absent from work for one or more weeks on any type of personal, family medical, pregnancy, disability, workers' compensation, or other leave.  Employee will begin to earn sales commissions upon returning to work following an approved leave of absence, and upon providing The Employer with a physician's certification.  Sales commission earned after Employee's return to work will be paid at the end of the Financial Period following the return to work.

(E) **Termination.**  Notwithstanding any other provisions, Employee will not earn and will never be paid any sales commission on any of The Employers' cash receipts from any customer account received later than ten (10) business days after Employee's termination date.

IV. **Payment.**

(A) **Sales Commission.**  All sales commissions due Employee for each Financial Period will be paid as per the governing payroll calendar.

(B) **Bonus.**  The Employers has complete discretion to determine when bonus will be paid.  Notwithstanding any other provisions, Employee will not earn and will never be paid any bonuses that are paid later than ten (10) business days after Employee's termination date.

**V.   Expenses.**  Employee shall be entitled to reimbursement of his/her reasonable travel, entertainment, and other expenses incurred in his/her marketing efforts on behalf of The Employers, as long as Employee complies with The Employers' policies regarding expense reimbursement that are set forth in its Policy Manual.

Colleague Signature:  Catherine Olinger                      Date:  03/20/2009



EMPLOYEE AGREEMENT

APPLICANT NAME:  CATHERINE OLINGER              SOCIAL SECURITY NUMBER:  

THIS AGREEMENT is by and between the Employer, (hereinafter referred to as "Select Staffing") and CO (hereinafter referred to as "Employee").

Select Staffing agrees to employ Employee, with said employment to start on 3/23/2009.  Employee accepts such employment on the terms and conditions described in this Agreement as well as on the terms and conditions described in the Select Staffing's Staff Personnel Policy Manual ("Policy Manual"), which Policy Manual is incorporated herein by this reference.  In addition to signing this Agreement, Employee also understands that he/she is to sign a written Acknowledgment Receipt after reading the current version of the Policy Manual.

### TERM

It is understood that the employment relationship between the Employee and Select Staffing is at the mutual consent of both parties.  Accordingly, Employee's employment at Select Staffing will at all times be "at-will," and can be terminated by Employee or by Select Staffing at any time, with or without cause, advance notice or stated reason.  Although no reason or cause for termination is necessary, examples of conduct which may result in termination of Employee's employment are any breach of this Agreement or the Policy Manual, any failure by Employee to meet financial objectives which may be outlined from time to time in the future by Select Staffing, and misconduct described in the Involuntary Dismissal section of the Policy Manual.  Terms and conditions of employment including promotions, change in job duties, locations and compensation can be changed at the sole discretion of Select Staffing, at any time, with or without cause, advance notice or stated reason.  Select Staffing may warn, reassign, suspend, demote or terminate any employee in its sole discretion, at any time, with or without cause, advance notice or stated reason.  Select Staffing may warn, reassign, suspend, demote or terminate any employee in its sole discretion, at any time, with or without cause, advance notice or stated reason.  It is further understood that no Employee or representative of Select Staffing, other than the President, has authority to enter into an agreement for any specified period of time, or to make any agreements contrary to the foregoing,  moreover, the parties agree that there are not express or implied agreements contrary to the foregoing, and that the President of Select Staffing can only enter into an agreement contrary to the foregoing if the President does so in a formal written agreement that is fully executed by the President and the Employee.

### DUTIES

Employee's anticipated primary duties at Select Staffing are to be that of Personnel Supervisor (Job Title and general standardized description of duties), and it is anticipated that he/she will work at Select Staffing's Albuquerque, NM (Branch name) Office.  However, Select Staffing may ask Employee to perform additional and/or different duties, depending on its needs and business circumstances.

### COMPENSATION

Employee's compensation is set forth in the attached Appendix A, which is also incorporated here in and made part of this Agreement by this reference.

### TRADE SECRET/ CONFIDENTIALITY INFORMATION

(a)      Select Staffing has expended a substantial amount of time, effort and money to establish and maintain an excellent reputation and working relationships with its clients, employees and temporary workers, as well as to establish and maintain substantial information and data base regarding its present and prior clients, employees and temporary workers.  By example and without limitation, Confidential and Trade Secret Information includes all information and documents concerning Select Staffing's teaching, sales and business operations techniques; forms; marketing surveys and strategies; financial information about Select Staffing, its employee's, customers and temporary workers; its agreements with its employees, temporary workers and customers; and identities of its customers, temporary workers and suppliers; Select Staffing's billing records; information about past, current and future temporary workers, customers and employees; and all forms, systems and programs used by Select Staffing.  Confidential information also includes all information and documents, the unauthorized disclosure of which could be detrimental to the interest of Select Staffing, its temporary workers, employees and/or customers, whether or not such information is specifically described above as Confidential Information.

