UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **EMPLOYBRIDGE, LLC**, a California Limited Liability Company, and **EMPLOYMENT SOLUTIONS MANAGEMENT, INC.**, a Georgia Corporation,<br><br>                    Plaintiffs,<br><br>        v.<br><br>**RIVEN ROCK STAFFING, LLC**, a Nevada Limited Liability Company, **LARRY SHAUN SHEPHERD**, an individual, **CATHERINE OLINGER**, an individual, **TERRY MILLER**, and individual, **TIMOTHY JACQUEZ**, an individual, and Does 1 through 25, inclusive,<br><br>                    Defendants. | **CASE NO. 16-833-WJ/KK**<br><br>**AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR ARBITRATION** |

## <u>AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF</u>

COME NOW Plaintiffs EMPLOYBRIDGE, LLC and EMPLOYMENT SOLUTIONS

MANAGEMENT, INC. (collectively "EmployBridge" or "Plaintiffs") and hereby file this

Amended Complaint against Defendants RIVEN ROCK STAFFING, LLC ("Riven Rock"),

LARRY SHAUN SHEPHERD ("Shepherd"), CATHERINE OLINGER ("Olinger"), TIMOTHY

JACQUEZ ("Jacquez"), and TERRY MILLER ("Miller") (collectively, "Defendants"), and state

as follows:

### <u>INTRODUCTION</u>

1.      EmployBridge is forced to bring this suit seeking injunctive relief and to recover

damages arising out of Defendants' wrongful acts against EmployBridge.  As set forth in greater

detail below, this lawsuit seeks to prevent Shepherd, a former Regional Manager at

EmployBridge, Olinger, a former Branch Manager at EmployBridge, Jacquez, a former

Utilization Manager at EmployBridge, Miller, a former Sales Manager at EmployBridge, and Riven Rock, the company that Shepherd and Olinger operate together, from unlawfully competing against EmployBridge in violation of written agreements entered into by Shepard in July 2011, Olinger in March 2009, Jaquez in April 2015, and Miller in April 2015 (the "Agreement(s)").  The Agreements serve to (1) protect EmployBridge's trade secrets and confidential information, (2) prevent Defendants from soliciting EmployBridge's employees and customers, and (3) restrain Shepherd and Olinger from competing directly with EmployBridge.  EmployBridge also seeks to prevent Defendants from engaging in unfair competition and tortious interference in violation of common law.

2.      As set forth below, notwithstanding these Agreements, Defendants have embarked on an intentional and coordinated scheme to pilfer EmployBridge's business in the Albuquerque market by unlawfully recruiting and hiring away EmployBridge's employees, soliciting EmployBridge's longstanding customers, and exploiting EmployBridge's confidential information and trade secrets, all in direct violation of Defendants' contractual, statutory, and common law obligations.

3.      As also set forth in greater detail below, EmployBridge stands to suffer immediate and irreparable harm to its customer and employee relationships as a result of Defendants' unlawful actions.  Defendants have already hired away EmployBridge employees and successfully displaced EmployBridge's business with longstanding customers.  Unless Defendants are restrained from further unfair competition and ordered to cease their unlawful conduct, EmployBridge will suffer immediate and irreparable harm.

## PARTIES

4.      Plaintiff EmployBridge, LLC, f/k/a Koosharem Corporation, is a limited liability company organized and existing under the laws of the State of California, with its principal place

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

of business in Santa Barbara, California.  All members of EmployBridge, LLC are citizens of California, Georgia, or Delaware.  EmployBridge, LLC provides comprehensive staffing and workforce management services through several of its operating subsidiaries under various brand names, including Select Staffing, ProDrivers, Remedy Intelligent Staffing, ResourceMFG, ProLogistix, RemX, Select Truckers Plus, and Westaff.

5.     Plaintiff Employment Solutions Management, Inc. is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business in Atlanta, Georgia.  Employment Solutions Management, Inc. is an indirect subsidiary of EmployBridge, LLC and employed the Individual Defendants and others who performed the business of EmployBridge under the Select Staffing, ProDrivers, and EmployBridge names in the Albuquerque market.

6.     Defendant Riven Rock is a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business in Albuquerque, New Mexico.  Riven Rock provides staffing, workforce management, and professional driving services and is a direct competitor of EmployBridge.

7.     Defendant Shephard is a New Mexico citizen domiciled in Albuquerque, New Mexico.  Shephard was employed by Employment Solutions Management, Inc. and/or its predecessors from July 2011 until his resignation effective February 5, 2016.  At the time of Shephard's departure from EmployBridge, he served as the Regional Manager of EmployBridge's Southwest region.

8.     Defendant Olinger is a New Mexico citizen domiciled in Albuquerque, New Mexico.  Olinger was employed by Employment Solutions Management, Inc. and/or its predecessors from March 2009 until her resignation effective February 5, 2016.  At the time of

Olinger's departure from EmployBridge, she was the Branch Manager of EmployBridge's Albuquerque, New Mexico, office.

9.      Defendant Jacquez is a New Mexico citizen domiciled in Rio Rancho, New Mexico.  Jacquez was employed by Employment Solutions Management, Inc. from May 1, 2015, until his resignation effective June 22, 2016.  At the time of Jacquez's departure from EmployBridge, he was the Utilization Manager at EmployBridge's Albuquerque, New Mexico, office.

10.     Defendant Miller is a New Mexico citizen domiciled in Rio Rancho, New Mexico.  Miller was employed by Employment Solutions Management, Inc. from April 20, 2015, until his resignation effective April 22, 2016.  At the time of Miller's departure from EmployBridge, he was the Sales Manager at EmployBridge's Albuquerque, New Mexico, office.

11.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendant Does 1 through 25 are unknown at this time to EmployBridge, who therefore sues said Defendants by such fictitious names.  EmployBridge will amend this Complaint by inserting the true names and capacities of each Doe Defendant, with appropriate charging allegations, at such time as they are ascertained.

12.     On information and belief, EmployBridge alleges that at all times material to this Complaint, each of the named and fictitiously-named defendants, in addition to acting for himself, herself, or itself, and on his, her, or its own behalf, is and was acting as the agent, servant, employee, and representative of, and with the knowledge, consent, and permission of, and in conspiracy with each and all of the defendants and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.  EmployBridge further alleges on information and belief that the acts of each of the defendants were fully ratified by each and all of the defendants.  Specifically, and without limitation, EmployBridge alleges on

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

information and belief that the failures to act, breaches, and conspiracy alleged herein and attributed to one or more of the specific defendants, were approved, ratified, and accomplished with the cooperation and knowledge of each and all of the defendants.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. § 1331, because EmployBridge's claims against Defendants under the DTSA, 18 U.S.C. § 1833, *et seq.*, raise a Federal question.  EmployBridge's remaining claims fall within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the claims are so related to the Federal question that they form part of the same case or controversy.

14.    This Court has personal jurisdiction over the Defendants, and venue is proper in this District under 28 U.S.C. § 1391(a), because the Defendants committed and continue to commit tortious acts directed at and related to New Mexico and a substantial part of the events giving rise to these claims occurred in this District.

## FACTUAL ALLEGATIONS

### EmployBridge's Business, Its Customer Relationships, and Its Confidential, Proprietary, and Trade Secret Information

15.    EmployBridge is the nation's largest specialty staffing supplier.  EmployBridge is a privately owned national leader in branded, industry-specific staffing solutions and workforce management strategies.  EmployBridge was formed in 2000.  Today, it spans over 490 locations throughout the U.S. and is the fastest growing national provider of staffing and workforce solutions.

16.    EmployBridge offers staffing solutions in the commercial, transportation, professional, and energy markets.  It operates through a variety of subsidiaries and divisions, including Select Staffing, ProDrivers, Remedy Intelligent Staffing, Select Truckers Plus, and

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Westaff, many of which are former stand-alone staffing companies that EmployBridge has acquired.

17.    EmployBridge enjoys longstanding, near-permanent relationships with customers throughout the United States, including in New Mexico.  EmployBridge has successfully established and maintained both local and national customer accounts by offering services of the highest quality and value.  In most instances, once EmployBridge develops a business relationship with its customers, those relationships last many years, if not permanently.

18.    EmployBridge's success in the highly competitive staffing business is a result of ingenuity and years of hard work.  EmployBridge's confidential, proprietary, and trade secret information, as well as its employee and customer relationships, are the lifeblood of its business. EmployBridge's business is profitable by virtue of its strategic structuring and implementation of cost methodologies, margins, discounts, and pricing, all of which are maintained by the company as highly confidential and are not generally known in the public domain.

19.    EmployBridge's sales representatives, business development managers, marketing personnel, and all EmployBridge employees contribute to and are successful by virtue of their access to EmployBridge's trade secrets.

20.    EmployBridge attracts new customers through its sales representatives largely based on its well-established, long-standing marketing efforts and reputation within the industry, as well as through its relationships with specific businesses.  EmployBridge has developed and maintained valuable relationships and created substantial goodwill with its customers.

**Defendants Enjoyed Access to EmployBridge Support's Trade Secrets,
Which Are Not Generally Known to The Public or
<u>Those Within The Staffing Solutions Industry</u>**

21.    EmployBridge has invested considerable time, effort, and expense to acquire, aggregate, and analyze customer data and customer-related data created by EmployBridge for

use in its ongoing efforts to remain the premier provider of a full range of staffing solutions. EmployBridge has spent years gathering data on the purchasers and prospective purchasers of its services.  It has spent millions of dollars in obtaining, analyzing, maintaining as confidential, and using this information to compete in the highly-competitive marketplace in which it does business.

22.     As the Regional Manager for EmployBridge's Southwest region, Shepherd had access to the following types of highly confidential documents and information:  (1) weekly sales commission earnings reports—documents revealing weekly commission reports for each member of the sales force in EmployBridge's Southwest region, as well as information regarding each person's earnings, weekly sales, and any draw provided to that individual; (2) weekly key accounts recaps—information that reveals sales trends of all of EmployBridge's major accounts; (3) bonus compensation documents—documents that contain information about the compensation given to all sales personnel in the Southwest region, which is confidential and proprietary to EmployBridge; (4) lists of EmployBridge's existing and prospective accounts; (5) sales plans reports—documents that contain data regarding strategy for improving EmployBridge's sales margin; (6) promotional data—information based on a weekly marketing meetings that Shepherd attended; (7) weekly marketing recap—documents that summarize EmployBridge's marketing initiatives revealing EmployBridge's big picture marketing strategy; (8) EmployBridge's Annual Operating Plan, which included projections that can be broken down by sales, cases, margin, and profitability; (9) EmployBridge profit and loss statements; (10) corporate initiative information—data regarding EmployBridge's corporate level initiatives; (11) margin management reports—documents that show the different margin opportunities that would allow EmployBridge to be more profitable; (12) new customer churn rate—information that reveals how often customers leave EmployBridge for other employment solution providers, or

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

join EmployBridge from other providers; and (13) monthly financial reports and financial audits—which contain information about the overall health of EmployBridge, including its overall profitability.

23.     In addition, because Shepherd was formerly employed by predecessors of EmployBridge, LLC that conducted business under the Select Staffing brand name, he was in a unique position to access both EmployBridge's current data and Select Staffing's legacy data, not all of which was yet incorporated into EmployBridge's systems.

24.     The confidential information to which Shepherd had access would be highly valuable to a competitor such that Shepherd cannot work in a competitive position in Albuquerque, New Mexico, area without inevitably making use of the confidential information disclosed to him during his employment with EmployBridge.

25.     By way of example, the weekly sales commission earning reports and the bonus compensation documents contain information that would be extremely significant to a competitor interested in recruiting members of the EmployBridge team.  This information would equip a competitor with an approximate dollar amount that it would need to offer an EmployBridge employee in order to lure her or him away from EmployBridge.  On information and belief, Defendants have used this or similar information to hire and attempt to hire away EmployBridge employees.

26.     Similarly, knowledge about EmployBridge's prices and margins would put a competitor in a position to underbid EmployBridge on placements with established customers going forward.  Weekly account recaps would reveal potential target accounts that have weak or declining relationships with EmployBridge and that could in turn be successful target clients for an EmployBridge competitor.  On information and belief, Defendants have used this or similar information to lure or attempt to lure away EmployBridge customers.

27.     In addition to the above, EmployBridge's confidential and proprietary information includes, *inter alia*, pricing, marketing plans, business plans, business strategies, and customer information, including, but not limited to, customer lists, customer preferences, strategies for soliciting prospective customers, pricing, margins, promotions, advertising allowances, customer marketing data and purchasing patterns, applicable discounts, and planned research and development for its customer base.  This information is stored on EmployBridge's password-protected computer systems.

28.     Olinger also enjoyed access to EmployBridge's trade secret, business, and customer information.  In her role as the Branch Manager of EmployBridge's Albuquerque, New Mexico, office, Olinger regularly compiled and saved EmployBridge customer lists, pricing information, and pay data.

29.     As, respectively, EmployBridge's Utilization Manager and Sales Manager for the ProDrivers division, Jacquez and Miller had access to ProDrivers' client lists, including clients' telephone numbers, email addresses, and billing rates.  In addition, they had access to ProDrivers' list of licensed commercial drivers, including their personnel files, contact information, and pay rates.  Moreover, Jacquez and Miller had access to company-wide EmployBridge data, which includes employee and client information across the country.

30.     EmployBridge's trade secret, business, and customer information is of great value to EmployBridge and such information would give any competitor who improperly acquired it an unfair competitive advantage by, among other things:  (a) not having to expend the time and resources to develop the trade secret information as EmployBridge has done; (b) being able to quickly and effortlessly develop strategies, marketing plans, products, and services to unfairly compete with EmployBridge in order to diminish EmployBridge's competitive

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

advantage; and (c) making it alert both to profitable initiatives that should be pursued and to unsuccessful practices that should be avoided.

31.     EmployBridge's trade secret information is not generally known in the industry and is valuable because EmployBridge derives economic value from the information not being publicly available.

32.     EmployBridge protects its trade secret, business, and customer information by, among other safeguards, requiring employees to keep confidential business and customer information confidential; password protecting computers; limiting access to information; requiring employees to sign non-solicitation, non-competition, and non-disclosure and computer access and use agreements; and requiring employees to acknowledge receipt of, and agreement to comply with EmployBridge's Trade Secret/Confidential Information Policy.

**Defendants' Employment With EmployBridge and/or its Predecessors and Their Contractual Obligations**

33.     In return for valuable consideration worth many thousands of dollars, including, but not limited to, receiving access to new EmployBridge's confidential, proprietary and/or trade secret information, Defendants agreed to enter into Agreements not to misuse EmployBridge's confidential, proprietary, and/or trade secret information.  Defendants also agreed that during their employment, and for a period of one year following their termination, they would not solicit any EmployBridge employees and would not solicit any EmployBridge customers.

34.     In addition, Shepherd and Olinger agreed that they would not engage in a business that competed with EmployBridge if that business was within a 15-mile radius of EmployBridge.  A true and correct copy of Shepherd's Agreement, entered into on or about July 28, 2011, is attached hereto as Exhibit 1.  A true and correct copy of Olinger's Agreement, entered into on or about March 20, 2009, is attached hereto as Exhibit 2.  A true and correct copy of Jacquez's Agreement, entered into on or about April 16, 2015, is attached hereto as Exhibit 3.

A true and correct copy of Miller's Agreement, entered into on or about April 17, 2015, is attached hereto as Exhibit 4.

### Shepherd and Olinger's Employment Agreements

35.   Shepherd and Olinger's Agreements contain provisions whereby Shepherd and Olinger agree not to use, disclose, or divulge any of EmployBridge's Trade Secret or Confidential Information after termination of employment, or during employment other than as required for the performance of their job duties and as authorized by EmployBridge. Specifically, Shepherd's Agreement provided as follows:

### TRADE SECRET / CONFIDENTIALITY INFORMATION

(a) Select Staffing has expended a substantial amount of time, effort and money to establish and maintain an excellent reputation and working relationships with its clients, employees and temporary workers, as well as to establish and maintain substantial information and data base regarding its present and prior clients, employees and temporary workers. Trade Secrets and Confidential Information are information and documents that are valuable to Select Staffing and not generally available to the public and that otherwise meet any additional requirements of applicable law. Confidential and Trade Secret Information includes information and documents regarding Select Staffing's teaching, sales and business operations techniques; forms; marketing surveys and strategies; financial information about Select Staffing, its employee's, customers and temporary workers; its agreements with its employees, temporary workers and customers; and identities of its customers, temporary workers and suppliers; Select Staffing's billing records; information about past, current and future temporary workers, customers and employees; and all forms, systems and programs used by Select Staffing.

(b) Employee agrees that all such Trade Secret/Confidential Information, even the clients and temporary workers developed, obtained or recruited by Employee, or with whom/which he/she may deal while he/she is employed by Select Staffing are, and shall remain, the property Select Staffing and not Employee. Both during employment with Select Staffing and for a period of five (5) years after his/her employment with Select Staffing ends, Employee will not use, disclose or divulge Select Staffing's Trade Secrets/Confidential Information, except as needed to perform his/her duties during employment with Select Staffing.

(c) During employment with Select Staffing and for one (1) year after the end of his/her employment with Select Staffing, Employee agrees that he/she will not solicit any Select Staffing employees or temporary workers to end their employment with Select Staffing. This restriction is limited to employees with

whom Employee dealt during the last twelve (12) months of his/her employment with Select Staffing. During employment with Select Staffing and for one (1) year after the end of his/her employment with Select Staffing, Employee agrees that he/she will not solicit any customers of Select Staffing for the purpose of offering services that compete with those offered by Select Staffing. This restriction is limited to customers with whom Employee had contact during the last twelve (12) months of his/her employment for the purposes of conducting business on behalf of Select Staffing.

(d) During employment with Select Staffing and for a period of one (1) year after the end of his/her employment with Select Staffing, Employee shall not compete with Select Staffing by performing the same or substantially the same job duties for a competitor as he/she performed for Select Staffing. This restriction is limited to the following territory: the geographic area comprised of a 15 mile radius from the Branch Office.

36.     The Shepherd Agreement defines the "Branch Office" as 6121 Indian School Rd N.E. Suite 132, Albuquerque, New Mexico 87110.

37.     The Shepherd Agreement also states that "[a]ll tangible materials, equipment, documents, copies of documents, data compilations (in whatever form), software programs, and electronically created or stored materials that Employee receives or makes in the course of employment with Select Staffing are and shall remain the property of Select Staffing and Employee shall immediately return such property to Select Staffing upon Select Staffing's request and upon the termination of Employee's employment, for whatever reason."

38.     Similarly, Olinger's Agreement provided as follows:

**TRADE SECRET / CONFIDENTIALITY INFORMATION**

(a)     Select Staffing has expended a substantial amount of time, effort and money to establish and maintain an excellent reputation and working relationships with its clients, employees and temporary workers, as well as to establish and maintain substantial information and data base regarding its present and prior clients, employees and temporary workers. By example and without limitation, Confidential and Trade Secret Information includes all information and documents concerning Select Staffing's teaching, sales and business operations techniques; forms; marketing surveys and strategies; financial information about Select Staffing, its employee's, customers and temporary workers; its agreements with its employees, temporary workers and customers; and identities of its customers, temporary workers and suppliers; Select Staffing's billing records; information about past, current and future temporary workers, customers and

employees; and all forms, systems and programs used by Select Staffing. Confidential information also includes all information and documents, the unauthorized disclosure of which could be detrimental to the interest of Select Staffing, its temporary workers, employees and/or customers, whether or not such information is specifically described above as Confidential Information.

(b)     Employee agrees that all such Trade Secret/Confidential Information, even the clients and temporary workers developed, obtained or recruited by Employee, or with whom/which he/she may deal while he/she is employed by Select Staffing are, and shall remain, the property and trade secrets of Select Staffing and not Employee. Both during and after his/her employment with Select Staffing, Employee will maintain and preserve all of said documents and information as confidential, and he/she will not directly or indirectly, use, sell, show, divulge or provide such information to any person outside of Select Staffing's employ, or within Select Staffing who does not have a need-to-know, without the prior written consent of an Officer of Select Staffing. Employee further agrees not to cause the transmission, removal or transport of Confidential/Trade Secret Information from Select Staffing's office, without prior written approval of an Officer of Select Staffing and to not publish, disclose, or otherwise disseminate such information without prior written approval of the President of Select Staffing. Employee acknowledges that he/she is aware that the unauthorized disclosure of Confidential Information of Select Staffing, its customers or its temporary workers and employees or its clients, may be highly prejudicial to their interests, an invasion of privacy, and an improper disclosure of trade secrets.

(c)     During and for one (1) year after termination of his/her employment with Select Staffing, Employee agrees that he/she will not influence, or attempt to influence, either directly or indirectly, any Select Staffing employees, customers or temporary workers, who have dealt or done business with Select Staffing at any time within six (6) months prior to Employee's termination, including but not limited to those who may be recruited, or developed by Select Staffing while he/she is employed at Select Staffing, to stop or reduce doing business with Select Staffing and/or to do business with any subsequent employers of Employee and/or with any competing firm/business in which employee has any ownership interest. Employee will not disclose or use to his/her benefit (or the benefit of any third party), or to the detriment of Select Staffing or its customers, and Confidential/Trade Secret Information.

(d)     Employee further agrees that during, and for a period of one (1) year immediately following termination of his/her employment with Select Staffing, Employee shall not interfere with the business of Select Staffing by inducing an Employee or temporary worker to leave Select Staffing's employ, or by inducing a customer to sever or reduce its business relationship with Select Remedy.

39.     Both Agreements also state that Shepherd and Olinger agree to have any dispute between themselves and EmployBridge "submitted and determined by binding arbitration in conformity with the procedures of the Federal Arbitration Act and the California Arbitration Act

13

(California Code of Civil Procedure section 1280, *et. seq.*), including section 1283.05 and all other rights to discovery."

### Jacquez and Miller's Employment Agreements

40.     Like Shepherd and Olinger, Jacquez and Miller agreed not to use, disclose, or divulge any of EmployBridge's Trade Secret or Confidential Information after termination of employment, or during employment other than as required for the performance of their job duties and as authorized by EmployBridge.  Specifically, Jacquez and Miller's Agreements provided as follows:

> I understand that in the course of my employment with Company in the aforementioned capacity, I will be given access to certain of your confidential, commercially sensitive, proprietary, and trade secret information, including but not limited to lists of customers, prospects, direct hire candidates and employees, employee applications, resumes, skills inventory sheets and similar summaries of employee and candidate qualifications, customer billing rates and temporary employee pay rate schedules, revenue and expenses, sales reports and analyses, employee reports and analyses, customer job orders, methods of operation, sales techniques, statistical information, the contents of training, operational, procedural and sales manuals, computer programs and the like (collectively, "Confidential Information") (which I agree is your Confidential Information), and I further understand that you have expended substantial sums of money for advertising, public relations work and otherwise to solicit customers for your business, and to recruit and indoctrinate available direct hire personnel and temporary personnel to serve as your employees to render services to such customers and that you will provide me with thorough indoctrination and training in your methods of operation. I understand that your unique and specialized training has been developed to continually train employees so that they work at their maximum potential. In consideration of the valuable benefits I shall receive from you as described above and as a condition of my employment (or continued employment) by you I agree:

> 1.    That at all times while I am an employee of Employer and for a period of twelve (12) months thereafter, I will not, directly or indirectly, induce any customers of the Company for whom I have had responsibility or with whom I have had any contact to patronize any business other than that of the company, or canvass, solicit, accept, or service any business from any customers of the Company for whom I have had responsibility or with whom I have had any contact, or request or advise any customers of the Company for whom I have had responsibility or with whom I have had any contact to withdraw, curtail, or cancel their business with the Company. The geographic area for this restriction is the area where the customer is located.

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

2. That Company's work force is a valuable and essential asset of Company's business and that its employees were recruited and trained at considerable expense to Company. Thereby, at all times while I am an employee of the Company and for a period of twelve (12) months thereafter, I will not, directly or indirectly, recruit, induce or advise or to be employed by (as an employee or independent contractor) any person or entity other than the Company.

3. That at all times while I am an employee of Employer, and at any time thereafter, I will not disclose or make available any Confidential, Commercially Sensitive, Proprietary and or Trade Secret Information of the Company to any person or entity.

### Shepherd's and Olinger's Resignations

41.      On or about the morning of February 5, 2016, Shepherd resigned from EmployBridge effective immediately.

42.      On or about the evening of February 5, 2016, Olinger left EmployBridge without providing notice of her resignation.

43.      When Shepherd and Olinger left EmployBridge, they returned their company cars, their keys to the EmployBridge office, and their company-issued cellular telephones. Shepherd and Olinger also left their company-issued laptop computers, but the hard drives of their computers had been deleted.

### Defendants' Creation of Riven Rock and Breaches of Their Agreements and the Impending Irreparable Harm Faced by EmployBridge

44.      Approximately one month before he resigned, Shepherd filled two bankers boxes with EmployBridge files.  Shepherd left the boxes in his office and told other EmployBridge employees that they were there and filled with important files.  A few days later, Shepherd announced that the boxes had been stolen, and, again, told other EmployBridge employees about this.  Those boxes were never recovered.

45.      Following Shepherd and Olinger's resignations, EmployBridge took inventory of their offices.  Given Shepherd and Olinger's positions at EmployBridge, they would have needed

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

to and did store numerous files—containing, *inter alia*, client contacts, sales reports, profit and loss statements, promotional data, and financial and audit reports—in file cabinets in their offices.  However, when Shepherd and Olinger's offices were inventoried, their file cabinets were empty and Shepherd and Olinger's files could not be located.

46.     On information and belief, in the weeks and months leading up to their resignations, Shepherd and Olinger surreptitiously removed EmployBridge's confidential, proprietary, and trade secret information from their offices.

47.     Riven Rock registered as a limited liability company with the State of Nevada. Riven Rock currently maintains a website located at www.rivenrockstaffing.com, which site states (1) that Riven Rock "provide[s] employment solutions in manufacturing, industrial, clerical, accounting, technical, and professional services for both the public and private sectors," (2) that Shepherd is Riven Rock's Southwest Area Vice President, and (3) that Olinger is Riven Rock's Area Director.  The website lists Riven Rock's address as 6106 Jefferson Street NE, Suite B, in Albuquerque, New Mexico.

48.     Riven Rock is located three (3) miles from the "Branch Office" identified in Shepherd's Agreement.  Accordingly, Shepherd's operation of Riven Rock is in direct breach of his Agreement with EmployBridge.

49.     Upon joining Riven Rock, Shepherd and Olinger have set out on a coordinated scheme to build their business at the expense of EmployBridge.  This scheme includes partnering with former EmployBridge employees as well as poaching EmployBridge's current employees in further breach of their Agreements with EmployBridge.

50.     On information and belief, in or around June 2016, Shepherd and Olinger contacted Miller, who had recently resigned his employment at EmployBridge, and offered him employment at Riven Rock.  Miller accepted Shepherd and Olinger's offer.

16

51.     On information and belief, in or around June 2016, Shepherd and Olinger contacted Jacquez and offered him employment at Riven Rock.  As part of that solicitation, Jacquez spoke with someone who identified himself as an "attorney" for Riven Rock.  The "attorney" made false representations that EmployBridge was facing a class action lawsuit regarding its pay practices and made other disparaging remarks about EmployBridge's business practices.

52.     On or around the week of June 20, Jacquez informed EmployBridge that he was terminating his employment and taking a position at Riven Rock.  Like Miller, Jacquez is now competing directly with EmployBridge on behalf of Riven Rock in the Albuquerque market.

53.     On information and belief, on or around the week of July 11, Riven Rock contacted EmployBridge contract employee Michael Kelm at his home and offered him employment with Riven Rock.  Michael Kelm subsequently terminated his employment with EmployBridge.

54.     On information and belief, in or around June 2016, Shepherd and Olinger contacted EmployBridge employees Brian Ostenak and Nicole Romero to offer them employment at Riven Rock.  At this time, it is unknown to EmployBridge whether Mr. Ostenak and/or Ms. Romero accepted their offers of employment.

55.     Moreover, instead of building their business from the ground up and forging new customer relationships, Defendants have repeatedly solicited EmployBridge's customers in violation of their Agreements with EmployBridge in an attempt to exploit EmployBridge's longstanding customer relationships for their own benefit.

56.     For example, Ink Impressions is a printing service that specializes in political signage.  Ink Impressions is located in Rio Rancho, New Mexico, and was a long-time client of EmployBridge whom Shepherd serviced during his employment with EmployBridge.  In the

years leading up to Shepherd and Olinger's resignations, EmployBridge generated approximately $250,000 per year from Ink Impressions.  That revenue was significantly higher during election years.

57.     In June 2016, Ink Impressions informed EmployBridge, through one of the temporary workers who was placed at Ink Impressions, that it would cease doing business with EmployBridge and work exclusively with Riven Rock.  Since June 2016, EmployBridge has received no work from Ink Impressions.

58.     Lively Distributing ("Lively") is a food distribution company located in Albuquerque, New Mexico, and also was a long-time client of EmployBridge.  On or about June 15 2016, Amber Fluitt, a Riven Rock employee and former EmployBridge employee, visited Lively's office and told the owner that she was with a new staffing agency, Riven Rock, and that she could "beat EmployBridge's rates and get [Lively] a better deal" on Lively's temporary staffing needs.  Lively Distributing ceased using EmployBridge to supply temporary staffing on June 17, 2016.

59.     Superior Ambulance Service, Inc. is an ambulance service provider located in Albuquerque, New Mexico, and is a long-time client of EmployBridge.  On information and belief, Olinger is actively soliciting business from Superior on behalf of Riven Rock through in-person sales calls at Superior's place of business.

60.     Insight Lighting is a lighting manufacturer located in Rio Ranch, New Mexico, and is also a long-time client of EmployBridge.  On information and belief, Shepherd is actively soliciting business from Insight Lighting on behalf of Riven Rock.

61.     Stock Building Supply provides products to builders in the residential housing market, and is a long-time client of EmployBridge.  Stock has two stores in Albuquerque, New Mexico.  On or about June 30, 2016, Jacquez and Miller approached Mike Pacheco, who is the

Component Plant Manager at Stock, and represented that if Stock used Riven Rock for its driving needs, it could save five dollars per hour over EmployBridge's rates.

62.     LKQ is an automotive parts supplier doing business in Albuquerque, New Mexico, as Keystone Automotive.  LKQ is a long-time client of EmployBridge.  On or about June 15, 2016, Amber Fluitt, a Riven Rock employee, solicited LKQ to leave EmployBridge and use Riven Rock to supply it drivers for its delivery needs.  Fluitt followed up on her visit with emails to LKQ on June 17 and July 7.  In her July 7 email, Fluitt stated: "We [Riven Rock] have Tim Jacquez as part of our team now and he is working on getting the transportation side up and running sooner than later."  A copy of Fluitt's emails is attached as Exhibit 5.

63.     Acme Iron and Metal is the largest scrap metal recycler in New Mexico, and long-time client of EmployBridge.  On or about July 7, Jacquez contacted Acme's Accounts Manager, Keaton Wynn, and represented that if Acme used Riven Rock for its driving needs, Riven Rock would offer a discounted rate that was below EmployBridge's rate.

64.     RAC Transport is a long-time client of EmployBridge's ProDrivers division.  In early August, 2016, Miller and Fluitt contacted a Terminal Manager at RAC Transport and successfully lured away the business of RAC Transport by undercutting EmployBridge's pricing.

65.     On information and belief, Defendants have also solicited business from The City of Albuquerque and General Mills Cereal, both of which are long-time clients of EmployBridge.

66.      Throughout June and July, 2016, EmployBridge conducted a forensic examination of the desktop computers issued by EmployBridge to Shepherd and Jacquez.

67.     In late July, 2016, EmployBridge completed its forensic examination of Shepherd's and Jacquez's computers.

68.     The forensic examination revealed that Shepherd and Jacquez forwarded multiple emails from their EmployBridge email accounts to their personal email accounts in the months before their resignation from EmployBridge (Shepherd alone sent himself thousands of such emails).

69.     Many of the emails sent by Shepherd and Jacquez to their personal accounts contain EmployBridge's confidential and/or proprietary trade secrets relating to the Albuquerque and Dallas markets. Among the confidential and/or trade secret information that Shepherd and Jacquez sent to their personal email accounts was:

    a.   Conversations with EmployBridge executives regarding customer accounts;

    b.   BVR's (Branch Variance Reports, which reflect the branch's financial performance);

    c.   Profit and Loss statements;

    d.   Weekly Business Summary report (which provided financial metrics from the prior week),

    e.   13 Week Reports (which reflected financial performance over a 13-week period),

    f.   customer and prospect contact information;

    g.   pricing and margin information; and

    h.   temporary employee contact information

70.     The confidential and/or proprietary trade secret information taken by Shepherd and Jacquez was not limited to EmployBridge's internal reports. Specifically:

    a.   On November 17, 2015, Shepherd sent an email to his personal account with an internal email chain regarding the City of Albuquerque's insurance requirements. The same day, Shepherd sent another email to his personal account containing an internal risk audit related to the City of Albuquerque. That internal audit

contained highly confidential information about Select Staffing's pay rates, bill rates, and mark-ups related to the City of Albuquerque account;

b. Shepherd sent an email to his personal account on November 19, 2015 which contained an overview of new accounts in the Albuquerque territory along with sales revenue and EmployBridge's gross margin per sales representative;

c. Shepherd sent an email to his personal account on November 16, 2015 which contained a spreadsheet showing EmployBridge's year-to-date margin for specific accounts in the Albuquerque branch office.  As with the other documents that Shepherd forwarded to himself, these documents are confidential and, if disclosed to a competitor, would allow the competitor to undercut EmployBridge's margin and gain a larger share of business; and

d. Jacquez sent an email to his personal account on June 16, 2016 with a list of contact names and telephone numbers of trucking companies in the Albuquerque area, which EmployBridge had purchased from a third-party vendor.

71.     The examples referenced above are just a few instances of Shepherd and Jacquez misappropriating EmployBridge's trade secrets, out of the many emails that they sent in the months prior to their resignations.

72.     On information and belief, Defendants are undertaking such solicitations of EmployBridge's customers with the use of EmployBridge's confidential information and trade secrets and with the deliberate purpose of exploiting EmployBridge's longstanding customer relationships for their own benefit and at the expense of EmployBridge.

73.     EmployBridge has suffered and will continue to suffer immediate irreparable harm to its business interests, customer relationships, goodwill, and trade secrets and other confidential and proprietary information.   Such immediate irreparable harm cannot be

adequately redressed by monetary damages alone and will continue unless Defendants are
enjoined from their unlawful conduct.

### COUNT ONE
### Violation of the Defend Trade Secrets Act
### (All Defendants)

74.     EmployBridge hereby incorporates by reference and realleges each of the
allegations contained in the foregoing paragraphs 1 through 73 inclusive, as though fully set
forth in this count.

75.     During the course of their relationship with EmployBridge, Shepherd and
Jacquez were provided access to substantial amounts of EmployBridge's confidential
information, including the confidential information identified in paragraphs 69 and 70 herein.

76.     EmployBridge's confidential information is not available to the general public
and is closely guarded by EmployBridge. EmployBridge keeps such information strictly
confidential in order to maintain a competitive advantage over competitors.

77.     EmployBridge's confidential information is considered a trade secret under the
Defend Trade Secrets Act, 18 U.S.C. § 1833, *et seq.* ("DTSA"), because the information is not
generally known outside of EmployBridge's business, the information is not generally known by
employees and others involved in EmployBridge's business, EmployBridge has taken reasonable
measures to guard the secrecy of the information, the information is of great value to
EmployBridge and its competitors, EmployBridge invested significant amounts of time and
money in developing the information, the information cannot easily be acquired or duplicated by
others, and because EmployBridge continuously uses the information in its business.
EmployBridge's trade secrets are used in, and intended for use in, interstate commerce.

78.     Shepherd and Jacquez were under contractual obligations to keep secret
EmployBridge's confidential information during and after their employment with EmployBridge.

79. Shepherd and Jacquez ignored those contractual obligations by misappropriating EmployBridge's confidential information and using that confidential information to unfairly compete with EmployBridge, and passing that confidential information along to the other Defendants, who are not authorized to receive, possess, or access EmployBridge confidential information.

80. Upon information and belief, all Defendants are using EmployBridge's confidential information with the knowledge that such information is a trade secret belonging to EmployBridge.

81. Defendants' actions constitute the actual and/or threatened misuse of EmployBridge confidential information.  Injunctive relief against Defendants is therefore appropriate.

82. Defendants' misappropriation and use of EmployBridge's confidential information has been willful and malicious, and EmployBridge has incurred significant damages as a result of that misappropriation and use.

83. EmployBridge is therefore entitled to recover not only compensatory damages, but also punitive damages and attorneys' fees resulting from Defendants' wrongful misappropriation of EmployBridge's confidential information.

## COUNT TWO
### Breach of Contract: Non-Competition Covenant
#### (Against Shepherd)

84. EmployBridge hereby incorporates by reference and realleges each of the allegations contained in the foregoing paragraphs 1 through 83, inclusive, as though fully set forth in this count.

85. The Agreement that Shepherd executed is a valid and enforceable agreement assented to by the parties and supported by consideration.

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

86.     Shepherd's obligations under the Agreement are reasonable in terms of duration and activities restricted and do not impose a greater restraint than is necessary to protect EmployBridge's legitimate business interests.

87.     EmployBridge performed all of the duties and obligations it agreed to and owed Shepherd under the Agreement.

88.     Under the Agreement, Shepherd agreed not to provide services competitive with EmployBridge during or for one year following his employment with EmployBridge within 15 miles of EmployBridge's Branch Office located at 6121 Indian School Road, N.E. Suite 132, Albuquerque, New Mexico.

89.     In violation of his Agreement, Shepherd is currently providing services competitive with EmployBridge under the business name Riven Rock Staffing, LLC, which operates fewer than 15 miles from the Branch Office.

90.     As a direct and proximate result of Shepherd's breach of his Agreement, EmployBridge has been damaged and continues to be damaged in an amount to be determined at trial, including attorneys' fees and costs to the extent allowed by law.

91.     EmployBridge will suffer irreparable injury if Shepherd is not enjoined from competing against EmployBridge in the Albuquerque market.  EmployBridge's damages, such as the damage to its goodwill, cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory and punitive relief.

**COUNT THREE**
**Breach of Contract: Non-Solicitation of Employees Covenant**
**(Against Shepherd and Olinger)**

92.     EmployBridge hereby incorporates by reference and realleges each of the allegations contained in the foregoing paragraphs 1 through 91, inclusive, as though fully set forth in this count.

93.     The Agreements that Shepherd and Olinger executed are valid and enforceable agreements assented to by the parties and supported by consideration.

94.     Shepherd and Olinger's obligations under their Agreements are reasonable in terms of duration and activities restricted and do not impose a greater restraint than is necessary to protect EmployBridge's legitimate business interests.

95.     EmployBridge performed all of the duties and obligations it agreed to and owed Shepherd and Olinger under the Agreements.

96.     Under the Agreements, Shepherd and Olinger agreed not to solicit, for one year after the end of their employment, any employees of EmployBridge to end their employment with EmployBridge.

97.     EmployBridge is informed and believes that, in violation of their Agreements, Shepherd and Olinger have solicited and are currently soliciting EmployBridge employees to end their employment with EmployBridge and join Riven Rock.

98.     As a direct and proximate result of Shepherd and Olinger's breach of their Agreements, EmployBridge has been damaged and continues to be damaged in an amount to be determined at trial, including attorneys' fees and costs to the extent allowed by law.

99.     EmployBridge will suffer irreparable injury if Shepherd and Olinger are not enjoined from soliciting EmployBridge employees to end their employment with EmployBridge and join Riven Rock.  EmployBridge's damages, such as the damage to its employee relationships, cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory and punitive relief.

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## COUNT FOUR
## Breach of Contract: Non-Solicitation Of Customers Covenant
### (Against Shepherd, Olinger, Jacquez, and Miller)

100.     EmployBridge hereby incorporates by reference and realleges each of the

allegations contained in the foregoing paragraphs 1 through 99 inclusive, as though fully set

forth in this count.

101.     The Agreements that Shepherd, Olinger, Jacquez, and Miller executed are valid

and enforceable agreements assented to by the parties and supported by consideration.

102.     Shepherd, Olinger, Jacquez, and Miller's obligations under their Agreements are

reasonable in terms of duration and activities restricted and do not impose a greater restraint than

is necessary to protect EmployBridge's legitimate business interests.

103.     EmployBridge performed all of the duties and obligations it agreed to and owed

Shepherd, Olinger, Jacquez, and Miller under the Agreements.

104.     Under the Agreements, Shepherd, Olinger, Jacquez, and Miller agreed not to

solicit, for one year after the end of their employment, any customers of EmployBridge for the

purpose of offering services that compete with those offered by EmployBridge.

105.     EmployBridge is informed and believes that, in violation of the Agreements,

Shepherd, Olinger, Jacquez, and Miller have solicited EmployBridge customers to leave

EmployBridge and do business with Riven Rock instead.

106.     As a direct and proximate result of Shepherd, Olinger, Jacquez, and Miller's

breach of their Agreements, EmployBridge has been damaged and continues to be damaged in an

amount to be determined at the trial of this case, including attorneys' fees and costs to the extent

allowed by law.

107.     EmployBridge will suffer irreparable injury if Shepherd, Olinger, Jacquez, and

Miller are not enjoined from soliciting EmployBridge customers to leave EmployBridge and do

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

business with Riven Rock in violation of their Agreements with EmployBridge. EmployBridge's damages, such as the damage to its goodwill, cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory and punitive relief.

**COUNT FIVE**
**Breach of Contract: Non-Disclosure of Confidential Information Covenant**
**(Against Shepherd, Olinger, Jacquez, and Miller)**

108.     EmployBridge hereby incorporates by reference and realleges each of the allegations contained in the foregoing paragraphs 1 through 107, inclusive, as though fully set forth in this count.

109.     The Agreements that Shepherd, Olinger, Jacquez, and Miller executed are valid and enforceable agreements assented to by the parties and supported by consideration.

110.     Shepherd, Olinger, Jacquez, and Miller's obligations under their Agreements are reasonable in terms of duration and activities restricted and do not impose a greater restraint than is necessary to protect EmployBridge's legitimate business interests.

111.     EmployBridge performed all of the duties and obligations it agreed to and owed Shepherd, Olinger, Jacquez, and Miller under the Agreements.

112.     Under their Agreements, Shepherd, Olinger, Jacquez, and Miller agreed not to use, disclose, or divulge EmployBridge's confidential or trade secret information.  Shepherd and Olinger agreed not to use, disclose, or divulge such information for a period of five years following their employment.  Jacquez and Miller agreed not to use, disclose, or divulge such information at all following their employment.

113.     EmployBridge is informed and believes that in violation of the Agreements, Shepherd, Olinger, Jacquez, and Miller have used, disclosed, and/or divulged EmployBridge's confidential and/or trade secrets information.

27

114.     As a direct and proximate result of Shepherd, Olinger, Jacquez, and Miller's breach of the Agreements, EmployBridge has been damaged and continues to be damaged in an amount to be determined at the trial of this case, including attorneys' fees and costs to the extent allowed by law.

115.     Unless Shepherd, Olinger, Jacquez, and Miller are permanently restrained from misappropriating EmployBridge's confidential, proprietary, and/or trade secret information, EmployBridge will continue to suffer immediate and irreparable harm.  EmployBridge's damages cannot be adequately compensated solely through money damages or other legal remedies, thereby entitling EmployBridge to equitable relief in the form of an injunction.

## COUNT SIX
### Tortious Interference with Contractual and Business Relations
#### (Against All Defendants)

116.     EmployBridge hereby incorporates by reference and realleges each of the allegations contained in the foregoing paragraphs 1 through 115, inclusive, as though fully set forth in this count, except for those allegations that specifically relate and are necessary to the trade secret misappropriation count, but including those allegations (1) to the extent the information alleged to have been misappropriated is determined in the action not to rise to the level of a trade secret but is otherwise protectable EmployBridge property, including protectable EmployBridge confidential and/or proprietary information; or (2) to the extent such allegations are separately actionable under applicable law.

117.     EmployBridge specifically asserts that this tortious interference count does not involve the misappropriation of trade secret or confidential information.

118.     EmployBridge has existing contractual relationships with customers that are valuable to EmployBridge.  These contractual relationships constitute property interests entitled

to protection from unjustified interference by EmployBridge's competitors or any other persons, including Defendants.

119.    Defendants have knowledge of these existing contractual relationships.

120.    EmployBridge is informed and believes that Defendants, and each of them, intentionally and without justification, interfered and continue to interfere with EmployBridge's contractual relationships with its customers by soliciting customers to discontinue their business with EmployBridge and/or to purchase from Defendants services they previously purchased or are currently purchasing from EmployBridge.

121.    Defendants' actions are without privilege or justification.

122.    As a direct and proximate result of these actions, EmployBridge has been damaged and continues to be damaged in an amount to be determined at the trial of this case, including attorneys' fees and costs to the extent allowed by law.

123.    Unless Defendants are permanently restrained from tortiously interfering with EmployBridge's contractual and business relations, EmployBridge will continue to suffer immediate and irreparable harm.  EmployBridge's damages cannot be adequately compensated solely through money damages or other legal remedies, thereby entitling EmployBridge to equitable relief in the form of an injunction.

### COUNT SEVEN
### Tortious Interference with Contractual and Business Relations
### (Against Shepherd and Riven Rock)

124.    EmployBridge hereby incorporates by reference and realleges each of the allegations contained in the foregoing paragraphs 1 through 123, inclusive, as though fully set forth in this count, except for those allegations that specifically relate and are necessary to the trade secret misappropriation count, but including those allegations (1) to the extent the information alleged to have been misappropriated is determined in the action not to rise to the

level of a trade secret but is otherwise protectable EmployBridge property, including protectable EmployBridge confidential and/or proprietary information; or (2) to the extent such allegations are separately actionable under applicable law.

125.    EmployBridge specifically asserts that this tortious interference count does not involve the misappropriation of trade secret or confidential information.

126.    EmployBridge has an existing contractual relationship with Olinger whereby Olinger is obligated to refrain from soliciting EmployBridge's employees and customers.  This contractual relationship constitutes a property interest entitled to protection from unjustified interference by EmployBridge's competitors or any other persons, including Shepherd and Riven Rock.

127.    Shepherd and Riven Rock have actual knowledge of this existing contractual relationship.  It is common practice in EmployBridge and Riven Rock's industry to require key employees to execute such agreements.

128.    EmployBridge is informed and believes that Shepherd and Riven Rock intentionally and without justification interfered and continue to interfere with EmployBridge's contractual relationship with Olinger by inducing Olinger to breach her Agreement with EmployBridge, including, but not limited to, the breaches described above.

129.    Shepherd and Riven Rock's actions are without privilege or justification.

130.    As a direct and proximate result of these actions, EmployBridge has been damaged and continues to be damaged in an amount to be determined at the trial of this case, including attorneys' fees and costs to the extent allowed by law.

131.    Unless Riven Rock and Shepherd are permanently restrained from tortiously interfering with EmployBridge's contractual and business relations, EmployBridge will continue to suffer immediate and irreparable harm.  EmployBridge's damages cannot be adequately

compensated solely through money damages or other legal remedies, thereby entitling

EmployBridge to equitable relief in the form of an injunction.

### COUNT EIGHT
### Tortious Interference with Contractual and Business Relations
### (Against Olinger and Riven Rock)

132.     EmployBridge hereby incorporates by reference and realleges each of the

allegations contained in the foregoing paragraphs 1 through 131, inclusive, as though fully set

forth in this count, except for those allegations that specifically relate and are necessary to the

trade secret misappropriation count, but including those allegations (1) to the extent the

information alleged to have been misappropriated is determined in the action not to rise to the

level of a trade secret but is otherwise protectable EmployBridge property, including protectable

EmployBridge confidential and/or proprietary information; or (2) to the extent such allegations

are separately actionable under applicable law.

133.     EmployBridge specifically asserts that this tortious interference count does not

involve the misappropriation of trade secret or confidential information.

134.     EmployBridge has an existing contractual relationship with Shepherd whereby

Shepherd is obligated to refrain from providing services competitive with EmployBridge during

or for one year following his employment with EmployBridge within 15 miles of

EmployBridge's Branch Office and to refrain from soliciting EmployBridge's employees and

customers.  This contractual relationship constitutes a property interest entitled to protection

from unjustified interference by EmployBridge's competitors or any other persons, including

Olinger and Riven Rock.

135.     Olinger and Riven Rock have actual knowledge of this existing contractual

relationship.  It is common practice in EmployBridge and Riven Rock's industry to require key

employees to execute such agreements.

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

136.    EmployBridge is informed and believes that Olinger and Riven Rock intentionally and without justification interfered and continue to interfere with EmployBridge's contractual relationship with Shepherd by inducing Shepherd to breach his Agreement with EmployBridge, including, but not limited to, the breaches described above.

137.    Olinger and Riven Rock's actions are without privilege or justification.

138.    As a direct and proximate result of these actions, EmployBridge has been damaged and continues to be damaged in an amount to be determined at the trial of this case, including attorneys' fees and costs to the extent allowed by law.

139.    Unless Riven Rock and Olinger are permanently restrained from tortiously interfering with EmployBridge's contractual and business relations, EmployBridge will continue to suffer immediate and irreparable harm.  EmployBridge's damages cannot be adequately compensated solely through money damages or other legal remedies, thereby entitling EmployBridge to equitable relief in the form of an injunction.

## COUNT NINE
### Tortious Interference with Contractual and Business Relations
### (Against Shepherd, Olinger, Miller, and Riven Rock)

140.    EmployBridge hereby incorporates by reference and realleges each of the allegations contained in the foregoing paragraphs 1 through 139 inclusive, as though fully set forth in this count, except for those allegations that specifically relate and are necessary to the trade secret misappropriation count, but including those allegations (1) to the extent the information alleged to have been misappropriated is determined in the action not to rise to the level of a trade secret but is otherwise protectable EmployBridge property, including protectable EmployBridge confidential and/or proprietary information; or (2) to the extent such allegations are separately actionable under applicable law.

141.     EmployBridge specifically asserts that this tortious interference count does not involve the misappropriation of trade secret or confidential information.

142.     EmployBridge has an existing contractual relationship with Defendant Jacquez whereby Jacquez is obligated to refrain from soliciting EmployBridge customers or employees during or for one year following his employment with EmployBridge.  This contractual relationship constitutes a property interest entitled to protection from unjustified interference by EmployBridge's competitors or any other persons, including Shepherd, Olinger, and Riven Rock.

143.     Shepherd, Olinger, Miller and Riven Rock have actual knowledge of this existing contractual relationship.  It is common practice in EmployBridge and Riven Rock's industry to require key employees to execute such agreements.

144.     EmployBridge is informed and believes that Shepherd, Olinger, Miller and Riven Rock intentionally and without justification interfered and continue to interfere with EmployBridge's contractual relationship with Jacquez by inducing Jacquez to breach his Agreement with EmployBridge, including, but not limited to, the breaches described above.

145.     Shepherd, Olinger, Miller and Riven Rock's actions are without privilege or justification.

146.     As a direct and proximate result of these actions, EmployBridge has been damaged and continues to be damaged in an amount to be determined at the trial of this case, including attorneys' fees and costs to the extent allowed by law.

147.     Unless Shepherd, Olinger, Miller and Riven Rock are permanently restrained from tortiously interfering with EmployBridge's contractual and business relations, EmployBridge will continue to suffer immediate and irreparable harm.  EmployBridge's

damages cannot be adequately compensated solely through money damages or other legal remedies, thereby entitling EmployBridge to equitable relief in the form of an injunction.

## COUNT TEN
### Tortious Interference with Prospective Economic Advantage
### (Against All Defendants)

148.     EmployBridge hereby incorporates by reference and realleges each of the allegations contained in the foregoing paragraphs 1 through 147, inclusive, as though fully set forth in this count, except for those allegations that specifically relate and are necessary to the trade secret misappropriation count, but including those allegations (1) to the extent the information alleged to have been misappropriated is determined in the action not to rise to the level of a trade secret but is otherwise protectable EmployBridge property, including protectable EmployBridge confidential and/or proprietary information; or (2) to the extent such allegations are separately actionable under applicable law.

149.     EmployBridge specifically asserts that this tortious interference count does not involve the misappropriation of trade secret or confidential information.

150.     EmployBridge has legitimate, existing, and prospective economic relationships with numerous customers.

151.     Defendants have knowledge of these existing customer relationships.

152.     EmployBridge is informed and believes that Defendants intended to harm EmployBridge by interfering with EmployBridge's relationships with its customers, by soliciting EmployBridge's customers to leave EmployBridge and move their business to Riven Rock, and by taking actions described above, which were and are calculated to interfere with EmployBridge's relationships and competitive advantage with its customers.

153.     EmployBridge is informed and believes that Defendants have interfered and continue to interfere with EmployBridge's relationships with its customers by soliciting

customers to discontinue their business with EmployBridge and/or to purchase from Riven Rock competing services that they previously purchased or are currently purchasing from EmployBridge.

154.    Defendants' actions are without privilege or justification.

155.    As a direct and proximate result of these actions, EmployBridge has been damaged and continues to be damaged in an amount to be determined at the trial of this case, including attorneys' fees and costs to the extent allowed by law.

156.    Unless Defendants are permanently restrained from tortiously interfering with EmployBridge's prospective economic advantage, EmployBridge will continue to suffer immediate and irreparable harm.  EmployBridge's damages cannot be adequately compensated solely through money damages or other legal remedies, thereby entitling EmployBridge to equitable relief in the form of an injunction.

157.    Defendants' acts alleged herein were willful, wanton, malicious, and oppressive, and entitle EmployBridge to an award of exemplary and punitive damages against Defendants.

## COUNT ELEVEN
### Conspiracy
### (Against All Defendants)

158.    EmployBridge hereby incorporates by reference and realleges each of the allegations contained in the foregoing paragraphs 1 through 157, inclusive, as though fully set forth in this count, except for those allegations that specifically relate and are necessary to the trade secret misappropriation count, but including those allegations (1) to the extent the information alleged to have been misappropriated is determined in the action not to rise to the level of a trade secret but is otherwise protectable EmployBridge property, including protectable EmployBridge confidential and/or proprietary information; or (2) to the extent such allegations are separately actionable under applicable law.

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

159.   EmployBridge specifically asserts that this conspiracy count does not involve the misappropriation of trade secret or confidential information.

160.   EmployBridge is informed and believes that Defendants reached an agreement to accomplish an unlawful purpose and/or a lawful purpose by unlawful means.

161.   EmployBridge is informed and believes that Defendants conspired by concerted action to solicit EmployBridge's customers, and/or interfere with EmployBridge's relationships with its customers, contractual or otherwise.

162.   EmployBridge is informed and believes that Defendants had a meeting of the minds on this object or course of action and committed one or more overt acts to further the object or course of action.  These overt acts include, but are not limited to, soliciting EmployBridge's customers through unlawful means.

163.   There is no adequate remedy at law for Defendants' conspiracy because it will inevitably influence the further course of development of Riven Rock's competing business at EmployBridge's expense.

164.   As a direct and proximate result of these actions, EmployBridge has been damaged and continues to be damaged in an amount to be determined at the trial of this case, including attorneys' fees and costs to the extent allowed by law.

165.   Unless Defendants are permanently restrained from further conspiring against EmployBridge, EmployBridge will continue to suffer immediate and irreparable harm. EmployBridge's damages cannot be adequately compensated solely through money damages or other legal remedies, thereby entitling EmployBridge to equitable relief in the form of an injunction.

166.   Defendants' acts alleged herein were willful, wanton, malicious, and oppressive, and entitle EmployBridge to an award of exemplary and punitive damages against Defendants.

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**COUNT TWELVE**
**Violation of the New Mexico Uniform Trade Secrets Act (N.M. Stat. Ann. § 57-3A-1 *et seq.*)**
**(Against All Defendants)**

167.    EmployBridge restates and incorporates by reference those allegations set forth in paragraphs 1 through 166 above, as if set forth fully herein.

168.    EmployBridge's confidential and proprietary information includes, *inter alia*, EmployBridge's pricing, marketing plans, business plans, and business strategies, and customer information, including, but not limited to, customer lists, customer preferences, strategies for soliciting prospective customers, pricing, margins, promotions, advertising allowances, customer marketing data and purchasing patterns, applicable discounts and planned research, and development for its customer base.

169.    This information constitutes trade secrets, pursuant to the New Mexico Uniform Trade Secret Act, N.M. Stat. Ann. § 57-3A-1 *et seq.*, because EmployBridge derives independent economic value from this information not being generally known to the public and not being readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy.

170.    EmployBridge is informed and believes that Defendants have acquired EmployBridge's trade secrets by improper means.

171.    EmployBridge is informed and believes that Defendants are threatening to disclose and/or use, and/or have disclosed and/or used, EmployBridge's trade secrets without express or implied consent.

172.    EmployBridge is informed and believes that at the time of Defendants' threatened disclosure and/or use, and/or disclosure and/or use, of the EmployBridge trade secrets, Defendants knew or had reason to know that their knowledge of the trade secrets was

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

derived from or through a person who had utilized improper means to acquire them and/or that they were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use.

173.    EmployBridge is informed and believes that Defendants threaten to misappropriate, and/or actually have misappropriated, EmployBridge's trade secrets without its consent, in violation of New Mexico law.

174.    As a direct and proximate result of these actions, EmployBridge has been damaged and continues to be damaged in an amount to be determined at the trial of this case, including attorneys' fees and costs to the extent allowed by law.

175.    Unless Defendants are permanently restrained from misappropriating EmployBridge's trade secrets, EmployBridge will continue to suffer immediate and irreparable harm.  EmployBridge's damages cannot be adequately compensated solely through money damages or other legal remedies, thereby entitling EmployBridge to equitable relief in the form of an injunction.

176.    Defendants' acts alleged herein were willful, wanton, malicious, and oppressive, and entitle EmployBridge to an award of exemplary and punitive damages against Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, EmployBridge seeks judgment in its favor and an Order granting the following relief:

1.    A temporary restraining order and preliminary and permanent injunction compelling the Defendants, their agents, and all those persons in active concert or participation with the Defendants to:

      a.    Comply with Defendants contractual obligations to EmployBridge as identified in the Agreements;

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

b.  Make available for inspection and imaging any computers, personal data devices, e-mail accounts, online storage, or electronic storage devices owned by, assigned to, or otherwise in the possession of Defendants at any time from January 1, 2015, to the present;

c.  Identify to EmployBridge any and all customers or potential customers whom Defendants, or anyone acting on their behalf, have solicited or otherwise contacted since Shepherd and Olinger's resignations from EmployBridge, including the name of the customer, the date of the contact, and the method of communication;

d.  Refrain from any use or disclosure of EmployBridge's confidential, proprietary and/or trade secret information;

e.  Swear and account for all EmployBridge property, including all information removed, downloaded, transferred, printed, accessed or e-mailed from EmployBridge's computers or computer network;

f.  Provide EmployBridge with authorization to obtain access to all telephone records, electronic records, files, cloud-based accounts, or e-mail accounts owned, used, or accessed by the Defendants, and any DropBox or other cloud-based accounts, except for any attorney-client privileged information or documents, to ensure that EmployBridge's property has been returned;

g.  Refrain from any spoliation of evidence; and

h.  Submit to a compliance mechanism to ensure that EmployBridge's confidential, proprietary, and/or trade secret information is intact, including continuing depositions and required affidavits from Defendants.

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

2.      That any preliminary or permanent injunction incorporate a tolling provision, whereby the protected periods specified in the Agreements are tolled and extended for the length of time in which the Court determines that Shepherd, Olinger, Jacquez, and/or Miller violated the Agreements;

3.      That Defendants be ordered to disgorge all improper benefits, profits, and/or gains;

4.      For an accounting of Defendants' unlawful acts;

5.      For an order compelling Shepherd and Olinger to submit to binding arbitration pursuant to their contractual obligations to EmployBridge following the Court's ruling on EmployBridge's application for temporary restraining order and preliminary injunction in aid of arbitration;

6.      That EmployBridge be awarded compensatory damages to be proven at trial (as to Defendants Riven Rock, Miller, and Jacquez) and to be proven at binding arbitration (as to Defendants Shepherd and Olinger);

7.      That EmployBridge be awarded exemplary or punitive damages in an amount to be proven at trial (as to Defendants Riven Rock, Miller, and Jacquez) and to be proven at binding arbitration (as to Defendants Shepherd and Olinger);

8.      That EmployBridge be awarded its costs and attorneys' fees incurred in bringing this action; and

9.      That the Court grant such further relief as it deems just.

DATED: August 17, 2016                         Respectfully submitted,

                                               */s/Thomas L. Stahl*

                                               RODEY, DICKASON, SLOAN,
                                               AKIN & ROBB, P.A.
                                               tstahl@rodey.com
                                               201 Third Street NW, Suite 2200
                                               Albuquerque, New Mexico 87102
                                               Telephone:  (505) 768-7240
                                               Facsimile:   (505) 768-7395

                                               SEYFARTH SHAW LLP
                                               Daniel P. Hart
                                               1075 Peachtree Street, NE, Suite 2500
                                               Atlanta, Georgia 30309
                                               Telephone: (404) 881-5433
                                               Facsimile: (404) 724-1633

                                               SEYFARTH SHAW LLP
                                               Michael Cross
                                               400 Capitol Mall
                                               Suite 2350
                                               Sacramento, CA  95814-4428
                                               Telephone: (916) 498-7017
                                               Facsimile: (916) 288-6330

                                               *Attorneys for Plaintiffs*
                                               *EMPLOYBRIDGE, LLC and*
                                               *EMPLOYMENT SOLUTIONS*
                                               *MANAGEMENT, INC.*

## CERTIFICATE OF SERVICE

I certify that on August 17, 2016 a true and correct copy of the foregoing Amended Complaint for Damages and Injunctive Relief  was served on Defendants via the Court's CM/ECF electronic filing system to the following counsel of record:

Christopher M. Moody
Repps D Stanford
Moody & Warner PC
4169 Montgomery Blvd. NE
Albuquerque, NM 87109
moody@nmlaborlaw.com
stanford@nmlaborlaw.com

*/s/Thomas L. Stahl*
Thomas L. Stahl

41

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF