UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| EMPLOYBRIDGE, LLC, a California Limited Liability Company, and EMPLOYMENT SOLUTIONS MANAGEMENT, INC., a Georgia Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIVEN ROCK STAFFING, LLC, a Nevada Limited Liability Company, LARRY SHAUN SHEPHERD, an individual, CATHERINE OLINGER, an individual, TERRY MILLER, and individual, TIMOTHY JACQUEZ, an individual, and Does 1 through 25, inclusive,<br><br>Defendants. | Case No. 16-833-WJ/KK<br><br>SUPPLEMENTAL DECLARATION OF FRAN SCOTT IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER |

## SUPPLEMENTAL DECLARATION OF FRAN SCOTT

I, Fran Scott, under penalty of perjury, do hereby declare, attest, and affirm as follows:

1. I give this Declaration of my own free will. I am competent to give this Declaration, and it is based on my own personal knowledge. I am over 18 years old.

2. I provide this supplemental Declaration in support of Plaintiffs' Emergency Motion for Temporary Restraining Order in addition to the prior Declaration that I submitted executed July 15, 2016.

3. In the month that has transpired since I submitted my prior Declaration, I have learned that the Defendants in this lawsuit continue to solicit EmployBridge's clients and temporary workers.

4. For example, on Friday, July 29, a ProDrivers' temporary employee named Robert Gomez resigned his employment with EmployBridge. ProDrivers had placed Mr.

28478047v.3

EXHIBIT 4

Gomez with Industrial Chemical, a longstanding ProDrivers client with whom both Mr. Miller and Mr. Jacquez interacted while employed by ProDrivers. The following Monday, August 1, Industrial Chemical canceled its business with ProDrivers. Moreover, the next day, I received a Former Employer Verification from RivenRock (apparently sent by Catherine Olinger) indicating that RivenRock had hired Mr. Gomez. I believe that Mr. Gomez is now working for the same client (Industrial Chemical) through Riven Rock.

5. A true and accurate copy of the Former Employer Verification form faxed by RivenRock is attached hereto as **Exhibit A**. Notably, Riven Rock's Former Employer Verification form is virtually identical to the form used by ProDrivers. The only difference that I can see is the use of Riven Rock's logo, instead of ProDrivers' logo. In fact, ProDrivers uses a numerical system to keep track of its forms, and Riven Rock even retained the same form number ("D-3") that ProDrivers uses to identify the Former Employer Verification form.

6. On or about August 4, 2016, I made an in person customer service call to RAC Transport, a ProDrivers client. I met with Gareth Floyd, Terminal Manager. At that time he told me Terry Miller and Amber Fluitt had been by to introduce Riven Rock and their services. He said he was using them for dock workers, warehouse workers, and administrative staff because they promised bilingual employees. He also said that on August 1 Riven Rock's driving service would be available and he preferred to use one service for all of his staffing. He also told me they quoted 50 cents less per hour than our current rate.

7. Moreover, as recently as last week, Alan Scarf, a Regional Manager for ProDrivers' client Creamland Dairy, called me and told me that Mr. Miller and former EmployBridge employee Amber Fluitt had made a sales call on behalf of RivenRock. According to Mr. Scarf, Mr. Miller and Ms. Fluitt solicited him for business and undercut ProDriver's price by forty cents per hours on placement of a temporary driver.

8. I have reviewed the Declarations submitted by Mr. Jacquez and Mr. Miller in opposition to Plaintiffs' Motion for Temporary Restraining Order. Those declarations contain numerous false or inaccurate statements, including, but not limited, to the statements discussed below.

9. For example, in Paragraphs 3 and 11, Mr. Miller claims that he never met Shaun Shepherd before he interviewed with Riven Rock. I know that statement is false because I was present at a meeting with Mr. Miller and Mr. Shepherd in or around October of 2015 when both of them were employed by EmployBridge. On that occasion, Mr. Shepherd and a female sales representative from EmployBridge's Select Staffing division stopped by the ProDrivers branch office in Albuquerque to introduce themselves to us. As part of that visit, Mr. Miller and I met in the front lobby with Mr. Shepherd and the other visitor from Select Staffing and we had a lengthy discussion about ways to cross-sell the ProDrivers and Select Staffing brands.

10. Likewise, in Paragraphs 4, 11, and 12, Mr. Jacquez claims that he provided ProDrivers with two weeks' notice at the time of his resignation, that he never told anyone that he had spoken with a lawyer for Riven Rock, and that he had never told anyone that he was going to work for Riven Rock. All of these statements are false. When Mr. Jacquez resigned, he specifically told me that he was going to work for Riven Rock and that he

3

knew Mr. Miller was already employed there. He also said that the day he resigned would be his last day because "they" (i.e., Riven Rock) wanted him to start the following Monday. In addition, he told me that the previous Sunday a lawyer and an investor for Riven Rock had met with him in person and had shown him the company's bank accounts and that, according to Mr. Jaquez, "they have half a billion dollars."

11. The statements in both declarations about alleged unethical conduct are utterly false. I have never forged a document or provided false information to a client, and I have never slandered Mr. Jacquez or anyone else at Riven Rock.

12. Mr. Miller's and Mr. Jacquez's statements that they were not provided with access to EmployBridge's confidential information are also false. Both Mr. Miller and Mr. Jacquez had access to a large amount of sensitive business information regarding ProDrivers' clients, employees, pricing, margin, and financial performance. While not all-inclusive, such information included, among other documents, Weekly Business Summary report (which provided financial metrics from the prior week), 13 Week Reports (which reflected financial performance over a 13-week period), customer and prospect contact information, pricing and margin information related to specific accounts, and temporary employee contact information.

13. Furthermore, I have reviewed the emails identified on Exhibit C to the Declaration of James Vaughn, which I understand are emails that Mr. Jacquez forwarded to his personal Yahoo email account, timothy_jacques@yahoo.com, in the weeks before the resignation of his employment with EmployBridge. Many of these emails contain EmployBridge's confidential and/or proprietary information, and there was no legitimate business reason for Mr. Jacquez to forward these emails to his personal email account.

14. For example, an email that Mr. Jacquez sent to himself on June 16, 2016 includes an attachment with the filename "Fleetseek Report - ABQ.xlsx." This document is a document that ProDrivers purchased from a commercial vendor that provides contact names and telephone numbers of trucking companies in the Albuquerque area. ProDrivers supplied access to this commercial program to Mr. Jacquez so that he could prospect new business on behalf of ProDrivers. By sending this report to his personal email account, Mr. Jacquez is now in a position to prospect on behalf of RivenRock using information, for free, that ProDrivers paid for.

15. Similarly, an email that Mr. Jacquez sent to himself June 14, 2016 is entitled "Companies I have visited." This is a list that Mr. Jacquez prepared and sent to me listing names and contact information of the clients and prospects that he called on for EmployBridge. By sending this email to himself, Mr. Jacquez is in a position to call on all the accounts whom he previously solicited on behalf of EmployBridge using information that he created for EmployBridge, on company time, while in EmployBridge's employment.

16. Moreover, several of the emails that Mr. Jacquez sent to himself contain attachments entitled "Copy of Dispatch." These documents are lists of every single ProDrivers driver who were dispatched by ProDrivers during the prior week and the name of the ProDrivers client for whom the drivers worked. By sending these emails to himself, Mr. Jacquez is in a position to contact drivers who are or were employed by ProDrivers and solicit them for placement at ProDrivers' clients.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15th day of August, 2016.

5

28478047v.3

EXHIBIT 4

_____
Fran Scott

28478047v 3

EXHIBIT 4

# EXHIBIT A

EXHIBIT 4

# Fax Transmission

**Attention to:-**
Name: 5053413535@onlinefaxes.com
Company:
Date: 2016-08-02
Time: 02:58:43 P

**From:-**
Name: Catherine Olinger
Company: Riven Rock Staffing
Telephone:
Pages: 2

RE: Emailing - CCF08022016_00007.pdf

Comments/Notes:

EXHIBIT 4

# Former Employer Verification Form D-3

**RIVENROCK TRANSPORTATION**

ase complete this form and return to:
: 505-738-0340

ny questions please contact us at:
05 ) 336-4222

Sent to the attention of __Fran Scott__
Phone: __505-341-3500__ Fax __505-341-3535__
1st Attempt __1__ 2nd Attempt _____ 3rd Attempt _____
Certified Letter Mailed/DOT Notified _____

### :tion 1: Previous Employee Information and Release

me: __Robert Gomez__  Social Security # __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__

:reby authorize the __Pro Drivers__ _____

release the below requested information to RivenRock Transportation for the purposes of Investigation and qualifying me to drive ommercial motor vehicle, including pre-employment drug test results. You are now required by the U.S. DOT and Federal Motor rier Safety Regulations 49 CFR Parts 40, 382 & 391 to furnish this information. You are hereby released from any and all liability t may result from furnishing such information. Your quick response to this request will be greatly appreciated.

mature: __[signature]__  Date: __7/28/16__

### :tion 2: Previous Employee Work History per 49 C.F.R. 391.21

tes of Employment: From _____ To _____ Additional dates if employee worked multiple times for employer

d the employee drive a motor vehicle for you? Yes ☐ No ☐

ason for Leaving: Discharged Resigned Laid Off Other or reason (please list) _____

### :tion 3: Performance and Safety History per 49 C.F.R 391.23(2)

ase circle type of motor vehicle operated: Tractor-Semi/trailer Straight Truck Bus Tanker Doubles/Triples Other

ease specify) _____

cidents: Please complete the following for any accidents that the applicant was involved in the last 3 years prior to application date shown above. If none please check this box ☐

| Date | Location | Injuries? | Hazmat Spill? | Vehicles towed? | Preventable? |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

### :tion 4: Drug and Alcohol Information per 49 C.F.R. 40.25

| | | |
|---|---|---|
| is this applicant in a DOT controlled substance testing program with your company? | ☐ Yes | ☐ No |
| s this person had alcohol tests with a result of 0.04 or higher? | ☐ Yes | ☐ No |
| s this person tested positive or adulterated or substituted a test specimen for controlled substance? | ☐ Yes | ☐ No |
| s this person refused to submit a post accident, random, reasonable suspicion, or follow up alcohol controlled substance test? | ☐ Yes | ☐ No |
| s this person committed other violations of DOT agency drug and alcohol testing? | ☐ Yes | ☐ No |
| his person has violated a DOT drug and alcohol regulation, did this person complete a SAP-prescribed abilitation program in your employ, including return-to-duty and follow-up tests? If yes, please send cumentation back with this form. | ☐ Yes | ☐ No |
| r a driver who successfully completed a SAP's rehabilitation referral and remained in your employ, did driver subsequently have an alcohol test result of 0.04 or greater, a verified positive drug test, or refuse be tested? | ☐ Yes | ☐ No |

ase include any required DOT drug & Alcohol testing information obtained from prior employers in the last three years.

nt name of person completing form _____
mpany _____ Phone _____
ty, State, Zip _____ Date _____
nature of person completeing form _____

Created 0716

Exhibit 3

EXHIBIT 4