UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **EMPLOYBRIDGE, LLC**, a California Limited Liability Company, and **EMPLOYMENT SOLUTIONS MANAGEMENT, INC.**, a Georgia Corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>**RIVEN ROCK STAFFING, LLC**, a Nevada Limited Liability Company, **LARRY SHAUN SHEPHERD**, an individual, **CATHERINE OLINGER**, an individual, **TERRY MILLER**, and individual, **TIMOTHY JACQUEZ**, an individual, and Does 1 through 25, inclusive,<br><br>    Defendants. | Case No. 1:16-cv-00833 WJ/KK<br><br>RECEIVED<br><br>DEC 05 2016<br><br>MOODY & WARNER, P.C. |

## PLAINTIFF EMPLOYMENT SOLUTIONS MANAGEMENT, INC.'S ANSWER TO DEFENDANT TERRY MILLER'S FIRST SET OF INTERROGATORIES

NOW COMES Employment Solutions Management, Inc., by and through its attorneys, Seyfarth Shaw LLP, and for its Answer to First Set of Interrogatories, states as follows:

### PRELIMINARY STATEMENT

The information contained in each response is based only on the information currently available to Plaintiff. These responses are made solely for purposes of this action and on behalf of Plaintiff alone and no other entity or person. Each response is subject to all objections as to competence, relevance, materiality, propriety, and admissibility, and any and all other objections and grounds that would require the exclusion of any statements contained herein, if such statements were made by a witness present and testifying at court. All said objections and grounds are expressly reserved and may be interposed at the time of trial.

EXHIBIT 11

**ANSWER:**

Plaintiff objects to this Interrogatory on the ground that it calls for information that is subject to the attorney-client privilege and the work product doctrine. Plaintiff will not provide responses to this Interrogatory that are subject to either privilege.

Subject to and without waiving the foregoing objections, Plaintiff responds that prior to filing the complaint, Plaintiff spoke with a number of customers and employees who had disclosed to Plaintiff that Defendant had solicited them to work for or do business with Riven Rock. Fran Scott had these conversations.

Plaintiff also conducted a computer forensics analysis of Defendant's work computer to determine whether or not he had sent trade secrets and/or confidential information to himself or others. James Vaughn undertook this analysis.

**INTERROGATORY NO. 6:**

Please identify all customers of Plaintiff whom you contend Miller had responsibility or with whom he had contact during his employment with Plaintiff.

**ANSWER:**

Pursuant to Fed. R. Civ. Proc. 33, Plaintiff will produce business records in response to this Interrogatory.

**INTERROGATORY NO. 7:**

For the customers identified in Interrogatory No. 6, please identify each customer of EmployBridge whom you contend Miller solicited, the date on which the solicitation took place, the manner in which the solicitation took place, with whom the solicitation took place, and the identity of all material witnesses with knowledge or information about each solicitation.

**ANSWER:**

Plaintiff objects to the Interrogatory on the ground that it is vague. It is unclear, as the Interrogatory is written, whether Defendant seeks information about customers that Defendant solicited to do business with EmployBridge or customers that Defendant attempted to solicit

7

EXHIBIT 11

away from EmployBridge when he began working for Riven Rock. Plaintiff responds to the Interrogatory as follows, assuming that Defendant seeks information about what customers EmployBridge contends he attempted to solicit away from EmployBridge when he began working at Riven Rock:

Alan Scarf, a Regional Manager for ProDrivers' client Creamland Dairy, reported that in August 2016, Defendant and former EmployBridge employee Amber Fluitt made a sales call to Creamland Dairy on behalf of Riven Rock. According to Mr. Scarf, Defendant and Ms. Fluitt solicited him for business and undercut ProDrivers' price by forty cents per hours on placement of a temporary driver.

Defendant and Defendant Jacquez have approached Stock Building Supply, a long-time client of EmployBridge, to offer Stock driving services on behalf of Riven Rock. On or about June 30, 2016, Defendant and Defendant Jacquez approached Mike Pacheco, who is the Component Plant Manager at Stock, and represented that if Stock used Riven Rock for its driving needs, it could save five dollars per hour over EmployBridge's rates.

Defendant and Defendant Jacquez have approached LKQ, a long-time client of EmployBridge, to offer LKQ driving services on behalf of Riven Rock. LKQ is an automotive parts supplier doing business in Albuquerque, New Mexico, as Keystone Automotive. On or about June 15, 2016, Amber Fluitt, a Riven Rock employee, solicited LKQ to leave EmployBridge and use Riven Rock to supply it drivers for its delivery needs.

On or about July 14, 2016, Defendant approached Mitch Michaud, the Service Center Manager at R&L Carriers, an EmployBridge client. Defendant told Mr. Michauld that Riven Rock could offer an alternative to EmployBridge's driver and staffing solutions. Defendant also

8

EXHIBIT 11

informed Mr. Michauld that Riven Rock could offer R&L a rate that was lower than EmployBridge's.

In late July or early August, 2016, Gareth Floyd, Terminal Manager for ProDrivers' client RAC Transport, stated that Defendant and Amber Fluitt had stopped by RAC to introduce Riven Rock and their services on behalf of Riven Rock. Floyd reported that RAC Transport was using Riven Rock to supply it with temporary dock workers, warehouse workers, and administrative staff because Riven Rock promised to supply bilingual temporary employees. Floyd also said that he was informed that Riven Rock's driving service would be available, and he preferred to use one service for all of his staffing. Floyd stated that Riven Rock quoted 50 cents less per hour than EmployBridge's current rate.

**INTERROGATORY NO. 8:**

Please identify each employee or temporary worker of EmployBridge whom you contend Miller solicited, the date on which the solicitation took place, the manner in which the solicitation took place, with whom the solicitation took place, and the identity of all material witnesses with knowledge or information about each solicitation.

**ANSWER:**

On Friday, July 29, 2016, a ProDrivers' temporary employee named Robert Gomez resigned his employment with EmployBridge. ProDrivers had placed Mr. Gomez with Industrial Chemical, a longstanding ProDrivers client with whom both Defendant and Defendant Jacquez interacted while employed by ProDrivers. On August 1, 2016, Industrial Chemical canceled its business with ProDrivers. The next day, EmployBridge received a Former Employer Verification from Riven Rock indicating that Riven Rock had hired Mr. Gomez. EmployBridge has reason to believe that Mr. Gomez is now working for the same client (Industrial Chemical) through Riven Rock.

9

EXHIBIT 11

EmployBridge's contractual relationship with Jacquez by inducing Jacquez to breach his Agreement with EmployBridge," including the date on the which the conduct took place and the manner in which it took place, and please identify all material witnesses with knowledge or information about each alleged unlawful act of interference.

**ANSWER:**

Defendant resigned his position with EmployBridge on April 22, 2016. Defendant and Defendant Jacquez knew each other well while they were both employed by EmployBridge. Following Defendant's resignation, Defendant Jacquez resigned his employment with EmployBridge on June 22, 2016. During his exit interview, Defendant Jacquez informed EmployBridge that he had been offered a position at Riven Rock Staffing and had accepted the offer. Defendant Jacquez stated that he had met with a number of Riven Rock employees prior to deciding to join Riven Rock. EmployBridge has reason to believe that Defendant was one of the Riven Rock employees with whom Defendant Jacquez met prior to accepting a position at Riven Rock.

Plaintiff is currently unaware of the exact date of this solicitation or of all material witnesses thereto. Plaintiff believes that Defendant and Defendant Jacquez are material witnesses to the meeting.

**INTERROGATORY NO. 13:**

Please provide all material facts in support or your contention in Paragraph 161 of the Amended Complaint that Miller "conspired by concerted action to solicit EmployBridge's customers, and/or interfere with EmployBridge's relationships with its customers, contractual or otherwise," including the date of the alleged concerted action, the identity of each individual involved in each concerted action, the manner in which the concerted action took place, and the identity of all material witnesses with knowledge or information about each alleged concerted action.

**ANSWER:**

Alan Scarf, a Regional Manager for ProDrivers' client Creamland Dairy, reported that in August 2016, Defendant and former EmployBridge employee Amber Fluitt made a sales call to

12

EXHIBIT 11

Creamland Dairy on behalf of RivenRock. According to Mr. Scarf, Defendant and Ms. Fluitt solicited him for business and undercut ProDrivers' price by forty cents per hours on placement of a temporary driver.

Defendant and Defendant Jacquez have approached Stock Building Supply, a long-time client of EmployBridge, to offer Stock driving services on behalf of Riven Rock. On or about June 30, 2016, Defendant and Defendant Jacquez approached Mike Pacheco, who is the Component Plant Manager at Stock, and represented that if Stock used Riven Rock for its driving needs, it could save five dollars per hour over EmployBridge's rates.

Defendant and Defendant Jacquez have approached LKQ, a long-time client of EmployBridge, to offer LKQ driving services on behalf of Riven Rock. LKQ is an automotive parts supplier doing business in Albuquerque, New Mexico, as Keystone Automotive. On or about June 15, 2016, Amber Fluitt, a Riven Rock employee, solicited LKQ to leave EmployBridge and use Riven Rock to supply it drivers for its delivery needs. Fluitt followed up on her visit with emails to LKQ on June 17 and July 7. In her July 7 email, Fluitt stated: "We [Riven Rock] have Tim Jacquez as part of our team now and he is working on getting the transportation side up and running sooner than later."

Defendant Jacquez has approached Acme Iron and Metal, which is the largest scrap metal recycler in New Mexico and long-time client of EmployBridge. On or about July 1, 2016, Defendant Jacquez, along with another Riven Rock employee--Amber Fluitt, contacted Acme's Accounts Manager, Keaton Wynn, and represented that if Acme used Riven Rock for its driving needs, Riven Rock would offer a discounted rate that was below EmployBridge's rate. As a result of Defendant Jacquez and Fluitt's solicitation of Acme Iron and Metal, Acme has recently

13

EXHIBIT 11

demanded that EmployBridge match the price that Riven Rock stated it could offer. EmployBridge has given Acme that discount.

On or about July 14, 2016, Defendant approached Mitch Michaud, the Service Center Manager at R&L Carriers, an EmployBridge client, on behalf of Riven Rock. Defendant told Mr. Michauld that Riven Rock could offer an alternative to EmployBridge's driver and staffing solutions. Defendant also informed Mr. Michauld that Riven Rock could offer R&L a rate that was lower than EmployBridge's.

In late July or early August, 2016, Gareth Floyd, Terminal Manager for ProDrivers' client RAC Transport, stated that Defendant and Amber Fluitt had stopped by RAC to introduce Riven Rock and their services. Floyd reported that RAC Transport was using Riven Rock to supply it with temporary dock workers, warehouse workers, and administrative staff because Riven Rock promised to supply bilingual temporary employees. Floyd also said that he was informed that Riven Rock's driving service would be available and he preferred to use one service for all of his staffing. Floyd stated that Riven Rock quoted 50 cents less per hour than EmployBridge's current rate.

On July 29, 2016, a ProDrivers' temporary employee named Robert Gomez resigned his employment with EmployBridge. ProDrivers had placed Mr. Gomez with Industrial Chemical, a longstanding ProDrivers client with whom both Defendant and Defendant Jacquez interacted while employed by ProDrivers. The following Monday, August 1, Industrial Chemical canceled its business with ProDrivers. The next day, ProDrivers received a Former Employer Verification from Riven Rock indicating that Riven Rock had hired Mr. Gomez.

Amber Fluitt, Shaun Shepherd, Catherine Olinger, Tim Jacquez, and Defendant were all EmployBridge employees who worked in the Albuquerque, New Mexico, market. Shaun

14

EXHIBIT 11

Shepherd, Catherine Olinger, Tim Jacquez, and Defendant all left EmployBridge at around the same time. A few months after Shaun Shepherd, Catherine Olinger, Tim Jacquez, and Defendant left EmployBridge, Riven Rock began operation down the street from the Select branch office. Donyelle Rose and Ashkan Abtahi, Riven Rock's principals, are former Select Staffing employees.

**INTERROGATORY NO. 14:**

Please describe the damages that you contend were caused by the unlawful actions of Miller and please provide a specific computation of those damages.

**ANSWER:**

Plaintiff objects to the Interrogatory in the ground that it is argumentative. The Interrogatory improperly implies that Plaintiff is required to parse the amount of damages caused by each individual defendant in this action. Plaintiff has not and does not plan to undertake such a project. The interrogatory also improperly assumes that Plaintiff's damages are static. To the contrary, Plaintiff has reason to believe that the named defendants continue to engage in actions that serve to further damage Plaintiff.

Subject to and without waiving the foregoing objections, Plaintiff responds that it has been damaged by Defendants' unlawful action in an amount that exceeds $500,000. As they relate most directly to Defendant, Plaintiff's damages are the result of Defendant, either individually or in conjunction with other named defendants, soliciting EmployBridge clients Creamland Dairy, Stock Building Supply, LKQ, Acme Iron and Metal, R & L Carriers, and RAC Transport. Additional damages were also caused by named defendants' solicitation of EmployBridge clients Ink Impressions, Superior Ambulance, Insight Lighting, and the City of Albuquerque.

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **EMPLOYBRIDGE, LLC**, a California Limited Liability Company, and **EMPLOYMENT SOLUTIONS MANAGEMENT, INC.**, a Georgia Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>**RIVEN ROCK STAFFING, LLC**, a Nevada Limited Liability Company, **LARRY SHAUN SHEPHERD**, an individual, **CATHERINE OLINGER**, an individual, **TERRY MILLER**, and individual, **TIMOTHY JACQUEZ**, an individual, and Does 1 through 25, inclusive,<br><br>Defendants. | Case No. 1:16-cv-00833 WJ/KK<br><br>RECEIVED<br><br>DEC 05 2016<br><br>MOODY & WARNER, P.C. |

### PLAINTIFF EMPLOYMENT SOLUTIONS MANAGEMENT, INC.'S ANSWER TO DEFENDANT TIM JAQUEZ'S FIRST SET OF INTERROGATORIES

NOW COMES Employment Solutions Management, Inc., by and through its attorneys, Seyfarth Shaw LLP, and for its Answer to First Set of Interrogatories, states as follows:

### PRELIMINARY STATEMENT

The interrogatories to which Plaintiff here responds are purportedly issued by defendant "Tim Jaquez." Plaintiff has not sued any person by that name. The last name of the defendant Plaintiff has sued is spelled "Jacquez." Plaintiff assumes that defendant made a typographical error and, accordingly, will respond to the following discovery requests as though propounded by Timothy Jacquez ("Defendant").

The information contained in each response is based only on the information currently available to Plaintiff. These responses are made solely for purposes of this action and on behalf of Plaintiff alone and no other entity or person. Each response is subject to all objections as to

EXHIBIT 11

**ANSWER:**

Pursuant to Fed. R. Civ. Proc. 33, Plaintiff will produce business records in response to this Interrogatory.

**INTERROGATORY NO. 7:**

For the customers identified in Interrogatory No. 6, please identify each customer of EmployBridge whom you contend Jaquez solicited, the date on which the solicitation took place, the manner in which the solicitation took place, with whom the solicitation took place, and the identity of all material witnesses with knowledge or information about each solicitation.

**ANSWER:**

Plaintiff objects to the Interrogatory on the ground that it is vague. It is unclear, as the Interrogatory is written, whether Defendant seeks information about customers that Defendant solicited to do business with EmployBridge or customers that Defendant attempted to solicit away from EmployBridge when he began working for Riven Rock. Plaintiff responds to the Interrogatory as follows, assuming that Defendant seeks information about what customers EmployBridge contends he attempted to solicit away from EmployBridge when he began working at Riven Rock:

Defendant and Defendant Miller have approached Stock Building Supply, a long-time client of EmployBridge, to offer Stock driving services on behalf of Riven Rock. On or about June 30, 2016, Defendant and Defendant Miller approached Mike Pacheco, who is the Component Plant Manager at Stock, and represented that if Stock used Riven Rock for its driving needs, it could save five dollars per hour over EmployBridge's rates.

Defendant and Defendant Miller have approached LKQ, a long-time client of EmployBridge, to offer LKQ driving services on behalf of Riven Rock. LKQ is an automotive parts supplier doing business in Albuquerque, New Mexico, as Keystone Automotive. On or about June 15, 2016, Amber Fluitt, a Riven Rock employee, solicited LKQ to leave

8

EXHIBIT 11

EmployBridge and use Riven Rock to supply it drivers for its delivery needs. Fluitt followed up on her visit with emails to LKQ on June 17 and July 7. In her July 7 email, Fluitt stated: "We [Riven Rock] have Tim Jacquez as part of our team now and he is working on getting the transportation side up and running sooner than later."

Defendant has approached Acme Iron and Metal, which is the largest scrap metal recycler in New Mexico and long-time client of EmployBridge, on behalf of Riven Rock. On or about July 1, 2016, Defendant, along with another Riven Rock employee--Amber Fluitt, contacted Acme's Accounts Manager, Keaton Wynn, and represented that if Acme used Riven Rock for its driving needs, Riven Rock would offer a discounted rate that was below EmployBridge's rate. As a result of Defendant and Fluitt's solicitation of Acme Iron and Metal, Acme has recently demanded that EmployBridge match the price that Riven Rock stated it could offer. EmployBridge has given Acme that discount.

**INTERROGATORY NO. 8:**

Please identify each employee or temporary worker of EmployBridge whom you contend Jaquez solicited, the date on which the solicitation took place, the manner in which the solicitation took place, with whom the solicitation took place, and the identity of all material witnesses with knowledge or information about each solicitation.

**ANSWER:**

On Friday, July 29, a ProDrivers' temporary employee named Robert Gomez resigned his employment with EmployBridge. ProDrivers had placed Mr. Gomez with Industrial Chemical, a longstanding ProDrivers client with whom both Defendant and Defendant Miller interacted while employed by ProDrivers. The following Monday, August 1, Industrial Chemical canceled its business with ProDrivers. The next day, ProDrivers received a Former Employer Verification from Riven Rock indicating that Riven Rock had hired Mr. Gomez.

EXHIBIT 11

## **INTERROGATORY NO. 13:**

Please describe the damages that you contend were caused by the unlawful actions of Jaquez and please provide a specific computation of those damages.

## **ANSWER:**

Plaintiff objects to the Interrogatory in the ground that it is argumentative. The Interrogatory improperly implies that Plaintiff is required to parse the amount of damages caused by each individual defendant in this action. Plaintiff has not and does not plan to undertake such a project. The interrogatory also improperly assumes that Plaintiff's damages are static. To the contrary, Plaintiff has reason to believe that the named defendants continue to engage in actions that serve to further damage Plaintiff.

Subject to and without waiving the foregoing objections, Plaintiff responds that it has been damaged by Defendants' unlawful action in an amount that exceeds $500,000. As they relate most directly to Defendant, Plaintiff's damages are the result of Defendant, either individually or in conjunction with other named defendants, soliciting EmployBridge clients Creamland Dairy, Stock Building Supply, LKQ, Acme Iron and Metal, R & L Carriers, and RAC Transport. Additional damages were also caused by named defendants' solicitation of EmployBridge clients Ink Impressions, Superior Ambulance, Insight Lighting, and the City of Albuquerque.

EXHIBIT 11