IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EMPLOYBRIDGE, LLC, a California
Limited Liability Company, and
EMPLOYMENT SOLUTIONS
MANAGEMENT, INC., a Georgia
Corporation,

      Plaintiffs,

      vs.                                              No.1:16-cv-00833 WJ/KK

RIVEN ROCK STAFFING, LLC, a Nevada
Limited Liability Company, LARRY SHAUN
SHEPHERD, an individual, CATHERINE
OLINGER, an individual, TERRY MILLER,
an individual, TIMOTHY JACQUEZ, an
individual, and Does 1 through 25, inclusive,

      Defendants.

## DECLARATION OF CATHERINE OLINGER

I, Catherine Olinger, upon my oath and under penalty of perjury, state the following:

1. I am over the age of 18 and competent to make this declaration. The contents are true and accurate to the best of my knowledge and belief and are based on my own personal knowledge.

2. I started with Westaff in 2003. Effective March 2009 Select Staffing, a Koosharem Corp. business, purchased Westaff. My understanding is that through merger, that company became EmployBridge, LLC ("EmployBridge") in approximately 2015, but separate Select Staffing were still maintained. At the time of my resignation I worked in the Albuquerque Select Staffing office as Branch Manager.

3. I submitted my resignation to EmployBridge on February 5, 2016. Since approximately March, 2016 I have been employed by Riven Rock Staffing, LLC ("Riven Rock"), a company engaged in the temporary staffing business.

EXHIBIT 19

4. I decided to leave EmployBridge for two reasons: first, the effort to consolidate the EmployBridge business with the Select Staffing business caused a lot of tension; and, second, ever since being elevated to Branch Manager in December 2014 I was never paid all of the commissions that were due me. I repeatedly asked for explanations of why I was being shorted on the commissions, but I was never provided with an explanation or even a breakdown of how my commissions were being calculated.

5. When Select Staffing purchased Westaff in 2009 I was asked to and did electronically sign documents in the "new hire" packet, including an Employee Agreement. Neither employment nor my rate of pay changed in any way after I signed those documents and my paychecks still were from Westaff. None of those documents contained an agreement not to compete with Select Staffing. I never signed a non-compete agreement while employed by Select Staffing.

6. While employed by EmployBridge I did not know either Terry Miller of Timothy Jacquez.

7. At the time of my resignation from EmployBridge all of my electronic files were stored on the desk top computer in my office. I did not delete any documents off that computer prior to my resignation and I did not delete or wipe the hard drive. I do not even know how to delete the hard drive on a computer. I had no filing cabinets in my office. My paper files wer stored in my desk drawers and I left them all there when I resigned.

8. I never removed any confidential, proprietary or trade secret information from EmployBridge.

9. While employed by EmployBridge I did not conspire with Shaun Shepherd or anyone else to build a business at the expense of EmployBridge. Before I left EmployBridge I did not discuss with Shepherd the possibility of leaving EmployBridge and working together at a new company. Shepherd first contacted me about working for Riven Rock Staffing only after he and I had both left EmployBridge.

EXHIBIT 19

10. I have never solicited employees of EmployBridge to join Riven Rock Staffing, either while I was employed by EmployBridge or after I joined Riven Rock. Several EmployBridge employees have reached out to me about possible employment since I left EmployBridge, but except for Terry Miller and Timothy Jacquez, I have declined them any employment.

11. On about May 27, 2016 I posted ads to Craigslist and LinkedIn for a Business Development Manager. On May 31, 2016 I received an email from Miller inquiring about the ads that were posted. That was the first time I had heard of Miller. Miller applied for and was hired into the position. I did not attempt to influence Miller in any way to join Riven Rock.

12. Jacquez also responded to an ad and was hired by Riven Rock Staffing, but I had not communicated with or even had any knowledge of Jacquez before he started with Riven Rock Staffing on June 27, 2016 and I did not attempt to influence him to join Riven Rock..

13. I did not contact Michael Kelm to offer him employment. Unsolicited, Kelm came into the Riven Rock Staffing office on about May 17, 2016 and filled out an application for employment. He was placed on assignment with Riven Rock on approximately June 28, 2016. I did not attempt to influence Kelm to accept an assignment through Riven Rock.

14. As far as I know, Riven Rock has never offered Brian Ostenak or Nicole Romero employment.

15. Two customers of Select Staffing/EmployBridge have decided to do business with Riven Rock. Those are Ink Impressions and Superior Ambulance. Ink Impressions contacted me personally; I did not contact anyone at Ink Impressions prior to being contacted by the company. I did nothing to attempt to influence Ink Impressions to cease doing business with EmployBridge or to start doing business with Riven Rock. I reached out to Superior Ambulance without thinking about the non-solicitation agreement. Had I thought of it I would not have initiated the contact. I have not contacted any business I know to be an EmployBridge customer unless they have first contacted me.

16. While employed by EmployBridge I never worked with Lively Distributing, Insight Lighting, Stock Building Supply, LKQ or Acme Iron and Metal and did not attempt to influence

EXHIBIT 19

them to do business with Riven Rock. I have not had any contact with General Mills since leaving EmployBridge and as far as I know no one at Riven Rock has had contact with General Mills. I received a call from a representative of the City of Albuquerque, but did not initiate the contact and did not attempt to influence the representative to do business with Riven Rock.

17. Since joining Riven Rock, I have not utilized any information relating to EmployBridge customer lists, pricing information or pay data for associates on assignment. Most of the data I had from EmployBridge related to the City of Albuquerque and we have not contacted the City of Albuquerque since I joined Riven Rock.

18. During my final months at EmployBridge I had no access to financial information like revenue, gross margin, expenses and the like. The information I did have access to, primarily just pay and bill rates for associates on assignment, was limited to Select Staffing and not any other EmployBridge business. I have not used any of this information to benefit Riven Rock.

I declare under penalty and perjury that the foregoing is true and correct.

Executed on August 10th, 2016

_____
Catherine Olinger

EXHIBIT 19