**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**EMPLOYBRIDGE, LLC, a California
Limited Liability Company, and
EMPLOYMENT SOLUTIONS
MANAGEMENT, INC., a Georgia
Corporation,**

        **Plaintiffs,**

      **v.**                        **Case No. 1:16-cv-00833 WJ/KK**

**RIVEN ROCK STAFFING, LLC, a Nevada
Limited Liability Company, LARRY SHAUN
SHEPHERD, an individual, CATHERINE
OLINGER, an individual, TERRY MILLER,
an individual, TIMOTHY JAQUEZ, an
individual, and Does 1 through 25, inclusive,**

        **Defendants.**

## DEFENDANTS' RESPONSE TO MOTION TO STAY RULING ON SUMMARY JUDGMENT MOTIONS PENDING RESOLUTION OF ARBITRATION

Come now Defendants Riven Rock, Terry Miller and Timothy Jaquez (individually "RR," "Miller" or Jacquez, or collectively "Defendants") with the following Response to Plaintiffs' Motion to Stay Ruling on Summary Judgment [doc. 108, filed 05.30.17].  For the reasons stated herein, the Motion should be denied.

## I.    INTRODUCTION

On July 20, 2016 and July 21, 2016, over ten (10) months prior to filing the instant Motion to Stay this lawsuit, Plaintiffs steamrolled into this Court with: (a) an eleven (11) count, thirty seven (37) page Complaint for Damages and Injunctive Relief [doc. 1] against all five (5) named Defendants; (b) a twenty-six (26) page Emergency Motion for Temporary Restraining Order and Preliminary Injunction [doc. 2] (with over one hundred (100) exhibit pages); and (c) an eight (8) page Emergency Motion for Expedited Discovery, along with ten (10) multi-page sets of numerous discovery requests for all five (5) named Defendants. [doc. 3].   In their

1

Complaint, Plaintiffs alleged RR was directly, jointly and/or vicariously liable (through Olinger, Shepherd, Miller and Jacquez) for a number of legal violations; that Shepherd and Olinger were jointly and directly liable for numerous legal violations; that Miller and Jacquez were jointly and directly liable for numerous legal violations; and that all five (5) Defendants engaged in a massive civil conspiracy. *See Doc. 1.* In that same Complaint, Plaintiffs specifically demanded arbitration against Shaun Shepherd and Catherine Olinger.

Despite the arbitration demand, In their three (3) initial pleadings Plaintiffs repeatedly invoked the authority of this Court to provide them with upfront equitable and injunctive relief. Not once during the initial filing did Plaintiffs request a stay pursuant to 9 U.S.C. § 3 of the Federal Arbitration Act either for Olinger or for Shepherd or for the Defendants. Both Motions were summarily denied by the Court. *See Order* [doc. 4, filed 07.21.16] and *Order* [doc. 7, filed 07.22.16].

Plaintiffs then dusted off their Motions, re-filed them in this forum and again asked this Court to aid their cause in this forum. All five (5) Defendants responded to the Motion for TRO/PI. *See Response to Motion for Temporary Restraining Order* [doc. 15, filed 08.15.16]. To avoid a potential jurisdictional defect, on August 18, 2017 Plaintiffs then filed in this forum a forty-one (41) page, twelve (12) count First Amended Complaint ("FAC") against all five (5) Defendants [doc. 23]. The FAC too sought to hold Defendants liable under direct, joint and vicarious (including through the actions of Olinger and Shepherd) theories of liability and Plaintiffs reiterated their civil conspiracy claim. Plaintiffs again specifically demanded arbitration for Shepherd and Olinger.

United States Magistrate Judge Khirtan Khalsa denied Plaintiffs' Renewed Emergency Motion for Expedited Discovery. *See Order* [doc. 30]. While Defendants were fully confident

they would have prevailed on Plaintiffs' efforts to obtain either a temporary restraining order or a preliminary injunction, the time, energy and expense involved in additional briefing and a full hearing necessitated entering into essentially a status quo Stipulated Preliminary Injunction in this forum. *See SPI* [doc. 32, filed 08.24.16].

Having obtained the initial injunctive relief requested, it is telling that Plaintiffs never requested a global stay of this lawsuit in this Court under 9 U.S.C. § 3 and/or the guise that the arbitrable claims in the Amended Complaint predominated the lawsuit. *See Response at p. 4*; *Riley Mfg. Co. Inc., v. Anchor Glass Container Corp.*, 157 F.3d 775, 785 (10th Cir. 1998).  And contrary to their representation to this Court, the parties never "diligently proceeded in the arbitration forum…." *See Response at p. 2*.

Instead, on August 23, 2016 Plaintiffs invoked the Federal Rules of Civil Procedure and served voluminous discovery on Miller, Jacquez and RR (including issuing subpoenas on RR's two managing members) in this Court under Fed. R. Civ. P. 33, 34 and 45.  Despite the arbitration demand and stay only as to the claims against Olinger and Shepherd [doc. 34], Plaintiffs then invoked the authority of this Court yet again and served draconian Fed. R. Civ. P. 45 document subpoenas on Olinger and Shepherd. *See Exs. 1 & 2*.  The JSR/PDP confirms the parties agreed not to stay the lawsuit as to the three (3) remaining defendants and that the case in this forum would proceed through discovery, into motion practice and eventually into trial. *See Doc. 34*.  Plaintiffs certainly never requested any future, global litigation stay of this lawsuit in the JSR/PDP.

This Court adopted the parties' discovery plan and set forth specific case management deadlines in its Scheduling Order, including setting deadlines for discovery, pre-trial dispositive motions and the pre-trial order. *See Doc. 39* [filed 09.21.16].  The parties eventually moved to

extend some of those deadlines on two (2) separate occasions, *see Joint Motion to Amend Scheduling Order* [doc. 54, filed 12.02.16] and *Second Joint Motion to Amend Scheduling Order* [doc. 102, filed 03.13.17], both of which were granted. But even then, at no point until May 30, 2017 did Plaintiffs ever once request a stay of any case management deadlines. Nor did Plaintiffs ever claim, until now, that the arbitration issues predominated the case in such a manner that either the claims, or the adjudication of the claims, in this forum should be globally stayed pending the arbitration of Olinger and Shepherd.

Despite now contending that the Arbitrator should be empowered in the first order to adjudicate any and all legal and factual issues involving or implicating Olinger and Shepherd, on September 23, 2016 Plaintiffs once again invoked the power and authority of this Court and filed a jury demand [doc. 41] in this lawsuit "of all issues so triable as to Defendants."[1] Their First Amended Complaint very clearly seeks to hold, *inter alia,* (a) RR vicariously and jointly liable for Olinger's and Shepherd's actions; and (b) RR, Miller and Jacquez directly and jointly liable for engaging in a civil conspiracy and tortiously interfering conduct with Olinger and Shepherd. And while Defendants believe summary judgment is warranted on a number of matters, it is strange that Plaintiffs seek resolution of all triable issues against the Defendants in this forum by a jury, yet now contend in their Motion that the Arbitrator should proceed to adjudicate the duplicative legal and factual issues common to both proceedings.

In any event, in the interim, Plaintiffs engaged in full discovery in this Court against RR, Miller and Jacquez. In the fall of 2016, Plaintiffs also served eight (8) additional and draconian Rule 45 subpoenas from this Court, fully availing itself of the procedural tools available in this forum. On November 10, 2016, Plaintiffs filed a Motion to Compel [doc. 49] RR to produce

---

[1] While neither party raised a jury demand in their initial pleadings, the filing of the jury demand by Plaintiffs obviated the need for Defendants to file one.

certain documents in this Court. On December 8, 2016 Plaintiffs filed their second Emergency Motion to Compel [doc. 63] based on a discovery motion to compel that they initially filed in the Central District of California seeking compliance with a Rule 45 subpoena. Again, Plaintiffs never once sought a global stay from this Court on any of the claims in this lawsuit or any discovery issues pertaining to the same. Nor did they ever contend that issues pertaining to Olinger and Shepherd predominated the case such that a global stay of the entire lawsuit in this forum was warranted and that the Arbitrator should be permitted to take over the proceedings. Instead, they specifically sought rulings from this Court in this forum.

It was only on December 8, 2016 that the arbitration finally took force with the filing of Plaintiffs' Statement of Claims, followed by service of discovery in the arbitration on Olinger and Shepherd. The parties agreed to avoid discovery duplication because the claims in the arbitration and the counts in the lawsuit are essentially the same, as evidenced by a simple perusal of the Statement of Claims and the FAC. *See Statement of Claims, attached hereto as Exhibit 3.* But despite the obvious duplicity of allegations, facts and legal claims, Plaintiffs again never sought a global stay of this lawsuit on the grounds of predominance or potential preclusive effect. Nor did they push for any hearing with the Arbitrator in order to prioritize the claims they now contend predominate the lawsuit and warrant a stay of both Defendants' Rule 56 Motions and this lawsuit.

In fact, despite utilizing in full the discovery rules in this Court, invoking the authority of this Court on a number of occasions, following the Scheduling Orders of this Court and asserting and pursuing legal claims against the Defendants in this forum for over ten (10) months, it was only when the dispositive motion deadline emerged and Defendants filed detailed motions seeking dismissal of a number of specious legal claims against them that Plaintiffs now complain

a stay is warranted in this forum.  Plaintiffs' self-serving and opportunistic position gives new meaning to the phrase having your cake and eating it too.

## II.    ARGUMENT

9 U.S.C. § 3 of the Federal Arbitration Act is not a particularly useful starting point for the Court in resolving the issue currently before it, which is as follows: is it appropriate, ten (10) months after the fact, for this Court to stay immediately any and all rulings (including summary judgment determinations) related to the factual and legal claims asserted and pursued by the Plaintiffs against the Defendants, whose claims are not subject to arbitration, in this forum until the claims pending before the Arbitrator have been decided?  This is because Section 3 does not specifically address or resolve that question.

Instead, the decision whether to stay the litigation of non-arbitrable issues is a matter largely within the district court's discretion to control its docket. *Summer Rain v. Donning Co./Publishers, Inc*., 964 F.2d 1455, 1461 (4th Cir. 1992); *see also Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.,* 460 U.S. 1, 20 n.23, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983) ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket.").

In *Riley Mfg. Co. Inc.,* the Tenth Circuit held that in exercising its discretion a Court should "consider whether resolution of the arbitrable claims will have a preclusive effect on the nonarbitrable claims that remain subject to litigation." 157 F.3d at 785.  "If there will be such a preclusive effect, especially if the arbitrable claims predominate over the nonarbitrable claims, then the district court should consider whether to stay the federal-court litigation of the nonarbitrable claims pending the arbitration outcome on the arbitrable claims." *Id.* (citing

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 856 (2d Cir. 1987) (holding that "broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit"). "On the other hand, the mere fact that piecemeal litigation results from the combination of arbitrable and nonarbitrable issues is not reason enough to stay [the] entire case." *Riley*, 157 F.3d at 785 (citing *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1517 (10th Cir. 1995) (holding that "litigation must proceed in a 'piecemeal' fashion if the parties intended that some matters, but not others, be arbitrated")).

As explained in both their underlying Motion for Summary Judgment on the COA Claims [doc. 104, filed 04.24.17] and their Reply [doc. 118, filed 06.13.16], Defendants do not seek dismissal of the arbitrable claims against Olinger and Shepherd.  Plaintiffs, however, specifically seek to hold RR vicariously liable in this forum for millions of dollars arising from the COA contract based on the exact same allegations that they have lodged against Shepherd and Olinger in the arbitration and based on the exact same set of facts that they have developed in this forum.  With the exception of the individual contract claims against Olinger and Shepherd for which RR cannot be held vicariously liable because it is not a party to the contract, the non-arbitrable claims on the COA contract for which Defendants seek summary judgment and for which Plaintiffs seek a stay are entirely duplicative of the arbitrable claims on the COA for which Plaintiffs seek resolution by an Arbitrator. A side by side comparison of the Statement of Claims and the FAC confirms as much. Lest there be any doubts, Plaintiffs' witness lists in the arbitration and this lawsuit are similar. *See Exhibit 4 attached hereto, Arbitration Witness List and Supplemental Witness List; Defendants' Motion for Summary Judgment & Memorandum on Counts I, IV-XII on Non-City of Albuquerque Claims [doc. 104], Ex. 6.*

Accordingly, it is actually the case that, with limited exception (primarily the breach of contract claims) the COA legal claims, and all of the set of facts informing those claims and that relate to Olinger's and Shepherd's actions, are inextricably intertwined issues before **both** this Court and the Arbitrator in almost equal measure. Plaintiffs have cited no legal authority for the proposition that where there is substantial duplication of facts and law in both the arbitration and the non-arbitration forum: (1) the Arbitrator should be given first priority to make any and all rulings likely to have any preclusive effect on the claims in this forum; [2] and (2) the Arbitrator possesses complete, exclusive and final authority to resolve any and all duplicative issues of fact and law over and above an Article III Judge (or a jury). Under *Riley and Coors Brewing Co.*, the approach that should be followed, and the one that Plaintiffs themselves have followed over the past ten (10) months, is one of separate litigation in which neither proceeding is globally stayed.

As indicated in the Reply to the Motion for Summary Judgment on the COA claims, and to avoid at least some of Plaintiffs' preclusive effect concerns, the Court does not need to weigh heavily into the factual thicket of Olinger's and Shepherd's conduct to dismiss the COA claims outright.[3] Instead, the Court is fully equipped to examine and resolve: (1) Plaintiffs' complete failure to even grasp with the essential element of causation, let alone create disputed issues of fact, for any and all of the COA claims asserted against the Defendants, including those in tort, contract (Miller and Jacquez) and federal and state statute (Defend Trade Secrets Act and New Mexico Uniform Trade Secrets Act); (2) the COA claims asserted against Miller and Jacquez,

---

[2] While Defendants seek dismissal of the claims against them, in the event the Motions are denied there is an interesting issue as to whether the rights afforded to the parties under the Seventh Amendment to the United States Constitution through the jury demand would necessitate resolution of issues involving Olinger and Shepherd, and for which Plaintiffs seek joint and vicarious liability, by a jury or the arbitrator.

[3] Because of the duplicative nature of the proceedings, there is no possible way to avoid at least some preclusive effect from one forum to the other forum. But it is a wash.

who are not parties to arbitration and for whom there is no vicarious liability for any acts by Olinger and Shepherd; (3) whether the COA solicited bidders based on the COA's and the Procurement Code's expressions providing that the COA is the soliciting party, not the other way around, as the undisputed facts and law demonstrate; and (4) whether there was any misappropriation of any COA confidential/trade secrets information, for which Plaintiffs have similarly failed to marshal any evidence in support thereof.   This Court hardly needs to wait for an Arbitrator to arrive at the inevitable conclusion that Plaintiffs cannot, and never could, establish causation on any of the COA claims remaining in this forum and never should have asserted or pursued them in the vigilant and vexatious manner that they have.   Nor does this Court lack the authority to determine, based on the complete record currently before it, that Plaintiffs altogether failed to present a single material fact establishing any misappropriation of COA trade secret/confidential information that the parties then used and/or disclosed. This is because no such evidence exists.  If Plaintiffs cannot marshal the necessary evidence when called upon to do so in this forum under Rule 56, it makes no sense to force RR, Miller and Jacquez to have to proceed in arbitration and spend additional time, energy and expenses to present the exact same record to the Arbitrator on the COA claims.

The same rationale applies even more so to the second Motion for Summary Judgment on the Non-City of Albuquerque Claims [doc. 105, filed 04.24.17].   In the FAC, Plaintiffs specifically seek to hold RR vicariously and jointly liable in this forum for the exact same conduct, and based on the exact same allegations, that they seek to hold Olinger and Shepherd liable for in the arbitration with respect to certain clients, and specifically Ink Impressions. Again, Plaintiff have not demonstrated how the arbitration claims necessarily predominate because the arbitrable claims and non-arbitrable claims are essentially the same and involve the

same set of facts, the same set of circumstances, the same group of witnesses and essentially the same set of laws. Nor can it even remotely be said that the nonarbitrable claims are of questionable merit: they are the same. *See Genesco, Inc.*, 815 F.2d at 856 (the merit of the nonarbitrable claims can inform the stay issue). The second Rule 56 Motion seeks dismissal of the remaining claims against Miller and Jacquez, who are parties in this forum, not the arbitration.  Resolution of the factual and legal issues that are located in this forum primarily entails examining and assessing the conduct that they engaged in, as opposed to resolving in substantial detail the arbitrable claims against Olinger and Shepherd.  Plaintiffs do not even seek compensatory losses against Olinger and Shepherd as to the clients (RAQ, Fidelitone etc.) identified in the second Motion and for which Plaintiffs seek to hold Miller and Jacquez liable for solicitation and/or interference, so the actions of Miller and Jacquez clearly predominate in that respect. And certainly Plaintiffs are not contending it would be appropriate for the Arbitrator to assess and evaluate the non-arbitrable contract, tort and statutory claims against Miller and Jacquez and that do not implicate any actions by Olinger and Shepherd.

Defendants also believe a significant number of the solicitation, interference and conspiracy claims against Miller and Jacquez, and for which Plaintiffs seek to lump in Olinger and Shepherd for joint and direct conspiratorial and tortious conduct in the arbitration, are based on the inadmissible, hearsay evidence of witness Fran Scott, who was never present for any of the alleged discussions that Plaintiffs claim constitute solicitations and for which Plaintiffs seek compensatory (if not nominal damages).  For example, Plaintiffs seek to use Scott's testimony that an Acme Iron & Metal informed her that Miller and/or Jacquez quoted them an alleged discount rate of $1.02/hour that Plaintiffs then matched to prove the truth of the statement that Miller/Jacquez quoted that rate and Plaintiffs are entitled to damages.  Scott was not present for

that conversation. *See Motion for Summary Judgment & Memorandum on Counts I, IV-XII on Non-City of Albuquerque Claims* [doc. 105, filed 04.24.17] at UMF 32.  Yet an Arbitrator is not bound by the formal Federal Rules of Evidence. *See Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH,* 141 F.3d 1434, 1443-44 (11th Cir. 1998) ("An arbitrator enjoys wide latitude in conducting an arbitration hearing. Arbitration proceedings are not constrained by formal rules of procedure or evidence."). Just as Defendants are entitled to avail themselves of the Federal Rules of Civil Procedure, so too are they entitled to hold Plaintiffs to the formal Federal Rules of Evidence for the claims that have been asserted against them in this forum. As it stands, this Court has ample authority to vindicate the rights of RR, Miller and Jacquez in this forum.

The fact that Plaintiffs have availed themselves in full of the benefits of this forum for over ten (10) months further militates against a stay. Plaintiffs have repeatedly utilized this forum, and invoked both the rules of this forum and the authority of this Court, since the initial filing of the Complaint in July 2016 to develop and pursue all of their legal claims against Olinger, Shepherd and the three (3) defendants.  As indicated in the introductory section, Plaintiffs never once sought a global stay of any case management deadlines or any issues as to RR, Miller and Jacquez, quite the opposite.  Plaintiffs cannot now, opportunistically, show up this late in the litigation and demand a lengthy and delayed "timeout" in this forum in order to delay the case further, avoid a potentially adverse outcome and vitiate RR's, Miller's and Jacquez' Rule 56 right to have their motions heard.

Defendants are also parties in this forum, not the arbitration. They are entitled to avail themselves of the disposition mechanism provided by Fed. R. Civ. P. 56. which states "The Court shall grant summary judgment if the movant shows there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Their attempt to seek vindication on the legal claims asserted against them in this forum should not take a back seat to the fact that some duplicative claims exist in arbitration. Moreover, if summary judgment is warranted, then Defendants are entitled to a determination of that matter sooner rather than later. Even if they are unable to prevail on all of the claims raised in their motions, Defendants are entitled to some certainty as to any claims that may proceed to trial. To date, they have endured a taxing and expensive litigation ordeal. They are entitled to a Rule 56 determination as to whether the numerous allegations that Plaintiffs lodged against them, routinely "upon information and belief," are supported by the actual facts developed in discovery in this forum or whether dismissal is required. Neither RR nor Miller nor Jacquez should have to wait in abeyance "until the claims subject to arbitration have been adjudicated" because it fits Plaintiffs fancy. *Response at p.2*. That is a decidedly unfair approach that prejudices their rights as litigants.

Defendants have incurred considerable costs and fees in litigating this lawsuit, including the claims in this forum, and preparing and submitting their Rule 56 Motions in accordance with the case management pre-trial motion deadline set forth by this Court and to which the parties agreed (until now). Both sides have briefed the matter in full. The motions are ripe for adjudication. There is no compelling reason at this belated juncture for this Court to push aside Defendants' good faith efforts to seek dismissal of the legal claims asserted against them in this forum.

Finally, in the event Plaintiffs are able to obtain a stay, Defendants do not quite know why Plaintiffs believe the Arbitrator would deem a hearing necessary on a number of issues, including but not limited to the City of Albuquerque claims. The uncontroverted facts demonstrate that Plaintiffs, despite either not qualifying for an award in the first place or placing

8th at best, never would have received any award from the COA, as essentially conceded in their response brief.  The Arbitrator is not going to permit Plaintiffs to leapfrog over six (6) other bidders who placed higher. It is apparent, of course, that Plaintiffs hope to obtain a hearing in arbitration and avoid outright dismissal here on the COA claims, but a stay won't change the facts. Instead, it will just increase the overall costs of the litigation.

## III.     CONCLUSION

For the reasons set forth herein, Plaintiffs' Motion to Stay should be denied in its entirety and the Court should award any additional relief deemed just and proper.

Respectfully submitted,

MOODY & WARNER, P.C.

By: */s/ RDS on 2017.06.19*
        Christopher M. Moody
        Repps D. Stanford
4169 Montgomery Blvd. NE
Albuquerque, NM  87109
(505) 944-0033
moody@nmlaborlaw.com
stanford@nmlaborlaw.com
*Attorneys for Defendants*

I HEREBY CERTIFY that the foregoing document was filed through the CM/ECF system which caused all counsel of record to be served by electronic means on this 19th day of June 2017.

Thomas Stahl
Scott Gordon
Rodey, Dickson, Sloan, Akin & Robb, P.A.

Daniel P. Hart
Michael Cross
Seyfarth Shaw, LLP

*Attorney for Plaintiffs*

MOODY & WARNER, P.C.

By: */s/ Repps D. Stanford 2017.06.19*
        Repps D. Stanford