**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

EMPLOYBRIDGE, LLC, a California
Limited Liability Company, and
EMPLOYMENT SOLUTIONS
MANAGEMENT, INC., a Georgia
Corporation,

        **Plaintiffs,**

        **v.**                        **Case No. 1:16-cv-00833 WJ/KK**

RIVEN ROCK STAFFING, LLC, a Nevada
Limited Liability Company, LARRY SHAUN
SHEPHERD, an individual, CATHERINE
OLINGER, an individual, TERRY MILLER,
an individual, TIMOTHY JAQUEZ, an
individual, and Does 1 through 25, inclusive,

        **Defendants.**

## DEFENDANTS' REPLY TO MOTION FOR SUMMARY JUDGMENT ON COUNTS I, IV-XII ON NON-CITY OF ALBUQUERQUE CLAIMS

Come now Defendants with the following Reply to their Motion for Summary Judgment on the non-City of Albuquerque claims. The Motion should be granted.

## I.    PLAINTIFFS HAVE NOT DISPUTED THE FOLLOWING MATERIAL FACTS

A.    UMF 6:  Jacquez meant at any time *after* he left employment. That remains undisputed.

B.    UMF 46-49:  If the testimony is inadmissible, then Plaintiffs have no admissible evidence of any alleged solicitation of Ink, dooming that claim.  The evidence exhibits what transpired to inform the lack Olinger's influence, as well as Ink's state of mind that they were unhappy with Plaintiffs, it was their choice to select RR and they made their own decision on their own accord.

C.    UMF 50:    Olinger never once testified she met on a "number of occasions."

D.    UMF 54:    Jacquez' testimony does not at all support the false claim that he stole Plaintiffs' confidential information "for no apparent business purpose" or that he was "unable to

provide any explanation for his actions." He explained in full at Depo 273:5-275:20, p.278:2-25 & p.301:17-20 why he emailed himself: work related reasons and to provide the company with information about commission issues. *Jacquez Depo, Ex. 17.*

E.      UMF 56:  Plaintiffs are not suing Jacquez over a purported property retention violation of Paragraph 4 of his Agreement. *See FAC.* Instead they are alleging, *inter alia,* misappropriation and use/disclosure of trade secrets. *Id.* Jacquez left in late June and returned all property under the Stipulated Injunction when first requested. This is not a material breach of Paragraph 4.

F.      UMF 57: It is not "misleading" to state EB did not have a specific policy or restriction on emailing business information to a personal email. The testimony is uncontroverted that the practice was common and that Jacquez and Scott did so. To quote Scott, "There's no policy in place." And Jacquez' testimony in UMF 54 as to why he emailed information is uncontroverted.

## II.      DEFENDANTS DISPUTE THESE ADDITIONAL MATERIAL FACTS ("AMF")

G.      AMF W:       The instant motion does not directly implicate the COA claims.

H.      AMF AA:      Fluitt was not bound by a non-solicitation and was entitled to canvas. Plaintiffs do not dispute UMF 24-26 that Fluitt, not Miller, selected every business to call/visit.

I.       AMA BB:      Plaintiffs specifically did not dispute UMF 28 providing that Miller said little during the meeting.  The cited testimony (Miller Depo 165:21-171:2) does not at all support the false claim that Miller "had an extended interaction with the owner." How Miller relaying a joke could qualify as soliciting, canvassing, accepting or servicing is left entirely unexplained.

J.       AMC CC-FF: Miller's testimony does not inform whether he actually solicited former customers. Plaintiffs are required to show the specific acts and/or statements undertaken by Miller that qualify as unlawful conduct. This they have not done.

K.      AMF GG:  Fluitt's use of the pronoun "us" in a thank you email does not demonstrate

unlawful solicitation, inducement and the like of RAC by Miller.  It is undisputed in UMF 42 that Olinger serviced the one order and she was not prohibited from doing so. Nor was Fluitt.

L.     AMF II:        Mere accompaniment is not solicitation, inducement and the like.

M.     AMF JJ/KK:   Miller does not dispute that he accompanied Fluitt. The operative, material issue is whether the evidence demonstrates any disputed issues over whether Miller improperly solicited Stock Building Supply or R&L Carrier through specific words or actions. It does not.

N.     AMF LL:    Fluitt is not, and was not, bound by any non-solicitation provision. Plaintiffs have not marshalled any competent, admissible evidence that Miller directly solicited LKQ or used Fluitt as a surrogate/substitute to avoid his non-solicitation provision. Furthermore, Fluitt had already been canvassing LKQ and had initiated two calls on her own, both without Miller. *See Fluitt Depo, Ex. 22, p.67:10-p.69:2.* Neither Miller nor Jacquez had contact with LKQ while at RR. *See Miller Depo, Ex. 16, p.186:4-16; Jacquez Depo, Ex. 17 p.160:15-17.* Fluitt also went there before Jacquez even started with RR. *Id. p.130:10-13.*

O.     AMF MM:     This fact is irrelevant and immaterial. Fluitt was entitled to email LKQ whatever she wanted. Fluitt went there before Jacquez even started. Jacquez never went there. *See Paragraph N, supra.* Plaintiffs have failed to proffer any evidence Jacquez directly solicited customer LKQ or used Fluitt as a surrogate/substitute to avoid his non-solicitation provision.

P.     AMF NN:     Jacquez does not dispute he emailed information to his email account, but UMF 57 remains undisputed: Jacquez testified it was common to email work related materials. Scott admits EB had no policy in place restricting the practice. *Id.* Plaintiffs have not demonstrated how any of the information Jacquez forwarded constitutes a "trade secret," how Jacquez' emailing practice qualifies as "misappropriation" or how he allegedly used and/or disclosed the alleged confidential information. Plaintiffs never dispute UMF 55, which provides:

3

"Jacquez did not share any dispatch or confidential information with any third party, including RR" and never "used any confidential dispatch information." It is deemed admitted. LR 56.1(b).

Q.      AMF QQ:       The material questions are whether the securing of those accounts violated any law and, if so, by whom.

## III.     ARGUMENT

### A.      Defendants' Motions Do Not Violate Rule 56

Neither Fed. R. Civ. P. 56 nor D.N.M.LR-Civ. 56.1 prohibit the filing of two (2) separate summary judgment motions. Both comply with the requirements of Rule 56 (form/structure) and D.N.M.LR-Civ. 7.5 (length).  The Court may also recall that the FAC is 41 pages. It contains 195 allegations (many upon "information and belief"), 12 separate counts and it seeks direct, joint and vicarious liability against five (5) defendants. One 27-page MSJ is not equipped to handle the level of dismissal that Defendants seek here.

If the filing of two (2) motions were truly an issue, then Plaintiffs should have advised as much. Then, the parties simply could have requested a reasonable page extension to consolidate the issues. Defendants will refile one consolidated motion if necessary, but Plaintiffs' argument for outright dismissal elevates form over substance and is not supported by any procedural rule.

### B.      The Claims Involving the DTSA and the NMUTSA Cannot Survive.

Despite Plaintiffs' claim that Defendants mispresent or misunderstand the DTSA, Plaintiffs would have benefitted from a more careful reading of the motion.  Defendants first argued RR (through Shepherd and/or Olinger) and Miller could not be held liable for any misappropriation **pre-dating** the DTSA's enactment, primarily because of the acquisition by improper means element and the fact that all three had already left prior to May 11, 2016. *See Motion at p. 12.* That remains undisputed. Defendants then argued "Plaintiffs have not a single

4

shred of evidence that **subsequent** to May 11, 2016 Olinger, Miller, Shepherd or RR obtained by improper means, let alone used or disclosed, any trade secret." *Id.* The operative words in the two (2) separate arguments are "pre-dating" and "subsequent." In any event, Defendants agree that conduct post-dating the DTSA's enactment could give rise to legal violations, but only upon proof of each and every one of the necessary, underlying elements. The problem here is that Plaintiffs' evidence falls woefully short at the Rule 56 stage.

Initially, Plaintiffs have not even identified for the Court the actual, specific trade secret(s) at issue, nor explained how they qualify for such protections.[1]  18 U.S.C. § 1839 (defining trade secret); § 57-3A-2 (same); *MAI Systems Corp. v. Peak Computer, Inc*., 991 F.2d 511, 522 (9th Cir. 1993) (under UTSA party must first identify with reasonable particularity the trade secret at issue and that it meets the statutory definition). Plaintiffs have similarly failed to establish how forwarding emails to one's personal account, without more, qualifies as "improper means." *See* 18 U.S.C. § 1839(6)("improper means" includes, *inter alia*, "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means"); NMSA 1978, § 57-3A-2(A) (2016)(same); *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 785 (5th Cir. 1999) (quoting *E.I. duPont deNemours & Co. v. Christopher*, 431 F.2d 1012 (5th Cir. 1970) ("A complete catalogue of improper means is not possible. In general they are means which fall below the generally accepted standards of commercial morality and reasonable conduct."). Jacquez testified, without dispute, that the email practice was common. Scott testified there was no policy against it. There

---

[1]Strangely, Plaintiffs refer to "confidential information" in Jacquez' and Shepherd's possession throughout the brief, even in their argument section on the DTSA and the UTSA. *See Response at p. 3* (¶8); *p.5* (¶NN); *p.12; p. 13* (Jacquez emailed himself "confidential documents").  The DTSA and UTSA only cover "trade secrets," as that term is specifically defined in the respective statutes. A general claim about alleged "confidential information" does not satisfy the trade secret test.

are no disputed issues over acquisition of actual trade secrets by improper means and/or knowledge of acquisition by improper means. *See* 18 U.S.C. § 1839(5); § 57-3A-2 & 57-3-4.

Plaintiffs have no less failed to marshal any material evidence establishing disputed issues over actual, unconsented use and/or disclosure of any trade secret by Miller, Jacquez and RR. To avoid this fundamental defect, Plaintiffs contend a jury could infer use/disclosure from Jacquez' (and Shepherd's) mere possession and the fact that Defendants serviced several of Plaintiffs' clients. *See Response at p. 12-13.* Yet, Plaintiffs have altogether failed to show how customer names (including the COA, which is a public entity and customer acquired through the public RFB process under the New Mexico Procurement Code), qualify as trade secrets. More specifically, Plaintiffs still have not identified any specific trade secret with regard to Ink, RAC, Acme or any other client that was misappropriated by improper means and then subsequently used in such a way as to have caused Plaintiffs damages under the DTSA and UTSA.

Possession of a trade secret is a necessary, but separate, element from actual, unconsented use and/or disclosure. One does not prove the other. Plaintiffs did not even dispute UMF 54-55, providing that Jacquez never shared, used or disclosed confidential information. They have absolutely no case, and never did, against Miller. The DTSA and UTSA contain substantive elements, each of which must be met. There is no disputed issue on use and/or disclosure.

*Scientific Games Int'l Inc. v. Cash,* No. 2:16-cv-00142-WCO (N.D. Ga. January 25, 2017) is of no help. It involved the grant of a preliminary injunction and protective order. The parties already entered into a stipulated injunction in August 2016. The parties are now at the Rule 56 merits stage, where Plaintiffs are required to show genuine disputes of material facts on all necessary elements to avoid summary judgment. They have not met their burden.

It is also revealing that when Plaintiffs requested Jacquez and others to return company

property, they willingly did so, going so far as to stipulate to the return. Their willing return of the company property rebuts any inference it was obtained or retained for improper use. The retention of company property for approximately two (2) months, and its subsequent return, does not give rise to viable DTSA or UTSA claims for nominal or compensatory damages.

Finally, Count V of the FAC is for disclosure of confidential information, not retention of company property. Plaintiffs have no evidence Miller ever had any confidential information, let alone used or disclosed it. Plaintiffs did not dispute Jacquez' testimony in UMF 54-55 that he has not used or disclosed confidential information. Plaintiffs have no evidence to the contrary, and certainly not as to RAC, Acme, Fidelitone et al. Dismissal of Counts I and XII are warranted as to RR, Miller and Jacquez. Dismissal of Count V is warranted as to Miller and Jacquez.

**B.     The legal claims involving Fidelitone, Acme, RAC, Ink and Superior (Miller & Jacquez) must be dismissed.**

*i.     The claims against Fidelitone cannot lie.*

The case against Fidelitone does not merit extensive discussion. Plaintiffs do not even dispute the numerous UMFs confirming Scott submitted two (2) declarations and verified numerous interrogatory answers and never once identified or disclosed Fidelitone as a client who was purportedly solicited, or that Plaintiffs sought thousands in compensatory damages.[2]

_____

[2] Plaintiffs are just plain wrong that fact discovery closed in this case on March 31, 2017. Judge Khalsa's Order [doc. 103] only extended the February 28, 2017 discovery deadline for the limited issues set forth in the parties' Joint Motion [doc. 102, filed 03.13.17], namely Scott's deposition (¶7), discovery on a vendor (¶8), two-week extension for Plaintiffs to respond to RR's second set of discovery (¶9) and supplemental email search (¶10). *See Doc. 102.* Furthermore, it is undisputed Miller, Jacquez and RR all propounded interrogatories in the fall of 2016 specifically requesting information on damages, solicitation and material witnesses. Scott verified every single one of those answers. Not once did Plaintiffs identify Fidelitone as a client who was improperly solicited, identify any Fidelitone witness or claim damages relating to Fidelitone. Nor did Plaintiffs' counsel ever disclose a single Fidelitone witness in their Witness List or Supplemental Witness List. The claim that "[d]efendants can hardly argue they were somehow surprised that Fidelitone is at issue in this case" is misplaced. The discovery rules

Plaintiffs cannot hide the ball, then belatedly supply contradictory testimony, to create disputed issues of fact. Plaintiffs similarly failed to disclose any Fidelitone witnesses in any Rule 26 disclosures or Rule 33 interrogatory answers, despite the specific request/requirement to supply them. A party should not have to seek dismissal of a belatedly invented legal claim.

Scott's testimony that a Fidelitone witness purportedly advised her Miller and/or Jacquez offered a rate discount, which she matched, is being used to prove the truth of the matter asserted under Fed. R. Evid. 802, i.e. the truth of a solicitation and the truth that a rate discount was offered, which Scott matched and for which Plaintiffs can obtain damages.[3] Scott was not present for that conversation and is not competent to testify. Plaintiffs have not provided admissible evidence from any Fidelitone witness, in the form of a declaration or affidavit, to show active solicitation or alleged promise of a rate discount, as required by Fed. R. Civ. P. 56(c).

While Miller accompanied Fluitt on a sales call to Fidelitone, Plaintiffs have no admissible evidence of any solicitation, inducement and the like. Jacquez testified he did not have contact with Fidelitone after his employment and hence he similarly did nothing wrong, either by way of breach of contract, tortious interference with contractual relations or through a civil conspiracy. Plaintiffs do not even dispute RR has never done business with Fidelitone and Plaintiffs have never lost business with Fidelitone, thereby further undermining both the causation and damages elements necessary under both contract and tort law to obtain either

---

require a party to turn over relevant information when called for, not verify answers under oath and then belatedly try to contradict them through the deposition testimony of the same witness who verified answers under oath. It is cause for concern that Plaintiffs believe this is an appropriate litigation tactic.

[3] If a representative from Fidelitone competently testified to his/her conversation with Miller/Jacquez, then statements made by Miller/Jacquez to that representative could qualify as party admissions under Fed. R. Evid. 801(d)(2). The problem here is that Scott was not present. Instead, she is seeking to testify about what Miller/Jacquez allegedly told a Fidelitone representative who then allegedly told her to prove solicitation and a promised rate discount.

compensatory damages or even nominal damages. UMF 3-4.

ii.      *No legal claims can lie for Acme Metal.*

The case involving Acme Metal stands on similar footing: Plaintiffs seek to rely on inadmissible hearsay of what an Acme representative told Scott a 3rd party said to prove both solicitation and the alleged rate quote promise to support compensatory damages. Scott was not present and is not competent to testify under Rule 701. Plaintiffs have again failed to supply a declaration/affidavit from a competent Acme representative to establish what transpired.

Furthermore, Plaintiffs did not dispute UMF 30 that Jacquez never had contact with Acme after leaving his employment. UMF 30. Plaintiffs did not even dispute that Fluitt, not Miller, alone made all decisions on which businesses to canvas and that Miller's job duties involved training Fluitt.  UMF 23-24. Not once did Miller initiate any meeting or call. It is also undisputed Acme has not done any business with RR and Plaintiffs have not lost any business from Acme. UMF 31-32. Thus neither Miller nor Jacquez could be said to have induced, accepted business or serviced business. Finally, Miller's actual testimony demonstrates he did not have an extended discussion with Acme, only visited them with Fluitt on one occasion, and on that occasion introduced himself and said little. UMF 28.  *See Farm Bureau Mut. Ins. Co. v. Osby*, 2005 Iowa App. LEXIS 1342 **9-10 (Iowa Ct. App. November 9, 2005); *see also Inland American Winston Hotels, Inc. v. Crockett*, 212 N.C. App. 349, 712 S.E.2d 366, 370 (2011) (defining solicit and induce in employment context to require active persuasion, request, or petition).  There are no disputed issues of active solicitation, breach of contract, tortious interference or a civil conspiracy.

c.      *The claims against RAC Transport cannot lie.*

Initially, Plaintiffs do not dispute UMF 40-41 providing that Jacquez never visited RAC

and Plaintiffs themselves never claimed he did in their interrogatory answers.  Plaintiffs similarly have no evidence Miller induced, accepted service or serviced RAC to do the one driver run. Plaintiffs did not even dispute UMF 43, providing that Olinger serviced the contract. It was Fluitt who obtained it. Plaintiffs have no evidence Miller used Fluitt as a straw person to avoid his non-solicitation clause. While Plaintiffs expend considerable effort arguing that what Miller believed his presence might bring evidences a breach, the material question is whether Miller actually engaged in improper conduct based on what he said/did when accompanying Fluitt on the one call. The evidence fails to establish disputed issues over breach of the non-solicitation covenant, tortious interference through substantial and active conduct or causation, or a civil conspiracy.

      *d.*     *The claims against Ink Impressions cannot remain.*

As an initial matter, Miller and Jacquez were not even employees when Ink Impressions chose to do work with RR in March 2016, so they could not have been party to any civil conspiracy or interference over that client. They also never worked with Ink. Plaintiffs' claim that Olinger's testimony is inadmissible is odd. If true, then Plaintiffs have no record evidence to support the claim. As Plaintiffs routinely seem to forget, at the Rule 56 stage they carry the burden of showing genuine disputed issues of fact, not Defendants. Even so, the testimony is meant to highlight the acts and words used to inform the lack of solicitation/influence against RR (through Olinger & Shepherd) as to Ink. There is no evidence Shepherd did anything other than join for lunch.  It is undisputed Ink was unhappy with Plaintiffs and looking for another staffing partner and that Ink initiated the meeting. Ink's state of mind, as well as Olinger's actions, defeat any claim to active influence or attempt to influence, even under the standards cited by Plaintiffs in *Scarbrough v. Liberty Nat. Life, Ins. Co.*, 872 So. 283, 285 (Fla. 1st DCA 2004) & *FCE Benefit Adm'rs inc. v. G.W.U.*, 209 F. Supp.2d 232 239 (D.D.C. 2002). There has to be active

conduct on the part of the individual subject to the covenant. Here there was not.

       e.     *The Superior Ambulance civil conspiracy claims cannot lie against Miller and*
             *Jacquez.*

Olinger's testimony provides that she visited Superior Ambulance with Fluitt, not Miller or Jacquez. *See Olinger Depo, Ex. 18, p.141:3-142:23*. There is no evidence of any meeting of the minds or conspiratorial conduct involving Miller and Jacquez through Olinger, in RR obtaining Superior Ambulance as a client.

       f.     *The additional solicitation claims cannot lie.*

Plaintiffs contend they should be able to hold Miller, Jacquez and RR liable for nominal damages for alleged solicitation of customers LKQ, R&L Carriers & Stock Building Supply because Miller accompanied Fluitt on calls and piqued interest, despite the fact that RR has never done business with any of those three (3) customers, there is no causation, no harm identified and Plaintiffs do not seek compensatory damages for any purported harm. *See Response at p. 5* (¶JJ, KK, LL), *p.9-10*.   Again, the mere accompaniment on sales calls, without more, does not constitute active inducement or solicitation. Plaintiffs do not dispute Fluitt is singlehandedly the one who (a) chose which businesses to canvas; and (b) initiated all meetings. UMF 24. Plaintiffs have provided this Court with no competent, admissible evidence Miller and/or Jacquez actively solicited, canvassed or induced those clients to leave, and they never did. The fact that Fluitt used the word "us" in an email to client LKQ (AMF MM) does not at all inform whether Jacquez actively solicited and/or used Fluitt as a surrogate. Fluitt visited LKQ on her own. Miller and Jacquez never did.

The lack of consummation of any customer relationship likewise defeats any claim that Miller or Jacquez induced, serviced or accepted service in violation of any Agreement, or tortiously interfered with Plaintiffs' customer relations due to lack of proof of active/substantial

conduct, causation and damages. *See Sanchez v. Clayton,* 1994-NMSC-064, P15 (nominal damages require party to establish all elements; *Camino Real Mobile Home Park P'ship v. Wolfe*, 1995-NMSC-013, P27 (same). The Rule 56 burden lies with Plaintiffs to proffer material facts in dispute on all necessary elements to survive summary judgment. They have not done so.

## III.     CONCLUSION

For the reasons stated in the Motion and herein, all claims against Miller and Jacquez should be dismissed. All remaining claims, excepting Superior Ambulance, should likewise be dismissed against RR and the Court should award any additional relief deemed just and proper.

Respectfully submitted,

**MOODY & WARNER, P.C.**

By: */s/ RDS on 2017.06.22*
       Christopher M. Moody
       Repps D. Stanford
4169 Montgomery Blvd. NE
Albuquerque, NM  87109
(505) 944-0033
moody@nmlaborlaw.com
stanford@nmlaborlaw.com
*Attorneys for Defendants*


I HEREBY CERTIFY that the foregoing document was filed through the CM/ECF system which caused all counsel of record to be served by electronic means on this 22nd day of June, 2017.

Thomas Stahl
Scott Gordon
Rodey, Dickson, Sloan, Akin & Robb, P.A.

Daniel P. Hart
Michael Cross
Seyfarth Shaw, LLP

*Attorneys for Plaintiffs*

MOODY & WARNER, P.C.

By: */s/ Repps D. Stanford 2017.06.22*
      Repps D. Stanford