(b)      Employee agrees that all such Trade Secret/Confidential Information, even the clients and temporary workers developed, obtained or recruited by Employee, or with whom/which he/she may deal while he/she is employed by Select Staffing

are, and shall remain, the property and trade secrets of Select Staffing and not Employee.  Both during and after his/her employment with Select Staffing, Employee will maintain and preserve all of said documents and information as confidential, and he/she will not directly or indirectly, use, sell, show, divulge or provide such information to any person outside of Select Staffing's employ, or within Select Staffing who does not have a need-to-know, without the prior written consent of an Officer of Select Staffing.  Employee further agrees not to cause the transmission, removal or transport of Confidential/Trade Secret Information from Select Staffing's office, without prior written approval of an Officer of Select Staffing and to not publish, disclose, or otherwise disseminate such information without prior written approval of the President of Select Staffing.  Employee acknowledges that he/she is aware that the unauthorized disclosure of Confidential Information of Select Staffing, its customers or its temporary workers and employees or its clients, may be highly prejudicial to their interests, an invasion of privacy, and an improper disclosure of trade secrets.

(c)     During and for one (1) year after termination of his/her employment with Select Staffing, Employee agrees that he/she will not influence, or attempt to influence, either directly or indirectly, any Select Staffing employees, customers or temporary workers, who have dealt or done business with Select Staffing at any time within six (6) months prior to Employee's termination, including but not limited to those who may be recruited, or developed by Select Staffing while he/she is employed at Select Staffing, to stop or reduce doing business with Select Staffing and/or to do business with any subsequent employers of Employee and/or with any competing firm/business in which employee has any ownership interest.  Employee will not disclose or use to his/her benefit (or the benefit of any third party), or to the detriment of Select Staffing or its customers, and Confidential/Trade Secret Information.

(d)     Employee further agrees that during, and for a period of one (1) year immediately following termination of his/her employment with Select Staffing, Employee shall not interfere with the business of Select Staffing by inducing an Employee or temporary worker to leave Select Staffing's employ, or by inducing a customer to sever or reduce its business relationship with Select Remedy.

(e)     The parties agree that it may be difficult to determine Select Staffing's damages in the event any of its Employees, clients and/or temporary workers cease to do business with Select Staffing, and/or follows Employee to his/her new employer, after termination of his/her employment with Select Staffing.  Thus, it is agreed that any temporary or permanent job assignments made/obtained by Employee or, involving employees, temporary workers and/or clients who were actively working with/at Select Staffing at any time within 180 days prior to Employee's employment termination, who/which for any reason later does business, or his/her new employer or business, within one (1) year after termination of his/her employment with Select Staffing, may at Select Staffing's sole discretion and option and not that of Employee, be subject to the following terms:

(i)     A royalty fee payment of 35% of the total (gross) billings on all temporary and permanent placements obtained/handled by Employee, and/or his/her new business/employer for a period of one (1) year after Employee terminates his/her employment with Select Staffing within six (6) months prior to Employee leaving Select Staffing, shall be due from Employee to Select Staffing.

(ii)     This royalty fee shall be paid to Select Staffing within 15 days of receipt of payment for said services by the Employee, or his/her new employer or firm, or 35 days from the billing date, whichever is earlier. Copies of all relevant job placements/assignments and billing shall be provided to Select Staffing within five (5) calendar days after they are made.

(f)     Employee understands that it is Select Staffing's policy not to violate any trade secrets/proprietary information of others, including Employee's prior employers. Unless Employee has first obtained the prior written authorization to do so from a Select Staffing Officer, Employee agrees that he/she will not bring to, use at, or disclose to Select Staffing any trade secrets or proprietary information he/she obtained from any prior employers, and that he/she will not solicit the prior employers' clients, employees or temporary workers to do business with Select Staffing. Employee also warrants that he/she had returned all property belongings to all prior employers and that he/she has already provided, to Select Staffing any and all Trade Secret/Confidentiality Agreements that governed his/her prior employment.

## MISCELLANEOUS

(a)     **Whole Agreement -** This Agreement, along with the attached Appendices and Select Staffing's Policy Manual, set forth all the terms and conditions of Employee's employment with Select Staffing, and supersede any and all previous and contemporaneous understandings or agreements, whether written or oral, express or implied, between the parties.  In the event there is, or will be, any contradiction between the provisions of this Agreement and the Policy Manual (present or future versions), the provisions of this Agreement will supersede those of the Policy Manual as to the issues involved.

(b)     **Amendments -** None of the provisions of this Agreement, and any attachments hereto, can be amended unless such changes are in writing, signed by both Employee and a Select Staffing Officer; however, the provisions of the Policy Manual can be unilaterally amended by a writing signed by the Select Staffing Officer, and when so signed, shall bind Employee as long as said change does not contradict a provision in this Agreement.

(c)     **Representations -** Employee has not entered into this Agreement based on any inducements, promises, or representations made by anyone at Select Staffing which are not stated in this Agreement or in the Policy Manual.

(d)        **Severance -** If any provision of this Agreement shall be held invalid, such provision shall be severed from this Agreement, and the Remainder of this Agreement shall remain binding and enforceable.

(e)        **Titles -** The section/paragraph titles used in this Agreement and any Appendices are for convenience only and are not to be used as a limitation or aid in interpretation of the provisions covered.

(f)        **Cumulative Remedies -** No one right or remedy stated in this Agreement shall be exclusive of the others or any right or remedy allowed in law or in equity.  No failure to act by Select Staffing regarding any failure by the Employee to keep or perform any promise or condition of this Agreement shall act as a waiver of Select Staffing's rights, and any waiver by Select Remedy of any preceding breach will not act as a waiver of any later breach of the same or any other promise or condition.  No waiver by Select Staffing of any right shall be construed as a waiver of any other right.  Select Staffing shall not be required to give any notice to enforce strict adherences to all terms of this Agreement.

The parties have signed this Agreement in duplicate on the dates indicated after their names and the Employee acknowledges receipt of a copy.

**SELECT STAFFING**

By:  Joanne Koziol                          Title:HR Coordinator                          Date: 3/20/2009

**EMPLOYEE**

By:  Catherine Olinger                       Title:Staffing Consultant                      Date: 03/20/2009



ACKNOWLEDGEMENT OF STAFF PERSONNEL POLICIES

COLLEAGUE NAME: Catherine Olinger        SOCIAL SECURITY NUMBER: ██████████

## I.  STAFF PERSONNEL POLICY MANUAL

I understand that the Policies and guidelines in this Manual have been adopted voluntarily by Select Staffing and are not intended to give any rise to contractual rights or obligations, or to be construed as a guarantee of employment for any specific period of time or any specific type of work.

I also understand that I am required and responsible for reading this Policy Manual within thirty (30) days of starting employment with Select Staffing, and for knowing and adhering to the policies and guidelines in this Manual, including those explaining the meal and break time requirements. A copy of this Policy Manual is always available in the Human Resources page of Select Staffing's Intranet or from the Corporate Human Resources Department.

I understand that this Manual is the sole property of the company and that I may not copy or give any part of it to anyone outside the company.

Finally, I understand that Select Staffing, in its sole discretion, can change, delete or add to this Manual at any time, without advance notice or stated reason, as long as such changes are in writing and signed by an Officer of Select Staffing.

CO
Initials

## II.  AT-WILL EMPLOYMENT

The nature of all employment with Select Staffing is "at-will", at the mutual consent of the employee and Select Staffing. This means that employment may be terminated at any time, with or without cause, advance notice or stated reason, either at the option of the employee or Select Staffing. Terms and conditions of employment including promotions, change in job duties, locations and compensation can be changed at the sole discretion of Select Staffing, at any time, with or without cause, advance notice or stated reason. Further, Select Staffing may warn, reassign, suspend, demote or terminate any employee in its sole discretion, at any time, with or without cause, advance notice or stated reason.  No employee or representative of Select Staffing other than the President, has any authority to change this "at-will" employment arrangement, or to enter into an agreement for any specified period of time.  The President of Select Staffing may only enter into an agreement contrary to the foregoing if the President does so in a formal a written agreement fully executed by the President of Select Staffing and the employee.

I understand that my employment relationship with Select Staffing is "at-will".

CO
Initials

## III. MUTUAL AGREEMENT TO ARBITRATE

If Select Staffing and I are unable to resolve any dispute informally, I agree to having the dispute submitted and determined by binding arbitration in conformity with the procedures of the Federal Arbitration Act and the California Arbitration Act (California code of Civil Procedures section 1280, et. seq.), including section 1283.05 and all other rights to discovery.  Such disputes may include but not be limited to any involving breach of contract, fraud, misrepresentation, defamation, personal injury, wages, wrongful discharge, vacation pay, sick time pay, overtime pay, state and federal employment laws, and regulation including but not limited to the Fair Labor Standards Act (including the Equal Pay Act), the Civil Rights Act of 1964 as amended, 42 U.S.C. section 1981, the Americans with Disabilities Act, laws prohibiting discrimination by reason of religion, sex, age, color, national origin, handicap, disability, medical condition, marital status or other basis, ADEA, federal and state, state labor code provisions, the Family and Medical Leave Act, the Employee Retirement Income Security Act (ERISA), and any amendments thereto, state unfair competition or unfair business practices provisions, and those claims whether in law or equity, which either party could assert, at common law or under statue, rule, regulation, order of law, whether federal, state, or local.

CO
Initials

## IV.  AUTHORIZATION FOR RELEASE OF EMPLOYMENT/MEDICAL RECORDS

For the duration of my employment, I give permission to Select Staffing to furnish and release to its Workers' Compensation carrier and/or administrator, or any representative thereof, the following information:

1. All medical records pertaining to examinations, treatments, or consultations, including but not limited to, billing records, x-rays, history records, diagnosis and prognosis records, nurses' and doctors' notes and all reports and any psychiatric or mental health records, and all reports relating to diagnosis, care and treatment for drug and alcohol abuse.

2. All employment records retaining to employment with Select Staffing and any previous employer, including but not limited to, personnel records, payroll records, medical records, and time records.

I understand that the information obtained will be used by Select Staffing's Workers' Compensation carriers and/or administrators for the evaluation and processing of any claims for Workers' Compensation benefits as a result of any work-related injuries.  I do not give permission for any other use or re-disclosure of this information.

This authorization is valid until my claim has been accepted or denied, but in no event beyond one year from the date of my injury.  A photocopy of this Authorization is as effective as the original. I understand that I am entitled to c copy of this Authorization.

CO
Initials

## V.  PAYDAYS & PAY CHECKS

Select Staffing's payday is every other Friday.  Payroll checks can be direct deposited or can be picked at the employee's primary work location.  Each pay check covers work performed through the completion of the previous workweek.  Refer to the governing payroll calendar for specific paydays and pay periods.  Payroll checks may be directly deposited to an employee's bank account as directed on a Direct Deposit Authorization Form or may be picked up at the employee's primary work location or mail to the employee's home address.  I understand that if I elect to have my payroll check mail to my home, I take full responsibility for this action, should my paycheck be delayed by the U.S. Postal Service, and that it is  my responsibility to submit new information to Select Staffing should there be any change in my mailing address.  I realize that stop-payments will not be placed on checks lost in the mail for 10-working days from the date mailed.  Any tracking of mail through the U.S. Postal Service will be my responsibility. This authorization is to remain in effect until replaced by a new written authorization or is cancelled.

CO
Initials

## VI.  DRESS AND GROOMING STANDARDS

Select Staffing considers the presentation of its image to its customers and the public at large to be extremely important. Because Select Staffing's excellent service can only be provided through its employees, Select Staffing not only seeks good performance and conduct form its employees, but also expects them to observe high standards in their personal presentations. Accordingly, it is expected that all employees dress in a manner consistent with good hygiene, safety and professionalism. Employees are required to present maintain a businesslike appearance and be appropriately dressed for the office environment. Appropriate business dress is also required while on business travel when representing Select Staffing.

Appropriate clothing, as delineated below, is to be worn during business hours.  All grooming must to be done prior to entering the building/premises.  All clothing is to be pressed and presentable.  Closed-toe shoes, with socks or hosiery must be worn at all times.  Select Staffing does not endorse casual Fridays.

Acceptable attire:  business suite or sport coat, skirts of modest length with blouses or sweaters, tailored dresses, slacks with coordinating sleeved blouse – jacket optional and slacks with coordinating long-sleeved dress shirt and tie – coat optional.

Unacceptable attire:  hats of any kind, visible body art or visible piercing (modest ear piercing allowed); western shirts, undershirts with graphics that can be seen through the outer garment, tight clothing, uncovered sleeveless attire (i.e., tank tops, halters, and tees), inappropriately low-cut blouses, sweaters, dresses, exposed midriffs, see-through dresses or skirts, skirts shorter than 3" above the knee or high-slit skirts / dresses, shorts, skorts, casual capris, jeans or denim of any kind, baggy clothing (e.g., several layers of pant cuffs), sport shoes, sandals, cowboy boots, and open-toe shoes.

For safety reasons, on-site personnel and visitors are required to wear fully enclosed shoes with slip resistant soles when visiting client's facilities where conditions require this type of footwear.

In appropriately dressed employees will be sent home to change into appropriate clothing.  Repeat offenders will be subject to disciplinary action, including suspension without pay and/or termination.

CO
Initials

## VII.  DISCRIMINATION & HARASSMENT, INCLUDING SEXUAL HARASSMENT

I understand that Select Staffing does not tolerate harassment, including sexual harassment, or discrimination in violation of Federal or State law, whether based on sex, race, age, national origin, ancestry, religion, sexual orientation, marital status, physical or mental disability, or any other status protected by law.

**I understand that I have a responsibility to report any incident(s) of discrimination or harassment of any type <u>immediately </u>to the President of Select or Corporate Human Resources, who will promptly investigate all claims and take appropriate action. Telephone (800) 688-6162 for a direct line or (877) listen-0 to reach the Legal Complaint and Counseling Hotline.**

Signature of Employee:  Catherine Olinger                              Date:  03/20/2009

Witness (Office Manager / HR Representative:  Joanne Koziol/HR Coordinator         Date:  3/20/2009



INSIDER TRADING POLICY AND ACKNOWLEDGEMENT

### The Select Family of Staffing Companies

### POLICY ON INSIDER TRADING

In the course of conducting the business of The Select Family of Staffing Companies (the "Company"), you may come into possession of material information about other entities that is not available to the investing public ("material non-public information").  You must maintain the confidentiality of material non-public information and may not use it in connection with the purchase or sale of the securities of the entity to which the information relates.  The Company has adopted this policy on insider trading (the "Policy") in order to ensure compliance with the law and to avoid even the appearance of improper conduct by anyone associated with the Company.

Company policy and the laws of the United States strictly prohibit any director, officer, or employee of the Company, whenever and in whatever capacity employed, from trading of securities (including equity securities, convertible securities, options, bonds, and derivatives thereon) of any other company about which you acquire material non-public information in the course of your duties for the Company.  These restrictions apply to all Company officers, directors, and employees, wherever located, and to their spouses, minor children, adult family members sharing the same household, any trust or other estate in which an officer, director, or employee has a substantial beneficial interest or as to which he serves as trustee.

Under Company policy and United States laws, information is material if:

- there is a substantial likelihood that a reasonable investor would consider the information important in determining whether to trade in a security; or

- the information, if made public, likely would affect the market price of a company's securities.

**It is illegal for you to trade while in possession of material non-public information, including situations in which you are aware of major developments or transactions that have not yet been publicly announced.  The knowledge that an acquisition or other transaction between the subject company and our Company is under consideration would typically be material non-public information.**  It is also illegal and a violation of this Policy to convey such information to another (which is known as "tipping") if you know or have reason to believe that the person will misuse such information by trading in securities or passing such information to others who trade.  In addition, if you:

- receive material non-public information that you are not authorized to receive or that you do not legitimately need to know to perform your employment responsibilities, or

- receive confidential information and are unsure if it is within the definition of material non-public information,

you should not share it with anyone.  To seek advice about what to do under those circumstances, you should contact our General Counsel.  Consulting your colleagues can have the effect of exacerbating the problem.  Containment of the information, until the legal implications of possessing it are determined, is critical.

### Penalties for Violations of Law and This Policy

In the United States, the personal consequences to you of illegally trading securities while in possession of material non-public information can be quite severe, including disgorging of profits, penalties up to three times the illicit windfall, and individuals may be fined up to $5,000,000 and imprisoned for up to twenty years.  **Subject to applicable law, Company employees who violate this Policy may also be subject to discipline by the Company, up to and including termination of employment.**

You should refer questions or suspected violations of this Policy to our General Counsel in person, by telephone at (805) 456-5237 or in writing to the following address:

**General Counsel**
**The Select Family of Staffing Companies**
**3820 State Street**

**Santa Barbara, California 93105**


**ACKNOWLEDGMENT FORM**


I have received and read the Select Family of Staffing Companies Policy on Insider Trading and I understand its contents.  I agree to comply fully with the policies and procedures contained in the Policy on Insider Trading.  If I am an employee of the Company, I acknowledge that the Policy on Insider Trading is a statement of policy and procedure and does not, in any way, constitute an employment contract or an assurance of continued employment.


 Catherine Olinger
Colleague Name

Catherine Olinger
Colleague Signature

03/20/2009
Date



**VOLUNTARY DISCLOSURE FORM**

COLLEAGUE NAME: Catherine Olinger     SOCIAL SECURITY NUMBER: ███████

The Employer is an equal opportunity employer and may become subject to affirmative action provisions administered by the U.S. Department of Labor. These provisions require government contractors to take affirmative steps to employ and advance employment qualified individuals without regard to race, color, sex, religion, national origin, ancestry or age. In order to assist the Employer in complying with affirmative action requirements, you are invited to identify which race/ethnic group you are a member of by checking the appropriate category below.

☐ **Hispanic or Latino** – A person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin regardless of race

☒ **White (Not Hispanic or Latino)** – A person having origins in any of the original peoples of Europe, the Middle East, or North Africa

☐ **Black or African American (Not Hispanic or Latino)** – A person having origins in any of the black racial groups of Africa

☐ **Native Hawaiian or Other Pacific Islander (Not Hispanic or Latino)** – A person having origins in any of the peoples of Hawaii, Guam, Samoa, or other Pacific Islands.

☐ **Asian (Not Hispanic or Latino)** – A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian Subcontinent, including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam

☐ **American Indian or Alaskan Native (Not Hispanic or Latino)** – A person having origins in any of the original peoples of North and South America (including Central America), and who maintain tribal affiliation or community attachment

☐ **Two or More Races (Not Hispanic or Latino)** – A person who identifies with more than one of the above five races

The Employer may become subject to Section 503 of the Rehabilitation Act of 1973 and Section 402 of the Vietnam Era Veterans Readjustment Assistance Act of 1974, which requires government contractors to take affirmative action to employ and advance qualified disabled veterans, Vietnam era veterans, and other disabled individuals. If you are a special disabled veteran, Vietnam era veteran, newly separated or otherwise protected veteran, or other disabled individual, we would like to include you under the Affirmative Action Program.

☐ **Vietnam Era Veteran - Defined** as a person who (1) served on active duty for a period of more than 180days, any part of which occurred between August 5, 1964 to May 7, 1975, and was discharged or released with other than a dishonorable discharge; (2) was discharged or released from active duty for a service connected disability if any part of such active duty was performed between August 5, 1964 to May 7, 1975; or (3) served on active duty for more than 180 days and served in the Republic of Vietnam between February 28, 1961 to May 7, 1975.

☐ **Special Disabled Veteran** – Defined as a veteran who is entitled to disability compensation (or who but for the receipt of military retired pay would be entitled to compensation) under laws administered by the Veterans Administration for a disability (I) rated at 30% or more, or (II) rated at 10 and 20% in the case of a veteran who has been determined under Section 1506 to have a serious employment disability, or a person who was discharged from active duty because of a service-connected disability.

☐ **Newly Separated Veteran** – Defined as any veteran who served on active duty in the U.S. military service during the one-year period beginning on the date of such veteran's discharge or release from active duty.

☐ **Other Protected Veteran** - Defined as any veteran who served on active duty in the U.S. military service during a war or in a campaign or expedition for which a campaign badge has been authorized.

☐ **Disabled Individual** – Defined as someone with a physical or mental impairment that substantially limits one or more of the major life activities, for example, walking, seeing, speaking or hearing; a record of such an impairment, for example, a person who has recovered from cancer; being regarded as having such an impairment even when no limitations exist, for example, a person who is scarred from burns.

*This information is **voluntary** and refusal to provide it will not subject you to any adverse treatment. This information will be confidential and will be used in accordance with the above-mentioned acts. Your voluntary cooperation is greatly appreciated.*

☐ I **DECLINE** to participate in the voluntary disclosure program.



**PERSONNEL PRACTICES AGREEMENT**

As a condition of employment with Select Staffing, the following personnel practices will apply.

1. **AT-WILL EMPLOYMENT:** Select Staffing does not discuss hiring, promotion or termination decisions with Colleagues. Employment is on an at-will basis. I understand that the employment relationship may be terminated at any time, with or without cause, and with or without notice, either at my option or at the option of Select Staffing. In consideration of employment, conformity to the rules and standards of Select Staffing, as amended by Select Staffing from time-to-time at its discretion is required. Employment and compensation is for no definite period.

2. **WORK RELATED INJURIES:** All injuries on the job must be reported to my Supervisor who will report it to the Company. Colleagues will be referred to a medical provider for treatment of injuries.

3. **PAY DAY:** Colleagues are paid on a biweekly basis (i.e., every two (2) weeks). Pay days are Friday by end of business day. The governing payroll calendar is attached to this document as an Exhibit for your reference. Pay advances are not extended.

4. **EMPLOYMENT STATUS:** Full Time Colleagues are those working five (5) days per week and a minimum of 30 hours per week. Full Time Colleagues are eligible to participate in health and welfare benefit programs. Part Time – Class I Colleagues are those who regularly work more than 20 hours but less than 30 hours. Part Time – Class II Colleagues are those who regularly work less than 20 hours per week. Part Time Colleagues are ineligible to participate in health and welfare benefit programs.

5. **EXECUTIVE RECRUITERS:** Executive Recruiters that get paid a draw do not accrue paid time off and are therefore not eligible to participate in the vacation, sick pay and floating holiday programs. Executive Recruiters get paid their full draw every two weeks regardless of the number of hours they work during that pay period.

6. **PART-TIME ACCRUAL SCHEDULE:** Colleagues working less than a full 40 and more than a 20 hour per week schedule will accrue paid time off as per the following schedule:

| Scheduled Hours Worked per week | Time Off Accrual | Sick Pay Maximum Accrual |
|---|---|---|
| 39.9 to 32 | 6 hours | 96.0 hours |
| less than 32 but a least 20 | 4 hours | 60.0 hours |
| 20 hours or less | No Time Off Accrual | 0.0 hours |

Paid time off accruals will be based on a Colleague's regular work schedule. Colleagues working 20 or fewer hours are ineligible for time off benefits.

7. **PAID 2008 HOLIDAYS:** Company observed paid Holidays include the following:

| | |
|---|---|
| New Year's Day | Tuesday, January 1 |
| Memorial Day | Monday, May 26 |
| Independence Day | Friday, July 4 |
| Labor Day | Monday, September 1 |
| Thanksgiving Day | Thursday, November 27 |
| Christmas Day | Thursday, December 25 |

Colleagues are required to work or be on paid vacation status the day before and after the Holiday to qualify for Holiday pay. Colleagues on leave of absence do not qualify for Holiday pay. Colleagues working less than a full 40 hour work week will be paid based on the Part Time Accrual Schedule.

8.   VACATION PROGRAM:  Paid Vacation accruals are based on tenure as per the following schedule:

| Tenure | Annual Accrual | Maximum Accrual |
|---|---|---|
| 0 to less than 7 months | No Accrual | No Accrual |
| 7 months to less than 13 months | 5 Days / 40 Hours | 40 Hours |
| 13 months to less than 5 years | 10 Days / 80 Hours | 120 Hours |
| 5 to less than 10 years | 15 Days / 120 Hours | 160 Hours |
| 10 or more years | 20 Days / 160 Hours | 200 Hours |

Colleagues accrue paid Vacation on a biweekly basis as per the schedule noted above. Colleagues cease to accrue paid vacation at such time as the maximum accrual has been met. Vacation advances are not permitted and therefore not granted. Colleagues working less than a full 40 hour work week will accrue time off as per the Part Time Accrual Schedule. Vacation balances are printed on Colleague payroll check statements. Accrued unused Vacation hours are paid at termination.

Colleagues are required to provide advance notice when requesting Vacation days off. Each department / Branch maintains their own advance notice requirements based on their operational needs. It is each Colleague's responsibility to familiarize themselves with their department / Branch's governing policy.

9.   SICK PAY PROGRAM:  Colleagues working a full 40 hour per week schedule will be eligible for forty hours of paid Sick Pay in a 12-month period. Colleagues working less than a full 40 hour work week will accrue time off as per the Part Time Accrual Schedule. Sick Pay accruals begin after 30 days of employment service for newly hired Colleagues. Sick Pay accrues on a biweekly basis. The maximum accrual is 120.0 hours for Colleagues working a full 40 hour work week. Part time Colleagues will accrue up to a prorated maximum based on their regular work schedule. Colleagues will continue to accrue Sick Pay benefits until such time as the maximum accrual has been met. Accrued unused Sick Pay balances are not paid at termination.

10. FLOATING HOLIDAY PROGRAM:  Colleagues working a full 40 hour per week schedule will accrue Floating Holidays as follows:

| | |
|---|---|
| 0 to less than 7 months | None |
| 7 months to 1 year | 1 Day |
| 1 year to less than 2 years | 2 Days |
| 2 years or more | 3 Days |

Floating Holidays may be carried over from one year to the next up to a maximum of 80.0 hours based on a full 40 hour work week. Floating Holidays may be taken at any time. Accrued unused Floating Holiday balances are paid at termination. Colleagues working less than a full 40 hour work week will be paid based on the Part Time Accrual Schedule. Colleagues are required to provide advance notice when requesting a Floating Holiday. Each department / Branch maintains their own advance notice requirements based on their operational needs. It is each Colleague's responsibility to familiarize themselves with their department / Branch's governing policy.

11. JURY DUTY PAY PROGRAM:  Colleagues working a full 40 hour per week schedule will be eligible for ten (10) days of Jury Duty Pay per jury summons. Colleagues working less than a full 40 hour work week will be paid based on the Part Time Accrual Schedule. In order to qualify for Jury Duty Pay, Colleagues must present a Jury Duty summons and release.

12. BEREAVEMENT LEAVE:  Colleagues are eligible for three (3) days of Bereavement Pay in the event of the death of an immediate family member. Immediate family includes a current spouse, registered domestic partner, parent, step-parent, child, step-child, sibling, step-sibling, current parent-in-law, grandparent, and grandchild. Colleagues working less than a full 40 hour work week will be paid based on the Part Time Accrual Schedule. Additional time off may be taken by using accrued Vacation or Floating Holidays. Bereavement Pay is not extended during a leave of absence.

13. **LEAVE OF ABSENCE ENTITLEMENT:**  The following Leave of Absences are available to Colleagues who meet the eligibility requirements:

| Leave Type | Length of Service Requirement | Entitlement Period |
|---|---|---|
| Family Medical Leave Act (FMLA) | 1,250 hours and 12 months of service | 12 weeks |
| California Family Rights Act (CFRA) | 1,250 hours and 12 months of service | 12 weeks |
| Pregnancy Disability Leave (PDL) | No length of service requirement | 16 weeks |
| California Paid Family Leave (PFL) | No length of service requirement | 6 weeks |
| Personal Medical Leave  (PML) | No length of service requirement | 10 days |

Colleagues will be required to use accrued unused Sick Pay during a qualified Leave of Absence.

14. **GROUP HEALTH INSURANCE ELIGIBILITY:**  Colleagues are initially eligible to enroll in the Company's health benefits the first day of the month following two full months of Colleague employment and at open enrollment.  Newly hired Colleagues will receive initial enrollment instructions via e-mail approximately two weeks prior to their benefit effective date.

15. **401 (K) ELIGIBILITY:**  Non-highly compensated Colleagues 21 years of age or older are eligible to enroll in the Company's 401(k) Savings Plan after 6 months of employment.  Newly hired Colleagues will receive initial enrollment instructions via e-mail approximately two weeks prior to their benefit effective date.

16. **DEFERRED COMPENSATION ELIGIBILITY:**  Colleagues earning a minimum of $105,000.00 in 2007 are eligible to enroll in the Company's 2008 Deferred Compensation Plan at open enrollment. The IRS highly compensated limit is subject to change annually. Newly hired Colleagues will receive initial enrollment instructions during open enrollment.

17. **SECTION 529 COLLEAGUE SAVINGS PLAN:**  Colleagues are eligible to enroll in the Section 529 Saving Plan the first day of the month following two full months of Colleague employment.  Newly hired Colleagues will receive initial enrollment instructions via e-mail approximately two weeks prior to their benefit effective date.

18. **ANNIVERSARY PROGRAM:**  Colleagues are eligible to participate in the Anniversary Program as follows:

| Anniversary Level | Anniversary Gift |
|---|---|
| One Year | Select Staffing Business Card Holder |
| Two Year | $100 Gift Certificate |
| Three Year | $150 Gift Certificate |
| Four Year | $200 Gift Certificate |
| Five Year | $250 Check |
| Six Year | $300 Gift Certificate |
| Seven Year | $350 Gift Certificate |
| Eight Year | $400 Gift Certificate |
| Nine Year | $450 Gift Certificate |
| Ten Year | One Week Trip for Two |
| Eleven Year | $500 Gift Certificate |
| Twelve Year | $600 Gift Certificate |
| Thirteen Year | $700 Gift Certificate |
| Fourteen Year | $800 Gift Certificate |
| Fifteen Year | Two Week Trip for Two |
| Sixteen Year | $1,000 Gift Certificate |
| Seventeen Year | $1,500 Gift Certificate |
| Eighteen Year | $2,000 Gift Certificate |
| Nineteen Year | $2,500 Gift Certificate |
| Twenty Year | Two Week Trip for Two |

*Please contact Naomi Gonzales for any questions regarding years 2-4, 6-9, 11-14 & 16-19.*
*Please contact Melinda Pecora for any questions regarding years 1, 5, 10, 15, 20 & 25.*

A Colleague's anniversary date will be based on their employment with Select.  An acquired Colleague's anniversary date will be based on the acquisition date.  Time off related to the anniversary trip award will be taken from accrued unused vacation and/or floating holiday time.  Unpaid time off may be taken with management approval.  Anniversary trips must be taken within twelve calendar months of the award date (i.e., the anniversary date).  Should the desired trip surpass the allocated budget, a colleague is welcome to pay the difference.  Such co-payment will be made prior to the trip departure.  Anniversary gifts may not be redeemed for cash and must be taken while on active employment status.  Trips are surrendered upon termination or voluntary resignation.

19. TUITION REIMBURSEMENT PROGRAM:  Full Time Colleagues (i.e., colleagues working a minimum of 32 hours per week) with a minimum of 12 months of continuous employment are eligible to participate in the Tuition Reimbursement Program.  The program provides reimbursement for work related courses with a grade of "B" or better that have been pre-authorized by Human Resources.  Time spent in school or on course study, books, fees, and materials will not be reimbursed.  Pre-authorized tuition reimbursement will be paid based on length of employment service as follows:  Up to $2,500 for 2 years to less than 5 years; Up to $5,000 for 5 years to less than 10 years; and Up to $10,000 for 10 years or more.  The life time maximum reimbursement is $10,000.  Colleagues must be on active employment status at the time of reimbursement.

ACKNOWLEDGEMENT

Catherine Olinger (Electronic Signature)
_____
Catherine Olinger, 03/20/2009  Colleague Name, Date



MEDICAL PROVIDER NETWORK NOTICE
**CALIFORNIA EMPLOYEE ONLY**

COLLEAGUE NAME: _____          SOCIAL SECURITY NUMBER: _____

### MEDICAL PROVIDER NETWORK NOTIFICATION
### ACKNOWLEDGEMENT FORM

I acknowledge that Select Staffing has informed me of my Rights & Benefits under the Medical Provider Network (MPN) Program. I have been given copies of both MPN Programs.  Both have been made available to me in English and Spanish.

Colleague Signature:                              Date:

Supervisor's Signature:                           Date: